IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-477

**PARABLE,
RON HANKS,
LAUREL IMER,
DAVE PETERS,
CHARLES W. "CASPER" STOCKHAM,
JOANN WINDHOLZ,**

    *Plaintiffs*,

v.

**JENA GRISWOLD**, in her official capacity as Colorado Secretary of State,

    *Defendant*.

---

**MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

---

**INTRODUCTION**

This is a suit challenging the legality, both on its face and as applied, of Colorado's Proposition 108 (and its implementing statutes) ("Proposition 108"), a ballot initiative adopted in 2016 that requires a major political party[1] to allow voters not affiliated with the party to vote

---

[1] Colorado law distinguishes between "major" political parties and "minor" political parties. The former is defined as "any political party that at the last preceding gubernatorial election was represented on the official ballot either by political party candidates or by individual nominees and whose candidate at the last preceding gubernatorial election received at least ten percent of the total gubernatorial votes cast." Colo. Rev. Stat. § 1-1-104(22).

in that party's primary election and thereby to help determine the party's nominee for the general election. Plaintiff PARABLE ("People for Association Rights and Bi-Partisan Limited Elections") is an unincorporated association of Colorado major party candidates, leaders, and voters formed to challenge Proposition 108's restrictions on their constitutionally-protected rights of speech, association, and equal protection of the laws. The other Plaintiffs are individual candidates, county party chairs, and voters affiliated with the Colorado Republican Party. Republican State Central Committee members voted unanimously at the Party's annual convention held on September 18, 2021, to authorize the "Republican Party of Colorado, its members, or both" to bring a lawsuit challenging the constitutionality of Proposition 108. See Complaint ¶ 31 and Exhibit 2. Proposition 108 harms Plaintiffs by infringing upon their rights of free speech and association secured by the First Amendment to the United States Constitution (as incorporated and made application to the States by the Fourteenth Amendment) and their rights to equal protection of the laws secured by the Fourteenth Amendment to the United States Constitution.

## ARGUMENT

The individual Plaintiffs and the major political party with which they are affiliated have already been deprived of their constitutional rights to free association and speech and to the equal protection of the laws in the two primary elections—June 2018 and June 2020—that have been held since the adoption of Proposition 108. Absent a preliminary injunction, Plaintiffs will suffer further irreparable harm to their constitutional rights should the major political parties with which plaintiffs are affiliated be required to allow unaffiliated voters to participate in the primary election scheduled for June 28, 2022. "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1221 (D. Colo. 2001).  The moving party has the burden of making a prima facie showing of a probable right to the ultimate relief and a probable danger of injury if the motion is denied.  *Big O Tires*, 167 F. Supp. at 1221.

I. **Plaintiffs Are Likely To Succeed On The Merits Of Their Constitutional Claims.**

   A. **The Freedom of Association of Plaintiffs and the Major Political Parties With Which They Are Affiliated Is Clearly Infringed By Proposition 108's Mandate That Unaffiliated Voters Be Allowed To Participate in the Party's Selection of Its Nominee for Office.**

More than two decades ago, the Supreme Court made clear that forcing a political party and its members to allow unaffiliated voters—people who by definition are not part of the political association—to vote in the primary election that determines the nominee of that political party, violates the Freedom of Association of the party and its members protected by the First Amendment and made applicable to the States by the Fourteenth Amendment. *California Democratic Party v. Jones*, 530 U.S. 567 (2000).

At issue in that case was California's "blanket primary," which provided that "[a]ll persons entitled to vote, *including those not affiliated with any political party*, shall have the right to vote ... for any candidate regardless of the candidate's political affiliation." *Id.* at 570 (quoting Cal. Elec. Code § 2001, emphasis added).  Although members of other political parties and not just unaffiliated voters were allowed to cross over and vote in another party's primary election, that fact was not relevant to the reasoning of the case.  There, as here, the fact that "the

3

candidate of each party who wins the greatest number of votes 'is the nominee of that party at the ensuing general election,'" when the total includes votes cast by voters unaffiliated with the party—whether affiliated with another party or unaffiliated with any party—is what rendered the blanket primary unconstitutional. *Id*. (citing Cal. Elec. Code. § 15451); *see also id.* at 577.

