**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00477-PAB-MEH

PARABLE, an unincorporated nonprofit association, on behalf of itself and its members, et al.,
      Plaintiffs,
v.
JENA GRISWOLD, in her official capacity as Secretary of State for the State of Colorado,
      Defendant.

---

**DEFENDANT'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

---

Colorado does not force major political parties to allow unaffiliated voters to participate in primary elections. Instead, it offers parties the opportunity to choose to do so. Last year, the Colorado Republican Party voted—by a clear majority—to hold a semi-open primary and permit unaffiliated voters to participate. Plaintiffs disagree with the party's decision and ask a federal court to hold unconstitutional the voter initiative that created Colorado's semi-open primary system, Proposition 108. Because Plaintiffs lack standing to raise claims on behalf of the Colorado Republican Party and because they cannot prevail on the merits of their claims, much less meet the other preliminary injunction requirements, the Court should deny the motion for preliminary injunction.

**BACKGROUND**

***Proposition 108***. In 2016, Colorado voters approved Proposition 108, allowing unaffiliated voters the opportunity to cast ballots in a nonpresidential primary of a single political party.[1] Colo. Rev. Stat. §§ 1-2-218.5(2), 1-4-101(2). In approving this semi-open primary

---

[1] *See* Legis. Council, Colo. Gen. Assembly, Rsch. Pub. No. 669-6, *2016 State Ballot Information Booklet* 65 (2016) ("the Blue Book"), https://tinyurl.com/2s3rsenb (last visited March 7, 2022).

system,[2] Coloradans decided that unaffiliated voters should have a voice in publicly financed primary elections, which political parties can choose to utilize in selecting their candidates for the general election. *See* Blue Book 66. Proposition 108 recognizes, however, that political parties are private organizations. It therefore includes an "opt out" procedure that permits a major political party to exclude itself from the semi-open primary system in favor of nominating its candidates in a "closed" assembly or convention that is limited to its affiliated members.[3] § 1-4-702(1). The decision to opt out of the semi-open primary system must be made by the major political party's state central committee by a three-fourths majority vote no later than October 1 of the year before the assembly or convention are held. *Id.*

   ***The Colorado Republican Party rejected opting out***. The Colorado Republican Party's State Central Committee met on September 18, 2021 to consider whether to exercise its opt-out option under § 1-4-702(1) for the 2022 election cycle. Doc. 1, ¶¶ 27-28. The Committee overwhelmingly rejected the opt-out proposal, with only one-third of members supporting it.[4] Consistent with the Committee's vote, the Secretary of State's office has not received notice that the Colorado Republican Party intends to opt out of Colorado's semi-open primary. Ex. A, p. 2.

---

[2] Colorado is one of nine states that opens its primaries to unaffiliated voters and party members only. *See* Nat'l Conf. of State Legislatures, *State Primary Election Types* (Jan. 5, 2021), https://tinyurl.com/4uf3znuv (last visited March 7, 2022). By contrast, in "Open Primary" and "Partially Open" states, voters can cross party lines and vote in a political party's primary even if they are affiliated with a different party. *See id.*

[3] A minor political party may exclude unaffiliated voters from its primary election in accordance with its constitution, bylaws, or other applicable rules. Colo. Rev. Stat. § 1-4-1304(1.5)(c).

[4] Alex Burness, *Millions will keep primary voting access as Colorado GOP rejects controversial opt-out plan*, The Denver Post, Sept. 18, 2021, https://tinyurl.com/bderhprv (last visited March 14, 2022) (attached as Ex. B).

***This Lawsuit***. Plaintiffs are five individual members of the Colorado Republican Party and an unincorporated association formed to challenge Proposition 108. Doc. 1, ¶¶ 3-8. Each supports "closing" the Colorado Republican Party's nomination process so that only affiliated party members may participate. *Id.* Noticeably absent from this lawsuit is the Colorado Republican Party, its State Central Committee, or any of the two-thirds of the Committee members who voted *against* closing the party's nomination process to unaffiliated voters.

