# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-00477-PAB-MEH

PARABLE, an unincorporated nonprofit association, on behalf of itself and its members, et al.,

    Plaintiffs,

v.

JENA GRISWOLD, in her official capacity as Secretary of State for the State of Colorado,

    Defendant.

## BRIEF OF *AMICI CURIAE* GOVERNOR POLIS AND ATTORNEY GENERAL WEISER IN SUPPORT OF DEFENDANT

NATALIE HANLON LEH
Chief Deputy Attorney General
ERIC R. OLSON
Solicitor General
KURTIS T. MORRISON
Deputy Attorney General
ABIGAIL M. HINCHCLIFF
First Assistant Attorney General
1300 Broadway, 10th Floor
Denver, Colorado 80203

Attorneys for *Amici Curiae*

## INTRODUCTION

Plaintiffs seek relief on behalf of a political party that did not choose to join the Plaintiffs' suit. And the relief they seek is extraordinary. At each step of their argument, Plaintiffs ask this court to disregard the rights and choices of the State, the voters that approved the law, and Plaintiffs' own political party.

Under Supreme Court precedent, states may determine the nominating process for state offices. Ignoring this authority, Plaintiffs ask this court—without the guidance of any manageable legal standards—to force Colorado to facilitate the process that these Plaintiffs prefer. Under the U.S. Constitution, political parties have the right to choose whether to open or close their nomination process. The Colorado Republican Party did just that when it voted overwhelmingly to keep a semi-open primary rather than a closed assembly process. Plaintiffs now ask the Court to invalidate that choice. Finally, the people have a right under the Colorado Constitution to initiate laws governing the State and to manage the integrity of their elections. Yet Plaintiffs seek to override the will of the people and require the Court to rewrite a law approved by Colorado voters.

The Court should reject Plaintiffs' request for a preliminary injunction.

## ARGUMENT

### I. Plaintiffs allege constitutional violations on behalf of a party that has not joined their case.

The alleged right asserted by Plaintiffs here is an unusual one. Plaintiffs assert that their associational rights are violated when the political party to which they belong is "forced to associate with unaffiliated voters" in a semi-open primary. Doc.

1

2-1, Plaintiffs' Memorandum at 6. But Plaintiffs are not the Colorado Republican Party, and the Colorado Republican Party is not a party here. Rather, Plaintiffs are singular members of the Colorado Republican Party who happen to disagree with their party's decision to hold a semi-open primary.[1]

Plaintiffs note that the Republican State Central Committee voted to authorize the "Republican Party of Colorado, its members, or both" to bring this lawsuit. Doc. 1, Complaint at ¶ 31. But only five individual members of the Colorado Republican Party are plaintiffs here; the Party itself is not.[2] Plaintiffs lack standing to bring their constitutional claims on behalf of a party that chose not to join their suit or file a separate action itself.

## II. Plaintiffs' alleged associational right would force Colorado to use state power contrary to Supreme Court precedent.

Even if Plaintiffs had standing to raise their constitutional claims, Proposition 108 does not compel political parties to associate with unaffiliated voters. Instead, it expressly allows parties to nominate candidates by a closed assembly or convention, thereby offering political parties the option to remove unaffiliated voters from this process. C.R.S. § 1-4-702(1). The right Plaintiffs seek is the right to force the State to use its election machinery—including all taxpayer-funded resources required to

---

[1] *Colorado Matters: Colorado GOP chair on party's priorities; Remembering Ron Miles*, Colorado Public Radio (March 11, 2022) *available at* https://www.npr.org/podcasts/413443142/colorado-matters (statement at 20:32 by party chair: "that's a lawsuit that [the] Colorado GOP is not involved in. The people bringing that are representing specific Republicans who share that viewpoint[.]").

[2] As of 2021, the Republican State Central Committee had 686 voting members. *See* Doc. 1, Complaint at 8.

support a statewide primary—in a manner contrary to that authorized by law in the state and approved by voters.