The Court held that "[t]he First Amendment protects 'the freedom to join together in furtherance of common political beliefs,'" … which "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Id.* at 574 (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214-15 (1986), and *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981)). "[A] corollary of the right to associate is the right not to associate," the Court added, noting that "[f]reedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *Jones*, 530 U.S. at 574 (quoting *La Follette*, 450 U.S. at 122 n.22, which in turn quoted L. Tribe, American Constitutional Law 791 (1978), and citing *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984)). Indeed, the Court noted that "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee" because "[t]hat process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views." *Jones*, 530 U.S. at 575 (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 372 (1997) (Stevens, J., dissenting).

California's blanket primary violated the freedom of association of the political parties

4

and their members because it "force[d] political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." *Jones*, 530 U.S. at 577.  It was therefore "qualitatively different from a closed primary," for "[u]nder that system, even when it is made quite easy for a voter to change his party affiliation the day of the primary [as is also the case in Colorado], and thus, in some sense, to 'cross over,' at least he must formally *become a member of the party*; and once he does so, he is limited to voting for candidates of that party."  *Id.* (emphasis in original).

In a footnote, Justice Scalia did suggest, in *dicta*, that a "blanket primary … *may* be constitutionally distinct from the open primary, … in which the voter is limited to one party's ballot," *id.* at 577 n.8 (emphasis added), but he did so in reliance on a dissenting opinion in *La Follette*, in which Justice Powell noted that "the act of voting in the Democratic primary fairly can be described as an act of affiliation with the Democratic Party."  *Id.* at 577 n.8 (quoting *La Follette*, 450 U.S. at 130 n. 2 (Powell, J., dissenting).  That is not true in the Colorado law at issue here, for a provision of Proposition 108 provides that "[a]n eligible unaffiliated elector … is entitled to vote in the primary election of a major political party *without affiliating with that political party*."  CRS § 1-7-201(2.3); *see also* § 1-2-218.5(2) ("Any unaffiliated eligible elector may, but is not required to, declare a political party affiliation when the elector desires to vote at a primary election.").

That unaffiliated voters may alter the results of a party's primary election is not speculative.  Indeed, producing "candidates who better represent all Coloradans," and "who are more responsive to a broader range of interests," was one of the two official ballot arguments

5

advanced in favor of Proposition 8,[2] demonstrating that the law was designed to alter the political expression of political parties and their members.  This is particularly of concern in a state like Colorado, where statewide and in most counties and election districts, unaffiliated voters outnumber registered party voters by significant margins, sometimes by as much as two to one or more.  *See* Complaint ¶¶ 15-21 and voter registration statistics published by the Colorado Secretary of State.[3]  And the potential for mischief has not gone unnoticed by political activists who just this month, in print, have encouraged unaffiliated voters to vote in a Republican Party primary in order to defeat an incumbent member of Congress who has the support of a majority of her Party but is apparently anathema to that unaffiliated activist.  *See* Brenda Freeburn, "Make Boebert one-term," Letter to the Editor, Aspen Daily News (Feb. 2, 2022), Complaint ¶ 24 and Exhibit 1.

Plaintiffs are therefore extremely likely to prevail on the merits of their First Amendment claim that their Freedom of Association rights are violated when they and the major political parties with which they are affiliated are forced to associate with unaffiliated voters in the core function of choosing the party's nominee for political office.

Given the clear violation of Plaintiffs' fundamental First Amendment Freedom of Association rights, Colorado's Proposition 108 could only be sustained if the government could demonstrate that it was narrowly tailored to further a compelling governmental interest.  *Jones* is dispositive on that point as well.

---

[2] *See* "Official Arguments," available at https://ballotpedia.org/Colorado_Unaffiliated_Elector,_Proposition_108_(2016)#cite_note-bluebook-2.