## ARGUMENT

Plaintiffs seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits, (2) that they will suffer irreparable injury if the preliminary injunction is denied, (3) that the threatened injury outweighs the injury caused by the injunction, and (4) that an injunction is not adverse to the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs bear the burden of proof to demonstrate that each factor tips in their favor. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003). In addition, the preliminary injunction Plaintiffs seek here is "disfavored" in at least three ways—they request a "mandatory" injunction that would alter Colorado's election planning, upset the existing status quo under Proposition 108, and afford Plaintiffs all the relief they could recover after a full trial on the merits. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Plaintiffs therefore bear "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: [they] must make a strong showing that these tilt in [their] favor." *Free the Nipple v. City of Ft. Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (quotations omitted).

## I.     Plaintiffs are not substantially likely to succeed on the merits.

### A.     Plaintiffs lack standing to assert the rights of the Colorado Republican Party.

Plaintiffs lack standing because they have failed to show an injury in fact to *their* legally protected interests. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Instead, Plaintiffs attempt to assert the legally protected interests of a third party—the Colorado Republican Party—that is not involved in this lawsuit. That they cannot do.[5]

Supreme Court precedent establishes that the rights Plaintiffs are attempting to assert belong to the political parties themselves, not individual party members or candidates. In *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 225 (1986), for example, the Court held that Connecticut's closed primary statute impermissibly interfered with a state political party's First Amendment right to associate with nonmembers who the party wanted to participate in its primary. The flip side of the coin was presented in *California Democratic Party v. Jones*, 530 U.S. 567 (2000). There, the Court held that California's blanket open primary permitting all voters to vote in a political party's primary—even over its objection—violated the party's First Amendment associational rights. *Id.* at 586. Although standing was not at issue in these cases, the Court's analysis in each makes clear that it is the *political party's* right to either expand or limit the persons who can participate in the party's primary election. *See id*. at 582 ("We can think of no heavier burden on a *political party's* associational freedom." (emphasis added)).

---

[5] The Secretary of State anticipates moving to dismiss for lack of standing imminently. *See Burkitt v. Pomeroy*, No. 15-cv-02386-MSK-KLM, 2016 WL 696107, at *1 (D. Colo. Feb. 22, 2016) ("Questions of jurisdiction . . . should be resolved at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties.").

Lower federal courts interpreting these Supreme Court holdings have confirmed individual party members and candidates lack standing to assert the rights of the political party to which they belong. *See, e.g.*, *Osburn v. Cox*, 369 F.3d 1283, 1287 (11th Cir. 2004) ("[I]t was the political party in each case that was entitled to decide who would be involved in the decision making process, not individual members of the party."); *Beck v. Ysursa*, No. CV 07-299-MHW, 2007 WL 4224051, at *7 (D. Idaho Nov. 27, 2007) ("[I]t is clear that [*Jones*] and other cases determine that the right to define associational membership is a right possessed by the political party and not its members."); *Righeimer v. Jones*, No. CIV. S-00-1522DFLPAN, 2000 WL 1346808, at *1 (E.D. Cal. Sept. 14, 2000) ("[T]he First Amendment associational rights at issue belong solely to the association, here, the Republican Party, not to any individual candidate or voter.").[6] These courts adhere to the well-established principle that a plaintiff must generally "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Indeed, were Plaintiffs' requested relief mandating a closed primary granted, it "would likely be held unconstitutional if challenged by the state political party." *Osburn*, 369 F.3d at 1287.

Here, only the Colorado Republican Party itself can decide whether it will allow unaffiliated voters to participate in its primary election (as in *Tashjian*) or whether it will close its nomination process to only its members (as in *Jones*). That choice is not Plaintiffs' to make.

---

[6] These decisions involved the First Amendment associational rights of political parties, which Plaintiffs assert here in Claims 1 and 2. Doc. 1, ¶¶ 36-57. But the courts' reasoning applies equally to Plaintiffs' free speech claim in Claim 3, too. Plaintiffs' free speech claim is predicated on the speech of the political party to which they belong, not their own speech. *See* Doc. 1, ¶ 59 (alleging Proposition 108 violates the right to free speech because it "forc[es] [Plaintiffs'] political associations to deem as those associations' nominee for office a candidate chosen in an open primary election in which unaffiliated voters are allowed to participate.").