Prior Supreme Court caselaw rejected the very argument Plaintiffs advance here. Though a party has the right to close its nominating contest, it has no concomitant right to require the State to conduct and pay for whatever type of nominating contest the party desires. *California Democratic Party v. Jones*, 530 U.S. 567 (2000). In fact, the reverse is true. The Supreme Court acknowledged that "[s]tates have a major role to play in *structuring* and monitoring the election process, including primaries." *Id.* at 572 (emphasis added). And the Court considered it "too plain for argument" that a state may choose the process a party uses to select its nominees. *Id.* (quotation omitted).

The division of rights is clear. A state cannot require a party to keep its primary open, or to keep its primary closed. *Id.*; *see also Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 215-16 (1986). But when a political party engages in a state-run and state-financed election, the state acquires a "legitimate governmental interest in ensuring the fairness of the party's nominating process, enabling it to prescribe what that process must be." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202-03 (2008).

That is what Colorado did here. In approving Proposition 108, Colorado voters allowed political parties to hold a semi-open primary election using the State's voting machinery and taxpayer funds. And Proposition 108 offers the option for major political parties to bar unaffiliated voters from their nominating contests—by

allowing candidate selection via a "closed" assembly or convention should at least three-fourths of a party's central committee members approve. C.R.S. § 1-4-702(1). Plaintiffs now seek a court order that would require the State to hold and pay for a closed primary—a candidate selection method that was eliminated by Proposition 108. There is no right to force the State to expend millions to hold the type of nominating contest that these Plaintiffs prefer.

### III. Plaintiffs' arguments would frustrate the State's legitimate reasons to offer a semi-open primary and a closed caucus or assembly.

While any conceivable nominating process "invariably impose[s] some burden upon individual voters and political parties," these burdens "must necessarily accommodate a state's legitimate interest in providing order, stability, and legitimacy to the electoral process." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1076 (10th Cir. 2018). Proposition 108 serves the State's legitimate interests in the fairness and stability of Colorado's nominating process.

In approving Proposition 108, Colorado voters created the opportunity for all voters to participate fully in a publicly financed election. *See* App'x A, "An Analysis of 2016 Ballot Proposals," LEGIS. COUNCIL OF THE COLO. GEN. ASSEM. at 66 (Sept. 12, 2016) ("2016 Blue Book"). Prior to Proposition 108, unaffiliated voters—a significant portion of the Colorado electorate—could not help choose the candidates that appeared on the general election ballot. In some if not most elections, the primary election is more consequential than the general election in determining who holds public office. Consequently, prior to Proposition 108, unaffiliated voters in such elections had little to no meaningful participation in selecting their elected

representatives. Proposition 108 gives these unaffiliated voters a voice in the selection of candidates for public office if a political party chooses to hold a semi-open primary.

The people of Colorado determined that Proposition 108's balance—providing a semi-open primary, and a closed caucus or assembly—best served the State's interest in the fairness of its nominating process. *New York State Bd. of Elections*, 552 U.S. at 202 (states have a "legitimate governmental interest in ensuring the fairness of the party's nominating process"). The choice to enfranchise unaffiliated voters in primary elections was made (in part) to grant "unaffiliated voters, who are Colorado taxpayers, the opportunity to vote in publicly financed primary elections." App'x A, 2016 Bluebook at 66. The voters therefore decided to allow major parties to use state funds to host a primary only if a political party kept its primary semi-open to unaffiliated voters. Political parties may close their nominating processes if they so choose, but may not use the money of unaffiliated taxpayers to fund a statewide primary when they do so.

The structure of Proposition 108's opt-out provision also reinforces the order and stability of Colorado's elections. The requirement that three-fourths of a major political party's central committee endorse a change to restrict selection of candidates to party members in a closed assembly or convention is sensible, reasonable, and serves important priorities. If the opt-out threshold were easily crossed, a party might revert back and forth between nominating systems with the prevailing political winds. This in turn would cause primary elections to be less stable and lead to voter

confusion. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (discussing risks of voter confusion based on pre-election changes to applicable rules). In any event, the threshold set by Proposition 108 would not have mattered to this case, as two-thirds of the Colorado Republican Party's State Central Committee voted to reject a closed assembly or convention and instead keep a semi-open primary.[3] In short, the Colorado Republican Party would not have changed its nominating process for this election even if the threshold for change was a simple majority.

States may not violate the associational rights of parties by requiring parties to include non-members in their nomination process. But if states provide the option for political parties to include or exclude non-members, states may structure their nominating process to promote legitimate public interests in electoral fairness and stability. That is what Colorado has done here.