[3] Available at at https://www.sos.state.co.us/pubs/elections/VoterRegNumbers/2022/January/VotersByPartyStatus.pdf.

In *Jones*, the California defendants had asserted "seven state interests they claim are compelling," but the Court rejected every one of them.  It held that two of them—"producing elected officials who better represent the electorate and expanding candidate debate beyond the scope of partisan concerns"—"reduce[d] to nothing more than a stark repudiation of freedom of association."  *Jones*, 530 U.S. at 582.  And it rejected a third—"that a blanket primary is the only way to ensure that disenfranchised persons enjoy the right to an effective vote"—as "nothing more than reformulation of an asserted state interest we have already rejected."  *Id.* at 583.  A "non-member's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications," the Court held.  *Id.* (quoting *Tashjian*, 479 U.S., at 215-16, n. 6).

The Court also rejected the four remaining interests that the California defendants had asserted—"promoting fairness, affording voters greater choice, increasing voter participation, and protecting privacy"—as simply not "compelling" in the circumstances of the case.  Indeed, it found that the asserted interest in affording voters greater choice, which is to say, a range of candidates who are all more "centrist," was not only *not compelling* but may not even be a *legitimate* state interest.

Finally, even assuming that all of the interests asserted by the State were compelling, the Court held that the blanket primary was not narrowly tailored to further those interests, because all of the interests could be protected without interference with the free association rights of political parties by resort to a *nonpartisan* blanket primary.  California adopted a *nonpartisan* blanket primary in response to the *Jones* decision, but Colorado decided to adopt an unconstitutional open primary instead.

7

Proposition 108, in whole or in part, and Colo. Rev. Stat. Sections 1-2-218.5(2), 1-4-101(2)(b), 1-4-104, and 1-7-201(2.3), to the extent they allow unaffiliated voters to vote in major party primary elections, on their face and as applied, should therefore be enjoined as a severe burden on the Plaintiffs' freedom of association.

### B. The Opt-Out Provision of Proposition 108 Not Only Does Not Save The Open Primary From Unconstitutionality, But It Is Unconstitutional In Its Own Right.

Proposition 108 also contains an "opt-out" provision, CRS § 1-4-702. But, that provision not only does not alleviate the unconstitutional burden on Plaintiffs' freedom of association but is itself an unconstitutional intrusion on the Plaintiffs' freedom of association for at least two reasons: First, the requirement that opt-out is only permitted upon a ¾ vote of the *entire* State Central Committee membership is itself an undue burden, *at best* allowing a small minority of the Party's members to thwart the will of the majority of the Party's members;[4] and Second, even were the Party to achieve the super-majority requirement necessary to opt-out of Proposition 108's open primary, Section 1-4-702 unconstitutionally restricts the Party to choosing its nominees only by convention or assembly caucus, thus depriving it from allowing all of its active registered voters from participating in the choosing of the Party's nominee through a primary election limited to voters affiliated with the Party.

The Supreme Court has recognized "as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts*

---

[4] Because the opt-out provision requires a ¾ vote of the *entire membership*, any annual meeting that has fewer than ¾ of the entire membership in attendance—which has historically been the case, *see* Complaint ¶¶ 27-28—would not be able to vote to opt-out of the open primary even if unanimously supported.

*v. United States Jaycees*, 468 U.S. 609, 622 (1984).  The freedom of association is unconstitutionally burdened by Government's "intrusion into the internal structure or affairs of an association." *Id*. at 623.  "Freedom of association … encompasses a political party's decisions about the identity of, and the process for electing, its leaders." *Eu v. San Francisco Cty. Democratic Cent. Comm*., 489 U.S. 214, 229 (1989).  The opt-out provision at issue here directly interferes with "a political party's decisions about … the process for electing its leaders."