Indeed, if the court ruled on behalf of Plaintiffs in this case, the actual party whose rights are at issue—the Colorado Republican Party—would need to take action to defend the choice it already made to allow unaffiliated voters to participate in its primary.

Plaintiffs also advance an equal protection argument, asserting Proposition 108 treats voters affiliated with the Colorado Republican Party differently than minor party voters since minor parties can exclude unaffiliated voters from their primaries. Doc. 2-1 at 11-12. But Plaintiffs lack standing to assert this claim for the same reason that they lack standing under their associational and free speech claims. Assuming anyone has standing to insist that the Colorado Republican primary be closed, it is the Colorado Republican Party itself. Otherwise, the Secretary could be subject to an onslaught of suits from conflicting factions within a single party, with some demanding a closed primary, some an open primary, and others something in between. Courts have correctly found no standing for individual party officials and members to assert equal protection claims on behalf of their state political party, including in factual circumstances identical to this case (i.e., involving a three-fourths supermajority vote to opt out of the state's open primary). *See Greenville Cnty. Republican Party Exec. Comm. v. Way*, No. 6:10-1407-MGL, 2013 WL 12385313, at *6 (D.S.C. Aug. 30, 2013) ("*Greenville II*").

Finally, to the extent Plaintiffs assert an equal protection injury to *their* individual rights, such as vote dilution due to unaffiliated voters' ballots being counted in the party's primary, *see* Doc. 2-1 at 11, their alleged injury is not fairly traceable to Proposition 108. *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (injury must be fairly traceable "to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."). Instead, Plaintiffs' alleged injury is traceable solely to

the Colorado Republican Party's policy choice to participate in Colorado's semi-open primary rather than opt out. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.) (finding no standing where the "case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.").

Courts evaluating similar equal protection challenges to open primary laws have had no difficulty dismissing for lack of standing where a nonparty's intervening policy decision on the nomination format "breaks the causal chain." *Greenville II*, 2013 WL 12385313, at *7 (quotations omitted). In *Greenville II*, each municipality made "varying decisions" about their "preferred methods of nominating candidates for municipal offices." *Id.* The court determined that the municipality was an "absent intermediary that stands between Plaintiffs and the challenged conduct in a way that breaks the causal chain and deprives Plaintiffs of standing." *Id.* (quotations omitted). So too here—the Colorado Republican Party's choice to participate in Colorado's semi-open primary breaks the causal chain, rendering any link between Proposition 108 and Plaintiffs' alleged injury too highly attenuated to support standing.

**B.      If Plaintiffs have standing, they are not substantially likely to succeed on the merits of their claims.**

**1.      *Plaintiffs cannot succeed on their First Amendment association claims.***

It is well established that states "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election-and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). In assessing whether a state election law violates the First Amendment, a court must "weigh the character and magnitude of the burden the State's rule imposes on those rights

against the interests the State contends justify that burden, and consider the extent to which the

State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (quoting *Burdick*, 504

U.S. at 434). When a state regulation imposes "severe restrictions" on First Amendment rights,

the regulation must be "narrowly drawn to advance a state interest of compelling importance."

*Burdick*, 504 U.S. at 434 (internal quotation marks omitted). But "'when regulations impose

lesser burdens, a State's important regulatory interests will usually be enough to justify

reasonable, nondiscriminatory restrictions.'" *Utah Republican Party v. Cox*, 892 F.3d 1066, 1077

(10th Cir. 2018) (quoting *Clingman v. Beaver*, 544 U.S. 581, 586-87 (2005)). The severity of the

burden a state primary system imposes on a party's associational rights is a factual issue for the

district court. Absent evidence that a State's primary system burdens a party's right to associate,

a facial challenge to state primary election laws will fail. *Democratic Party of Hawaii v. Nago*,

833 F.3d 1119, 1124-25 (9th Cir. 2016) (citing *Jones*, 530 U.S. at 578).

      *Proposition 108 does not substantially burden associational rights.* Colorado's semi-

open primary does not impose a substantial burden on a political party's associational rights.