### IV.  Plaintiffs' argument would defy the will of the Colorado Republican Party.

Proposition 108 allows political parties to choose whether to proceed with a semi-open primary that includes unaffiliated voters, or to select candidates via a closed assembly or convention. Plaintiffs imply that a political party must necessarily prefer a closed contest. But there are compelling reasons for political parties to include unaffiliated voters in their nominating contests. Here, the Colorado Republican Party overwhelmingly rejected the option to proceed via assembly or

---

[3] Alex Burness, *Millions will keep primary voting access as Colorado GOP rejects controversial opt-out plan*, THE DENVER POST, Sept. 18, 2021, https://tinyurl.com/bderhprv (last visited March 12, 2022).

convention and will move forward with a semi-open primary election to select its candidates.[4] This choice was made using the reasonable processes established by Proposition 108. The Court should respect the Colorado Republican Party's choice.

There are good reasons for political parties to affirmatively choose an open or semi-open primary, and good reasons to disregard Plaintiffs' suggestion that political parties fear disruption by unaffiliated voters. First, unaffiliated voters often hold a preference towards and are consistent voters for a particular political party. An overwhelming majority of unaffiliated voters—over eighty percent—lean toward either the Republican Party or the Democratic Party. *See* Pew Research Center, *Political Independents: Who They Are, What They Think* (March 14, 2019).[5] A political party might naturally wish to ensure that the candidate it selects is acceptable to these voters as well as to party members.

More strategically, political parties may wish, for good reasons, to seek the views of unaffiliated voters in party primaries. This is especially so where, as in Colorado, unaffiliated voters are essential to winning any general election. Excluding unaffiliated voters from a primary, as some Republican Party leaders have noted,[6]

---

[4] *Id.*

[5] *Available at* https://www.pewresearch.org/politics/2019/03/14/political-independents-who-they-are-what-they-think.

[6] As former Republican State Treasurer noted in, "Colorado Republicans are flirting with political suicide . . . We can't win elections without attracting unaffiliated voters, whom Democrats shrewdly embrace. If Republicans shun them, our party—and candidates—will become irrelevant." Mark Hillman, Opinion, "The Podium: GOP Can't Afford to Shun UAV, Colorado Politics (Aug. 18, 2021), *available at*

threatens to harm the electoral prospects of a political party's candidate. Consequently, political parties selecting the process that determines the candidates on the ballot will need to consider carefully whether they opt for a candidate whose views are more responsive to the views of the majority than a candidate voted on only by those who choose to affiliate with a political party.

Plaintiffs raise the specter of so-called "party raiding"—that is, where partisans from one political party tactically vote in another party's elections—as a risk a political party assumes when participating in an open or semi-open primary. Though these concerns are sometimes highlighted by advocates, *see* Doc. 2-1 at 6, "party raiding" more often haunts arguments in court than polling places. Neither courts nor recent literature have found actual evidence of this sort of voting behavior. *See, e.g.*, Rick Rojas, *There's No G.O.P. Primary in South Carolina. Some Republicans Will Vote Anyway*, N.Y. TIMES (Feb. 25, 2020) (noting that "evidence of [party raiding] efforts achieving any sort of significant influence is hard to find.");[7] John Johnson, *Do Primary Voters Strategically Vote in the Opposition's Primary?*, MARQUETTE UNIV. LAW SCH. FACULTY BLOG (Feb. 20, 2019) (in study of Wisconsin's open primaries, "there is no evidence that this kind of voting behavior occurs at all[.]");[8] *see also Tashjian*, 479 U.S. at 219 n.9 (noting that a study commissioned by the national

---

https://www.coloradopolitics.com/opinion/the-podium-gop-cant-afford-to-shun-the-uav/article_999fc10a-ffd1-11eb-86df-5b0b2f142aa3.html.

[7] *Available at* https://www.nytimes.com/2020/02/25/us/south-carolina-primary-operation-chaos.html?smid=tw-nytimes&smtyp=cur.

[8] *Available at* https://law.marquette.edu/facultyblog/2019/02/do-primary-voters-strategically-vote-in-the-oppositions-primary.