Given this clear precedent from the Supreme Court, Plaintiffs are likely to succeed on the merits of their claim that the opt-out provision is an unconstitutional intrusion into the internal affairs of Plaintiffs' political associations, and therefore a violation of their First Amendment Freedom of Association rights.  And as with the core Freedom of Association claim set out above in Part I.A, there are no compelling governmental interests that the opt-out provision is narrowly tailored to further.  Indeed, by forcing the party to the Hobson's choice of allowing unaffiliated voters to help determine the party's nominees or no primary election at all, the opt-out provision actually runs counter to a governmental interest asserted by proponents of the initiative of encouraging more people to get involved in the electoral process.  *See*, *e.g.*, KUNC, "From Hickenlooper To House, Colorado Leaders On Ballot Battle For A Presidential Primary" (Sept. 15, 2016).[5]

In short, Section 1-4-702 unconstitutionally restricts Plaintiffs and the major political parties with which they are affiliated to choosing their nominees by convention or assembly

---

[5] Available at https://www.kunc.org/politics/2016-09-15/from-hickenlooper-to-house-colorado-leaders-on-ballot-battle-for-a-presidential-primary.

caucus, preventing them from allowing all of the Party's active registered voters from participating in the choosing of the Party's nominee through a primary election limited to voters affiliated with the Party.

### C. By Forcing A Political Party to Place Its Imprimatur on Primary Election Victors Even When Those Candidates May Not Have Received A Plurality of Support from the Party's Own Members, Proposition 108 Also Violates the Free Speech Rights of the Party and its Members.

Section 1-4-104 of the Colorado Revised Statutes provides that "Candidates voted on for offices at primary elections who receive a plurality of the votes cast shall be the respective party nominees for the respective offices."  That requires that a political party places its imprimatur on a candidate who may not have received a majority or even plurality of support from the party's members.  That infringes Freedom of Speech, for it amounts to "compelled speech," which the Supreme Court has long held to be anathema to the First Amendment's Freedom of Speech.

In *Wooley v. Maynard*, for example, the Supreme Court held that a person could not be compelled to display the slogan "Live Free or Die," relying on the principle that "[t]he right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'"  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (quoting *Board of Education v. Barnette*, 319 U.S. 624, 637 (1943).  Forcing a political party to lend its name to a nominee who may not reflect the views of a majority of the party's members is compelled speech that runs afoul of these foundational First Amendment precedents.

Plaintiffs are therefore likely to succeed on the merits of that claim as well and, as with the Freedom of Association claims above, the restriction on Plaintiffs' free speech rights is not narrowly tailored to further any compelling governmental interest.

10

D. **Allowing Unaffiliated Voters to Vote in a Party's Primary Election Dilutes the Votes of Voters Affiliated with the Party in Violation of the Commands of the Fourteenth Amendment's Equal Protection Clause.**

The Right to the Equal Protection of the Laws protected by the Fourteenth Amendment to the United States Constitution prohibits States from diluting the weight to be accorded to a person's vote. *Reynolds v. Sims*, 377 U.S. 533, 568 (1964). *Reynolds* was a landmark case involving vote dilution in the drawing of representative districts, of course, but the Court also noted that the right to vote cannot be "diluted by ballot-box stuffing." *Id.* at 555 (citing *Ex parte Siebold*, 100 U.S. 371 (1879); *United States v. Saylor*, 322 U.S. 385 (1944). By compelling a major party to accept the votes of unaffiliated voters in determining the party's nominee at its primary election, Proposition 108 dilutes the votes of party members by "ballot-box stuffing" with the votes of unaffiliated voters.

Plaintiffs are therefore likely to succeed on the merits of their equal protection/vote dilution claim, and the violation of Plaintiffs' equal protection right to not have their votes diluted is not narrowly tailored to further any compelling governmental interest.

E. **By Allowing Minor Parties to Choose not to Have Unaffiliated Voters Participate in their Primary Elections, While Denying that Right to Major Parties, Proposition 108 Also Violates Equal Protection.**

The Right to the Equal Protection of the Laws protected by the Fourteenth Amendment to the United States Constitution prohibits States from treating voters affiliated with some political parties differently than voters affiliated with other political parties without good cause related to compelling governmental interests.