Because political parties have the *choice* between participating in Colorado's semi-open primary

or opting out, Colorado law does not force parties to associate with unaffiliated voters. Where

state law provides parties with legitimate alternatives that do not restrict their freedom of

association, courts have rejected facial attacks on primary election statutes on the basis of forced

association. *Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, 824 F. Supp. 2d

655, 664-65 (D.S.C. 2011) ("*Greenville I*") (upholding substantially similar state law) (citing

*Jones,* 530 U.S. at 577). And Supreme Court decisions on primary election systems strongly

suggest that only mandatory candidate nomination schemes can significantly burden a political

party's right to free association. *See, e.g.*, *Jones*, 530 U.S. 567 (striking mandatory blanket primary); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, (2008) (upholding "jungle primary" system that did not determine party nominee); *Tashjian*, 479 U.S. 208 (striking mandatory closed primary); *Timmons*, 520 U.S. 351 (upholding prohibitions on "fusion" candidates); *Clingman*, 544 U.S. 581 (reversing Tenth Circuit decision below and upholding semi-open primary where parties could choose whether to open primary to unaffiliated voters); *see also Greenville I*, 824 F. Supp. 2d at 664 (upholding semi-open primary similar to Colorado's). Because major political parties in Colorado may choose whether to participate in a semi-open primary or select their party nominee via a closed selection process, their associational rights are not significantly burdened.

Plaintiffs rely heavily on *Jones*, which held California's blanket primary system imposed a severe burden on a party's right to decide for itself who it would, and would not, associate with for the purposes of selecting a candidate. *Jones,* 530 U.S. at 582; *see also Democratic Party of Wash. State v. Reed,* 343 F.3d at 1198, 1204-05 (9th Cir. 2003). Plaintiffs' reliance on *Jones* is misplaced. First, unlike in *Jones*, where parties were forced to choose a nominee through participation in a state primary, political parties in Colorado can choose to access the general election ballot through assembly or convention. Second, the mandatory blanket primary system in *Jones* differs considerably from Colorado's optional semi-open primary. Under the blanket primary system in *Jones*, voters could vote for any candidate, regardless of party affiliation. *Jones,* 530 U.S. at 570. In Colorado, party-affiliated voters may only vote in their own party's primary, and unaffiliated voters who elect to vote in a major party primary are limited to that party's ballot. § 1-4-101(2)(b). *Jones* observed that a system "in which the voter is

limited to one party's ballot" may be "constitutionally distinct" from the unconstitutional blanket primary. *Id.* at 577 n.8. Third, unlike in *Jones*, Plaintiffs provide no evidence of a "clear and present danger" that adherents of opposing parties will determine the Republican Party's nominees. *See id.* at 578. Because *Jones* is factually and legally distinguishable, it does not support Plaintiffs' argument. Here, the state party chose to participate in Colorado's semi-open primary by a two-thirds majority. Plaintiffs' disagreement with this policy choice does not make it unconstitutional. Plaintiffs fail to show that Colorado's semi-open primary significantly burdens major parties' associational rights.

>    ***The three-fourths voting threshold does not infringe on parties' right to associate.***

Plaintiffs' attack on the three-fourths voting threshold seeks to rewrite history, as the party already voted in 2021 not to opt out of the semi-open primary. Nevertheless, Plaintiffs assert the opt out statute is unconstitutional because the three-fourths requirement "is itself an undue burden, allowing a small minority of the Party's members to thwart the will of the majority of the Party's members[.]" Doc. 1, ¶ 41. The three-fourths requirement is a reasonable procedural rule and passes constitutional muster because it does not violate a party's associational rights. In *Greenville I,* 824 F. Supp. 2d at 668, for example, the court upheld a nearly identical law providing that major political parties could opt out of a semi-open primary through a three-fourths vote by its central committee, holding it did not significantly impact a party's right to associate. The *Greenville I* court reasoned: "The voting requirement . . . neither limit[s] [n]or abridge[s] any party's ability to disseminate its views, nor does the statute affect how a party conducts its internal organizational affairs." *Id.* The same is true here.