Democratic Party "concluded that the existence of 'raiding' has never been conclusively proven by survey research" (cleaned up)). The Court should reject these arguments as unsupported.

There are compelling reasons for a party to prefer open or semi-open primaries. The Colorado Republican Party opted to keep its nominating contest semi-open. The Court should respect that choice.

### V.   The remedy sought by Plaintiffs would re-write Proposition 108 and cause confusion and chaos.

Finally, the remedy that Plaintiffs seek is unlawful. They do not seek to simply invalidate Proposition 108. Instead, they ask the Court to re-write it: by including an option for any major political party "to notify the Secretary of State by April 14, 2022, that they wish to prohibit unaffiliated electors from voting in their primary elections." Doc. 2-1, Plaintiffs' Memorandum at 16. This so-called remedy is both legally inappropriate and practically unworkable. It risks injecting confusion and chaos into Colorado's candidate selection process.

First, the option of a closed, taxpayer-financed and government-supervised primary for major parties was never approved by the electorate. In fact, it was eliminated as an option as soon as Proposition 108 took effect. When a statute is unconstitutional, neither plaintiffs nor courts may rewrite the statute in the way they prefer to avoid the perceived constitutional infirmity. *E.g.*, *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) ("[I]t it is not the proper role of the courts to rewrite the laws[.]"); *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) (noting that a court "must interpret the statute, not rewrite it"). This rule is particularly important in election

law, where "[w]ith uncertain limits, intervening courts—even when proceeding with best intentions—[] risk assuming political, not legal, responsibility for a process that often produces ill will and distrust." *Vieth v. Jubelirer*, 541 U.S. 267, 307 (2004) (Kennedy, J., concurring).

Yet that is what Plaintiffs seek to do here, by asking the Court to craft a new law, offering major political parties the option to choose closed primaries. In so doing, Plaintiffs ask the Court to nullify the voters' will and for the Court to insert its own alternative nominating process. This proposed remedy disregards both the will of the voters in passing Proposition 108 and the role of the Court in interpreting it.

Plaintiffs' "remedy" is also unworkable. Plaintiffs seek a court order that the State must hold a closed primary if a party so chooses. The details, however, are left unsaid. Who in the party decides whether the primary should be closed—some of its members (but which ones?), its central committee, or some other body? How will the decision be made—by vote, or by some other method? If by vote, what percentage of members must vote for a closed primary? Where and when would such a vote take place, and how would the party ensure that its members were appropriately notified? And if the party does not vote for a closed primary, does the nominating contest default to a semi-open primary, an assembly, or a convention?

Each of these questions highlights that Plaintiffs ask the Court to rewrite the text of Proposition 108—and fill in the blanks itself. And were the Court not to fill in these details (which it cannot do), the primary election would be thrown into chaos only months before the Colorado primaries, resulting in serial and piecemeal

litigation for which there is no hope of a quick resolution consistent with an orderly primary and general election that would guarantee a republican form of government under Article IV Section Four of the United States Constitution. A change to Colorado's election laws that would at the very least cause this inevitable chaos would itself violate the Supreme Court's rule against changes that would cause "judicially created confusion" in an upcoming election. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell*, 549 U.S. at 4). The Court should decline Plaintiffs' invitation to make such changes here.

## CONCLUSION

*Amici* Governor Jared Polis and Attorney General Philip J. Weiser respectfully urge the Court to reject Plaintiffs' motion for a preliminary injunction.

Dated March 14, 2022.

                                  PHILIP J. WEISER
                                  Attorney General of Colorado

_/s/ Abigail M. Hinchcliff_
NATALIE HANLON LEH
Chief Deputy Attorney General

ERIC R. OLSON
Solicitor General

KURTIS T. MORRISON
Deputy Attorney General

*ABIGAIL M. HINCHCLIFF
First Assistant Attorney General

1300 Broadway, 10th Floor
Denver, Colorado 80203
Abigail.Hinchcliff@coag.gov

Attorneys for *Amici Curiae*

**Counsel of Record*

## CERTIFICATE OF SERVICE

      I certify that on March 14, 2022, this document was filed with the Clerk of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

Dated: March 14, 2022          Respectfully submitted,

/s/ *Abigail M. Hinchcliff*
Abigail M. Hinchcliff