Proposition 108, in whole or in part, and Colo. Rev. Stat. Sections 1-4-101(2)(b), § 1-4-1304, and 1-7-201(2.3), treat voters affiliated with major political parties differently than voters

11

affiliated with minor political parties. Pursuant to Sections 1-4-101(2)(b) and 1-7-201(2.3), voters affiliated with major political parties are not permitted to participate in a primary election to choose their party's nominees without their votes being diluted by unaffiliated voters. But, pursuant to Section 1-4-1304, voters affiliated with minor political parties are permitted to participate in a primary election to choose their party's nominees without dilution of their votes by unaffiliated voters. That differential treatment infringes upon the fundamental voting rights of voters affiliated with major political parties, in violation of the Equal Protection Clause of the Fourteenth Amendment, both on its face and as applied.

Because the fundamental right to vote is at stake, Colorado can sustain this discrimination between major and minor political parties only if the distinction is narrowly tailored to further a compelling governmental interest. For the reasons set out in Part I.A above, the State is unlikely to be able to sustain its burden under such strict scrutiny. Plaintiffs are therefore likely to succeed on the merits of this Equal Protection claim as well.

## II.  The Violation of Plaintiffs' Constitutional Rights Constitutes Irreparable Injury

It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016). As the Tenth Circuit has previously recognized, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995).

That is particularly the case here. Nomination of candidates is the most critical stage of

the electoral process because the ultimate choice of the mass of voters is determined when the major party nominations have been made. *Newberry v. United States*, 256 U.S. 232, 286 (1921). By allowing unaffiliated voters to affect a party's choice of nominee, Proposition 108 imposes an irreparable injury on Plaintiffs' First Amendment and Equal Protection rights because that harm cannot be cured after the fact.

Indeed, the irreparable harm to major party candidates' and voters' First Amendment rights caused by Proposition 108 is more immediate and apparent than ever because political activists are now encouraging unaffiliated voters to vote in a Republican party primary in order to oust an incumbent member of Congress who is supported by her party but anathema to some unaffiliated voters. *See* Brenda Freeburn, "Make Boebert one-term," Letter to the Editor, Aspen Daily News (Feb. 2, 2022), Complaint ¶ 24 and Exhibit 1. This tactic, enabled by Proposition 108, operates to chill major party voter turnout and enthusiasm for candidates by forcing them to participate in a process that is actively being undermined by those with diametrically opposed interests. Under these circumstances, major party voters cannot have faith in their ability to control the outcome of their own primaries and the exercise of their First Amendment rights is chilled as a result. That the explicit purpose behind the use of such a tactic—interfering in a primary election and thereby defeating a sitting member of Congress—is made possible by Proposition 108 simply highlights that Proposition 108 "impermissibly burdens the right of [Major] Party members to determine for themselves with whom they will associate, and whose support they will seek in their quest." *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214 (1996).

**III. The Deprivation of Plaintiffs' Constitutional Rights Outweighs Any Harm That a Preliminary Injunction Will Cause to Defendant or Other Voters**

One can anticipate three potential harms that Defendant and the State's voters might assert should an injunction be granted. First, the Secretary of State might contend that a preliminary injunction would disrupt the orderly conduct of the upcoming primary election. But the election is scheduled for June 28, 2022—over four months away. *See* Secretary of State, 2022 Election Calendar.[6] And state law already allows a minor political party to notify the Secretary of State that it is prohibiting unaffiliated electors from voting in its primary as late as April 14, 2022. CRS § 1-4-1304(1.5)(c). No harm would arise were major political parties allowed to avail themselves of that same notification deadline, much less a harm that outweighs the infringement on Plaintiffs' constitutional rights.