To appreciate the minimal impact of this procedural rule, consider the party's institutional operations in context. For starters, the Committee—not the State—determines how many voting members it has. The Committee's bylaws designate that "for purposes of any vote taken pursuant to Section 1-4-702 of the Colorado Revised Statutes, the 'total membership' of the CRC shall consist solely of the voting members of the CRC." Ex. A, p. 9. The bylaws further designate exactly *who* is a voting member—and thus how many members there are. *Id.* at 9-10. According to Plaintiffs' complaint, the number of voting members varies by year—686 in 2021 and 470 in 2019. Doc. 1, ¶ 27. Because the Committee decides its voting membership, it could reduce the number of voting members to four or raise it to 1,000. Plaintiffs also complain that it is difficult for the Committee to assemble a quorum of voting members. The State has no role in this. If assembling a quorum were important, the Committee could make attendance mandatory or change the place or date of its meeting. If the three-fourths opt out threshold imposes a meaningful burden because of the total number of voting members, that burden is self-imposed by the Committee, not Colorado.

Second, Plaintiffs do not explain what voting threshold would be constitutional. The Colorado system honors the party's ability to make a choice and merely sets the threshold level, leaving it to the party to determine the overall voting population. It is unclear whether Plaintiffs would accept a lower voting threshold as constitutional, such as 60 percent or even 51 percent.

Third, Plaintiffs' case is entirely hypothetical and conjectural. Even if, for sake of argument, a lower threshold were preferable as a constitutional matter, Plaintiffs cannot show that the Committee would opt out. After all, nearly two-thirds of its members recently voted to

*keep* the semi-open primary. This makes this case an entirely inappropriate one to consider whether a lower threshold is constitutionally mandated.

> ***Colorado's important interests in primary elections justify any perceived slight burden on parties under Proposition 108.*** Colorado's important public interests justify the reasonable, non-discriminatory restrictions imposed by its semi-open primary system. *See Utah Republican Party*, 892 F.3d at 1077. Colorado's interests in protecting and preserving the integrity of the nominating process, promoting fairness, allowing parties to increase voter participation, and ensuring administrative efficiency support its semi-open primary system.

States have a significant interest in regulating elections in a manner that preserves the integrity of the electoral process and ensures that elections are fair and honest. *See Storer v. Brown,* 415 U.S. 724, 730 (1974). This is particularly true where "the State gives the party a role in the election process . . . by giving certain parties the right to have their candidates appear with party endorsement on the general-election ballot." *N.Y. State Bd. of Elections v. Lopez Torres,* 552 U.S. 196, 203 (2008); *see also Am. Party of Texas v. White,* 415 U.S. 767, 779-80 (1974) (upholding the requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions). This may include an interest in offering political parties the opportunity to include unaffiliated voters in their primaries, as required by the First Amendment. *See, e.g., Tashjian,* 479 U.S. 208 (striking state statute requiring voters in a party primary to be registered members of that party, when the Republican Party wished to permit independent voters to vote in its primary).

States also have an important interest in permitting political parties to allow greater voter participation in the electoral process—should the parties choose to do so. "The right to vote

freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims,* 377 U.S. 533, 555 (1964). To the extent encouraging citizens to vote is an important state interest, *see Jones,* 530 U.S. at 587 (Kennedy, J., concurring), Colorado is "entitled to protect parties' ability to plan their primaries for a stable group of voters." *Clingman*, 544 U.S. at 596.

Finally, States maintain a legitimate interest in ensuring administrative efficiency in the election process. *See Burdick,* 504 U.S. at 438-39. The orderly and effective administration of elections protects the stability of the political system, and States may use reasonable restrictions to accomplish this goal. *See Storer,* 415 U.S. at 736. Providing major parties with the opportunity to have candidates nominated to the general election ballot through a semi-open primary provides an administratively sound way to offer political parties broad forums in which to reach voters who share their ideology, while preserving the integrity of the overall electoral process and encouraging a party's interest in voter participation. The state interests at stake justify minimal burdens on a party's associational rights. And by setting the opt-out level at three-quarters of a political party's state central committee, Colorado ensures that a party must have a deliberate commitment to opting out of allowing unaffiliated voters to participate in its primary. If the level were lower, say, 51 percent, there is a material risk that the opportunity for unaffiliated voters to participate would vacillate regularly and create undue voter confusion.