Second, the Secretary might contend that the will of the voters who adopted Proposition 108 in 2016 would be harmed by a preliminary injunction. The Tenth Circuit squarely rejected this argument in *Awad v. Ziriax*: "Appellants argue that the balance weighs in their favor because Oklahoma voters have a strong interest in having their politically expressed will enacted, a will manifested by a large margin at the polls. But when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh Mr. Awad's in having his constitutional rights protected." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (citing *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 699 (9th Cir.1997)).

Finally, the Secretary might contend that unaffiliated voters would be harmed by not being able to participate in a major party's primary election. Even assuming that interference with the First Amendment associational rights of others is a cognizable harm, which is

---

[6] Available at https://www.coloradosos.gov/pubs/elections/calendars/2022ElectionCalendar.pdf.

14

doubtful, unaffiliated voters have it entirely within their own power to avoid any such harm by merely becoming affiliated with the political party in whose primary they wish to participate. And under Colorado law, they can do so up until election day itself.  CRS § 1-2-201(3)(a).

If the Secretary instead characterizes the supposed harm to unaffiliated voters as not being able to vote in a major party primary without becoming a member of that party, there is no such cognizable harm.  One does not have a right to interfere in another's political association and, therefore cannot be harmed in any cognizable way should the association choose not to permit such interference.  As the Supreme Court held in *Jones*, "[t]he First Amendment protects 'the freedom to join together in furtherance of common political beliefs,' … which "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Jones*, 530 U.S. at 574 (quoting *Tashjian*, 479 U.S. at 214-15).

In sum, none of the purported harms that one might anticipate being raised by the Secretary outweigh the harm to Plaintiffs caused by the violation of their constitutional rights of Free Association, Free Speech, and Equal Protection of the Laws.

## IV. A Preliminary Injunction to Prevent Further Violations of Plaintiffs' Constitutional Rights Is Not Adverse to, but Furthers, the Public Interest.

The Tenth Circuit has held that "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (quoting with approval district court opinion, *Awad v. Ziriax*, 754 F. Supp. 2d 1298, 1308 (W.D. Okla. 2010) (in turn quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994)); *see also Pac. Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1237 (10th Cir. 2005) ("Vindicating First Amendment freedoms is clearly in the public

interest."); *Verlo v. Martinez*, 820 F.3d 1113, 1127-28 (10th Cir. 2016) ("The district court did not abuse its discretion in finding the public interest was served by issuing the preliminary injunction to prevent the violation of Plaintiffs' First Amendment rights"). Thus, "[w]hile the public has an interest in the will of the voters being carried out, … the public has a more profound and long-term interest in upholding an individual's constitutional rights." *Awad*, 670 F.3d at 1132. Granting the preliminary injunction would therefore serve the public interest.

## CONCLUSION

This Court should issue a Preliminary Injunction, enjoining Defendant, Defendant's officers, agents, employees and all other persons acting in active concert with her, from enforcing Proposition 108 and Colo. Rev. State Sections 1-2-218.5(2), 1-4-101(2)(b), 1-4-104,1-4-702, and 1-7-201(2.3), in whole or in part, against the Plaintiffs and the major political parties with which they are affiliated, and affording to the major political parties the same right that is available to minor political parties under CRS § 1-4-1304(1.5)(c) to notify the Secretary of State by April 14, 2022, that they wish to prohibit unaffiliated electors from voting in their primary elections.

Respectfully Submitted,

/s/ John C. Eastman
John C. Eastman
CONSTITUTIONAL COUNSEL GROUP
174 W. Lincoln Ave, #620
Anaheim, CA  92805
Telephone: (909) 257-3869
FAX: (714) 844-4817
E-mail: jeastman@ccg1776.com

/s/ Randy B. Corporon
Randy B. Corporon
LAW OFFICES OF RANDY B. CORPORON P.C.
2821 S. Parker Road, Suite 555
Aurora, CO 80014
Telephone: (303) 749-0062
FAX: (720) 836-4201
E-mail: rbc@corporonlaw.com

*Attorneys for Plaintiffs*