### 2.   *Plaintiffs cannot succeed on their free speech claim.*

Plaintiffs assert Proposition 108 requires a political party to nominate a candidate who may not reflect the views of the majority of the party's members, and such compelled speech runs afoul of the right to free speech. In support, Plaintiffs cite to the numbers of voters who

register as Republican, Democrat, or unaffiliated, and one editorial encouraging unaffiliated voters to vote for a particular Republican candidate. Plaintiffs do not demonstrate a danger of crossover voting or "party raids." But more importantly, Supreme Court precedent recognizes that the Colorado Republican Party has a constitutional right to open its primary to unaffiliated voters. *Tashjian,* 479 U.S. 208. As *Tashjian* recognized, a party has an interest in having the opportunity to allow unaffiliated voters to vote in its primary because it represents a "crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." 479 U.S. at 216. Here, the Colorado Republican Party has elected to open its primary to unaffiliated voters. Given the party's demonstrated interest in allowing unaffiliated voters to participate, the party's free speech interests counsel towards allowing it to include such voters. Plaintiffs have not shown how Proposition 108 places a burden on *the party's* freedom of speech and, even if there was any modest burden, it would be justified by Colorado's compelling interests detailed above.

> **3.** ***Plaintiffs cannot succeed on their Equal Protection claims****.*

Next, Plaintiffs argue that allowing unaffiliated voters to participate in the Colorado Republican primary "dilutes" the votes of affiliated Republican voters in violation of the Equal Protection Clause. Doc. 2-1 at 11. Plaintiffs expend less than a single page on this argument and fail to cite any court decision suggesting that a semi-open primary violates the equal protection rights of party members. This Court therefore need not consider this "perfunctory" argument. *See In re HomeAdvisor, Inc. Litigation*, 491 F. Supp. 3d 879, 898 (D. Colo. 2020).

Even if considered, Plaintiffs' argument fails on its merits. *See Hole v. N.C. Bd. of Elections*, 112 F. Supp. 2d 475, 482-83 (M.D.N.C. 2000). Similar to other rejected equal

protection challenges, Plaintiffs attack "the validity of the primary election process that is internal to the [Colorado] Republican Party." *Id.* at 483. But the party's "right to conduct its primary in the manner that it believes is in its best interests—including its decision to open the primary to unaffiliated voters—is within the constitutional right of association of the political party." *Id.* (citing *Tashijan*, 479 U.S. at 214). Accordingly, Plaintiffs' argument that their "vote[s] [will be] diluted in violation of the Equal Protection Clause is without merit." *Id.*

Last, Plaintiffs contend Proposition 108 violates the Equal Protection Clause because it treats voters affiliated with the Colorado Republican Party differently than minor party voters who Plaintiffs argue can still vote in a closed primary. Doc. 2-1 at 11-12. Again, Plaintiffs expend less than a page on this argument and cite no supporting case authority. This Court need not consider this undeveloped argument. *In re HomeAdvisor*, 491 F. Supp. 3d at 898.

If the Court decides to consider this argument, it fails on its merits for any one of three reasons. First, major and minor political parties in Colorado and their affiliated voters are not similarly situated in "all relevant respects." *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 53-54 (10th Cir. 2013) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."). A major political party, for example, has a gubernatorial candidate who received at least ten percent of the vote at the last election. Colo. Rev. Stat. § 1-1-104(22). Given the size disparity between major and minor political parties, there are significant logistical and scaling burdens that go into administering a primary election involving major party candidates that do not exist for primaries involving only minor party candidates. Ex. A, p. 6. Colorado is

therefore permitted to treat the primaries of major and minor political parties differently. *Cf.*
*Curry v. Buescher*, 394 Fed. App'x 438, 447 (10th Cir. 2010).

Second, regarding Plaintiffs' argument that, unlike a minor political party, the Colorado
Republican Party can't hold a closed primary even if it opts out of Proposition 108, the Supreme
Court has already rejected this argument. *See White*, 415 U.S. 767. In *White*, Texas was accused
of discriminating against minor political parties because they could nominate candidates only by
convention while major political parties could nominate by primary election. *Id.* at 781. The
Court said it was "wholly unpersuaded" and could not "take seriously" the challengers' argument
that the different procedures amounted to "invidious" discrimination that offends the
Constitution.[7] *Id. White* therefore permits states to require major political parties to use one
method of nomination while allowing minor political parties to use another.

Third, unlike classifications based on race, religion, gender, and alienage, political parties
and their affiliated voters are not a suspect class. *See Greenville II*, 824 F. Supp. 2d at 669 (citing
*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Plaintiffs cite no

---

[7] Lower federal courts agree that differences between major and minor political parties do not
amount to an equal protection violation, particularly where each has its own unique benefits
under state law. *See Bd. of Election Comm'rs of Chicago v. Libertarian Party of Ill.*, 591 F.2d
22, 27 (7th Cir. 1979) ("[A]lthough Illinois treats established and new political parties
differently, it affords different advantages to each group which reasonably correspond to their
needs and to the interest of the public in an open election with convenient and intelligible
ballots."). In Colorado, major parties enjoy a host of benefits unavailable to minor parties,
including but not limited to top billing on the ballot, Colo. Rev. Stat. § 1-5-404(1)(a), having
priority in recommending election judges, §§ 1-6-103(2) & -104(3), having half of all election
judges and supervisor election judges in each voter service and polling center be affiliated with
their party, §§ 1-6-109 & -109.5, appointing members of the county canvass board, § 1-10-
101(1)(a), nominating audit and testing board members, § 1-7-509(1)(c)(I); 8 C.C.R. 1505-1,
Rule 25.2.2(c), and receiving voter information lists after each general election, § 1-2-605(8).

authority suggesting otherwise. Thus, Colorado's classification between major and minor political parties passes muster if rationally related to a legitimate state interest—a deferential bar it easily satisfies. *See Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 685 (2012) (stating equal protection does not require the government "to draw the perfect line nor even to draw a line superior to some other line it might have drawn" but "only that the line actually drawn be a rational line"). Here, Colorado could rationally decide both that (1) unaffiliated voters should (absent the party opting out) have a voice in selecting the nominees of the major political parties who will go on to appear on the general election ballot and, in all likelihood, win the election, but also (2) smaller nascent political parties should be afforded the opportunity to recruit like-minded voters to join their party, spur enthusiasm, and encourage fellow members to vote in a closed primary where they will have an outsized influence in shaping the minor party's future, including perhaps growing into a major political party. Plaintiffs' equal protection claims fail.

### 4.    *The* Purcell *doctrine counsels against court intervention.*

Even if Plaintiffs' arguments were likely to succeed (they aren't), the Supreme Court's *Purcell* doctrine would counsel against court intervention in Colorado's ongoing election planning activities: "Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). As election officials will attest, making eleventh-hour changes to Colorado's voting systems and processes to accommodate any change to Proposition 108 carries serious risks. Ex. A, pp. 4-6. After Proposition 108 was approved, Colorado had more than a year to design and implement needed changes to its statewide voter registration system so that it could track voter eligibility and prevent unaffiliated

voters from casting more than one primary ballot. *Id.* at 4. Forcing nine months to a year of development and testing work into the short window between now and the April 29, 2022 ballot certification deadline would create significant risks to the system applications and to the election process. *Id.* at 4-5. Moreover, if Proposition 108 were enjoined, Colorado would need to launch a substantial effort to educate voters about the change ahead of the June 6, 2022 party affiliation deadline. Substantial misinformation currently surrounds elections and a last-minute change of this nature would only amplify these inaccurate messages. *Id.* at 5-6.

## II.    Plaintiffs will not suffer irreparable harm absent a preliminary injunction.

Plaintiffs must establish that they will suffer irreparable harm that is "both certain and great," not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quotations omitted). Plaintiffs have failed to make this heightened showing for three reasons. First, Proposition 108 has been on the books since 2016, yet Plaintiffs delayed more than five years in bringing this challenge. Worse still, Plaintiffs allege an interest in challenging Proposition 108 as of September 18, 2021, Doc. 1 at 3-4, but they procrastinated until late February 2022 before finally initiating suit—smack in the middle of election officials' critical planning for the June 28, 2022 primary. Ex. A, pp. 3-6. A plaintiff's delay in initiating a case, even in cases arising under the First Amendment, "weighs heavily against the issuance of a preliminary injunction." *Colo. Union of Taxpayers v. Griswold*, No. 20-cv-02766-CMA-SKC, 2020 WL 6290380, at *3 (D. Colo. Oct. 27, 2020). Other courts have not hesitated to deny preliminary injunctive relief when the plaintiffs delayed challenging their state's primary system under the First Amendment. *See, e.g.*, *Miss. State Democratic Party v. Barbour*, No. 4:06CV29-P-B, 2006 WL 1302478, at *2 (N.D. Miss. May 10, 2006).

Second, the irreparable harm Plaintiffs claim—party "raiding" by unaffiliated voters hoping to oust a Republican incumbent—is speculative. Doc. 2-1 at 13. Plaintiffs cite no evidence that such raiding has occurred previously, and the Supreme Court has explained that it has "never been conclusively proven by survey research." *Tashjian*, 479 U.S. at 219 n.9 (quotations omitted). Even if it existed, granting Plaintiffs preliminary injunctive relief will not prevent their alleged injury. As *Tashjian* explains, under a closed primary system "independent raiders need only register as Republicans and vote in the primary." *Id.* at 219. Therefore, Plaintiffs' requested remedy of closing the Colorado Republican Party's primary might "actually *assist* a 'raid' by independents, which could be organized and implemented at the 11th hour." *Id.*

Finally, Plaintiffs claim that a violation of a constitutional right is alone sufficient to constitute irreparable injury. Doc. 2-1 at 12. But while the alleged violation of a constitutional right weighs heavily in the irreparable harm analysis, the Court "must nonetheless engage in [the] traditional equitable inquiry as to the presence of irreparable harm in such a context[.]" *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). As discussed, Plaintiffs have not shown either a substantial likelihood of success on the merits or *their own* irreparable injury.

## III.    The balance of the equities and public interest weigh heavily in Colorado's favor and against Plaintiffs.

The last two factors, the balance of equities and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors weigh strongly in Colorado's favor. Plaintiffs' requested relief, if granted, would disenfranchise thousands of unaffiliated Coloradans and deprive them of the opportunity to participate in a primary that the Colorado Republican Party believes should be open to unaffiliated voters. Plaintiffs' requested relief would also cause significant disarray and disruption to Colorado's

ongoing election planning and preparation activities, disserving the public interest. Ex. A, pp. 4-6; *see Garcia v. Griswold*, No. 20-cv-1268-WJM, 2020 WL 4926051, at *4 (D. Colo. Aug. 21, 2020) ("Ballots and elections do not magically materialize. They require planning, preparation, and studious attention to detail if the fairness and integrity of the electoral process is to be observed." (quotations omitted)). Election officials, parties, candidates, and voters have all taken steps to prepare for the 2022 primary based on the understanding that Proposition 108 is the law in Colorado. Changing the rules of the game at this late hour, while perhaps beneficial to Plaintiffs' campaigns, would be disastrous for others and lead to immense voter confusion. *See id.* at *5 (denying injunction that would "result in voter confusion and consequent incentive to remain away from the polls." (quotations omitted)). Finally, Plaintiffs have failed to join the Colorado Republican Party or indeed the Colorado Democratic Party to this lawsuit, even though the requested relief most certainly affects them. As other courts have explained, granting a preliminary injunction without the political parties' input on this important question would disserve the public interest. *See Barbour*, 2006 WL 1302478, at *3.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied.

Dated: March 14, 2022

PHILIP J. WEISER
Attorney General

s/ Grant T. Sullivan

*Grant T. Sullivan*, Assistant Solicitor General
*Emily Buckley,* Assistant Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6349 / 6403
Email: grant.sullivan@coag.gov; emily.buckley@coag.gov
*Attorneys for Defendant*

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 14, 2022, I served a true and complete copy of the foregoing **DEFENDANT'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

John C. Eastman
Constitutional Counsel Group
174 West Lincoln Avenue, Suite 620
Anaheim, CA  92805-2901
jeastman@ccg1776.com


Randy Blair Corporon
Law Offices of Randy B. Corporon, P.C.
2821 South Parker Road
Suite 555
Aurora, CO  80014
rbc@corporonlaw.com

*Attorneys for Plaintiffs*


                                          *s/* Leslie Bostwick
                                          *Leslie Bostwick*