IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-00477-JLK

**PARABLE**, on behalf of itself and its members, *et al.*, *Plaintiffs*,

v.

**JENA GRISWOLD**, in her official capacity as Colorado Secretary of State, *Defendant*.

**PLAINITFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

### I. Defendant's Contention that Plaintiffs' Lack Standing Ignores Critical Evidence and Misconstrues Relevant Precedent.[1]

Defendant's assertion that Plaintiffs lack standing is based on three fundamental errors.

First, she misconstrues the Republican Party State Central Committee (SCC's) vote *against* the "opt out" allowed by Proposition 108 as a vote *in favor of* continuing participation in Colorado's semi-open primary system. But because the "opt out" provision allows only nomination by assembly caucus or convention rather than a primary election open to all registered Republican voters, it creates an unenviable and unconstitutional Hobson's choice—forego a primary election where the nominee is chosen only by all voters affiliated with the party, or allow unaffiliated voters to influence—perhaps dispositively—the choice of nominee. Both alternatives unconstitutionally violate the associational rights of the party and its members.

At the very same meeting where a majority of SCC members voted against the opt-out, they unanimously adopted a resolution authorizing this lawsuit challenging Proposition 108. That resolution, attached as Exhibit 2 to Plaintiffs' complaint and authenticated by the

---

[1] Defendant's arguments on standing and likelihood of success in its Response Brief (Doc.14) are identical to its arguments in its motion to dismiss under Rules 12(b)(1) and (6). (Doc.27). This section and the next therefore respond to both pleadings.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 1**

accompanying Declaration of Charles Heatherly, expressly provides that "a majority of the (SCC) supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican Party are eligible to participate." Complaint Ex. 2; Heatherly Decl. ¶ 5. Defendant's repeated assertions to the contrary[2] simply cannot be squared with that undisputed fact.

Second, Defendant contends that Plaintiffs do not have standing to raise Speech and Association claims, as well as their Equal Protection claims, because those claims belong only to the party, not to individual members of the party or candidates, which overlooks the express language of the unanimous Resolution authorizing this litigation:

> THEREFORE, BE IT RESOLVED, by the … (SCC), properly assembled this 18th Day of September, 2021, that a lawsuit is authorized to be initiated … by the Colorado Republican Party, *its members*, or both, at the earliest possible date to challenge the constitutionality of Proposition 108.

Complaint Ex. 2 (emphasis added). In other words, the Party itself, acting in the only way it can (through its governing body, the SCC), expressly authorized this challenge to Proposition 108 by the "Party, its members, or both."

Third, Defendant's claim that the Supreme Court and other courts have held that *only* a political party has association and speech rights grossly mischaracterizes those decisions. In *Tashjian*, for example, suit was brought by both the Party, the Party's chairman, and several individual members who were federal officeholders. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 211 (1986). Nowhere does the Court limit its holding to the associational rights of the Party alone; to the contrary, it repeatedly references the associational rights of both the party

---

[2] *See e.g.*, Opp. at 1 ("Last year, the Colorado Republican Party voted—by a clear majority—to hold a semi-open primary and permit unaffiliated voters to participate"); *id.* at 6 ("the choice [the Party] already made to allow unaffiliated voters to participate in its primary").

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 2**

*and its members*,³ an idea frequently repeated by the Supreme Court.⁴

The couple of lower court decisions Defendant uses to stake out the contrary claim involve the distinctly different situation where party members were seeking to advance their own associational interests in ways opposed to those of the party. Those cases simply stand for the non-objectionable proposition that when a Party, acting through its governing body, takes a position on who to include, individual members cannot assert associational rights to a different determination. *See Osburn v. Cox*, 369 F.3d 1283, 1285 (11th Cir. 2004) (Plaintiffs – several Democrat voters – actually named the Georgia Democratic Party as a defendant in the case challenging Georgia's open primary law); *Righeimer v. Jones*, No. CIV. S-00-1522DFLPAN, 2000 WL 1346808, at *1 (E.D. Cal. Sept. 14, 2000) (holding that "no First Amendment interests of *dissenting members or candidates* are implicated." (emphasis added)); *Beck v. Ysursa*, No. CV 07-299-MHW, 2007 WL 4224051, at *5 (D. Idaho Nov. 27, 2007) (denying standing to party members where the party had decided "to utilize the legislative process to enact statutory changes to implement the Closed Party Primary Rule" rather than pursue litigation). Those cases are inapposite since, here, the SCC has expressly authorized a legal challenge by its members.

*Greenville Cty. Republican Party Exec. Comm. v. Way*, No. CV 6:10-1407-MGL, 2013 WL 12385313 (D.S.C. Aug. 30, 2013), also relied upon by Defendant, is particularly instructive.

---

³ *See, e.g., id.* at 215 ("'[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents'" (quoting *Democratic Party of the United States v. Wisconsin*, 450 U.S. 107, 122 (1981)).

⁴ *See, e.g.*, *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989) ("If the challenged law burdens the rights of political parties *and their members*, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest, … and is narrowly tailored to serve that interest,…") (citing numerous cases)*; see also California Democratic Party v. Jones*, 530 U.S. 567, 584 (2000) ("The voter who feels himself disenfranchised should simply join the party. That may put him to a hard choice, but it is not a state-imposed restriction upon *his* freedom of association, whereas compelling party members to accept his selection of their nominee *is* a state-imposed restriction upon theirs.").

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 3**

There, the statewide republican party had withdrawn from the litigation and decided to participate in the open primary, so "the conduct Plaintiffs [a county party and individual county chairman] are seeking to redress is merely the position of the State Republican Party."[5] Because the Colorado Republican Party governing body, the SCC, unanimously voted to authorize its members to file a lawsuit challenging Proposition 108 and expressly stated that a majority of the party supported holding a primary in which only Republican voters could participate, *Miller* rather than *Marshall* is the relevant decision, *see* fn 5.

Defendant's argument that Plaintiffs also lack standing to pursue their Equal Protection claims is based on the same false assertion that the Party made a "policy choice to participate in Colorado's semi-open primary rather than opt out." Opp. at 7. So, it is simply not true that the Party's policy position "breaks the causal chain" on Plaintiffs' vote dilution claims, or on its discriminatory treatment claims. The Party, just as Plaintiffs here, has clearly gone on record as supporting a primary election in which only members of the Party are allowed to participate.

## II. Defendant's Contention that Plaintiffs Are Unlikely to Succeed on the Merits of *Any* of their Constitutional Claims Is Erroneous.

Defendant next argues that, even if the Court holds that Plaintiffs have standing, they are unlikely to succeed on the merits of their claims. Case law strongly supports Plaintiffs' likelihood of success on each of their constitutional claims.

### a. Defendant's Claim that "Proposition 108 does not substantially burden associational rights" is Undercut by Supreme Court and Other Precedent.

---

[5] Significantly, the court considered two Fourth Circuit decisions involving challenges to Virginia's open primary law, *Marshall v. Meadows*, 105 F.3d 904 (4th Cir. 1997) and *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006), which issued opposite rulings on standing. In *Marshall,* because the alleged injury to Plaintiffs was caused by a voluntary choice made by the Virginia Republican Party and not the Open Primary Law, the court held that plaintiffs had not established causation and therefore had no standing. *Marshall*, 105 F.3d at 906. But by the time *Miller* was decided, the Virginia Republican Party had taken a position against the open primary, thereby aligning the state party and the local party in opposition to the state primary law itself, and conferring standing on the local party.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 4**

The gravamen of Defendant's argument against Plaintiffs' First Amendment Freedom of Association claims is that Proposition 108 "does not impose a substantial burden on a political party's associational rights … [b]ecause political parties have a *choice* between participating in Colorado's semi-open primary or opting out…." Opp. at 8.

Some choice. The "opt-out" provision sets a threshold that is nearly impossible to meet, *see* Gessler Decl. ¶ 10, and even if it could be met, the law bars the party from choosing a primary election limited only to Republican voters—the one choice that the State Central Committee unanimously supported. Complaint Ex. 2; Heatherly Decl. ¶ 5.

None of the cases cited by Defendant in support of her claim that there is no "substantial burden" on associational rights of Plaintiffs here even involved, much less held, that such a Hobson's-choice alternative as the "opt-out" provision vitiates any claim of substantial burden. It is therefore simply not the case that these "Supreme Court decisions … strongly suggest that only mandatory candidate nomination schemes can significantly burden a political party's right to free association," as Defendant asserts. Opp. at 8-9.

The district court[6] in *Greenville Cnty. Rep. Party Exec. Comm. v. South Carolina*, 824 F.Supp.2d 655 (D.S.C. 2011), on which Defendant also relies, rejected a *facial* challenge to an open primary law, *see id.* at 660 (noting that "the parties filed cross-motions for summary judgement only as to Plaintiffs' facial constitutional challenge"), but it expressly did not address "any as applied constitutional arguments." *Id.* at 661 n.4. Before it could address the "as-applied" challenges (and prior to an appeal of the district court's ruling against the *facial* challenge), the

---

[6] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case," of course. *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) (quoting 18 Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)). This is particularly true when developments subsequent to the entry of the district court's opinion deprived the court of appeals of jurisdiction to hear an appeal. *Cf. United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 5**

State Party, an original plaintiff, decided "to utilize the open primary system" and withdrew from the case, which was then dismissed because the remaining plaintiffs—who were still advocating a position now contrary to the State Party—lacked standing. *Greenville Cnty. Republican Party Exec. Comm. v. Greenville Cnty. Election Com'n.*, 604 Fed.Appx. 244, 250 (4th Cir. 2015).

As importantly, the Circuit Court decision on which the *Greenville Cnty. Republican Party* court relied for its holding on the *facial* challenge dealt with a state statute where "a party [was] free to select from various methods of nomination in which it can exclude voters who do not share its views—*including a closed primary*…." *Miller v. Brown*, 503 F.3d 360, 368 (4th Cir. 2007) (emphasis added). A "closed primary" limited to party members is the very choice *denied* to major political parties here. And although the availability of a closed primary undermined the *facial* challenge in the case, *Miller* also held that Virginia's open primary law was unconstitutional *as applied* because an individual incumbent office holder could compel the party to participate in Virginia's open primary, just as a very small minority (and frequently with insufficient attendance, not even that) of the SCC here can compel the party to participate in Colorado's open primary. *See* Stipulation of Facts ¶¶ 3, 5 (Doc.26). Defendant's assertion, yet again, that "the state party chose to participate in Colorado's semi-open primary by a two-thirds majority" is as false on page 10 of its brief as it was on pages 1, 3, and 6, and it is contradicted by the explicit language in the resolution unanimously approved by the SCC noting that a majority supported a primary limited to Republican voters. Doc.1 Ex. 2; Heatherly Decl. ¶ 5.

### b. Nothwithstanding Defendant's Claims, the Opt-Out Provision Sets a Near-Impossible Threshold and Prohibits the Party From Associating With the Bulk of Its Own Voters in a Primary Election Limited to Party Members.

In their opening brief, Plaintiffs argued that the opt-out provision of Proposition 108, Colo. Rev. Stat. § 1-4-702, prevents a major political party from choosing its nominee by a primary election open only to party members. That alone is a severe burden on the First

Amendment associational rights of Plaintiffs and their political party. *See*, *e.g.*, *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989) ("Freedom of association … encompasses a political party's decisions about the identity of, and the process for electing, its leaders."). Yet instead of contesting that point, Defendant instead focusses on Plaintiffs' challenge to a second flaw with the opt-out provision; namely, that the three-quarters total membership vote requirement is itself a violation of the Freedom of Association because it allows a small minority (if even that) of the SCC to force the Party to utilize the open primary system.[7] Defendant simply asserts that "[t]he three-fourths requirement is a reasonable procedural rule and passes constitutional muster because it does not violate a party's associational rights." That unsupported claim is contradicted by former Secretary of State Gessler. *See* Gessler Decl. ¶ 10. And the *Greenville* district court decision from the District of South Carolina that Defendant cites for that proposition is in significant tension with the Supreme Court's decisions in both *Jones* and *Eu*. There really should be no dispute, under *Jones* and *Eu*, that forcing a political party to participate in an open primary unless it can achieve an overwhelming supermajority vote of its members is a severe infringement of the party's associational rights which, after all, are typically expressed by majority vote.

Tellingly, Defendant's own subsequent argument about the state interest at stake here undercuts the limited choice afforded by the "opt-out" provision. "States also have an important interest in permitting political parties to allow greater voter participation in the electoral process—should the parties choose to do so," Defendant contends. Yet permitting the party to allow

---

[7] Plaintiffs inadvertently cited incorrect attendance and total membership numbers from the 2021 SCC in their Complaint at ¶ 27. The correct numbers, contained in the Stipulation of Facts ¶ 3 (Doc.26) are: 441 members in attendance (in person or by proxy) out of a total membership of 521, an 84.6% attendance rate. But the point that a very small percentage of the total membership, 11.4%, could prevent an opt-out vote, remains valid. And in 2019, even a unanimous vote at the annual meeting would have been insufficient to qualify for the opt-out. *Id.* ¶ 5.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 7**

greater participation via a "Republicans only" primary election than is allowed under the opt-out provision is expressly denied to major political parties.

### c. Defendant Does Not Claim the Government's Asserted Interests Are Compelling, Nor Offer Any Argument to Demonstrate that Infringing Plaintiffs' First Amendment Rights Is Narrowly Tailored.

Defendant acknowledges that "[w]hen a state regulation imposes 'severe restrictions' on First Amendment rights, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" Opp. at 8 (quoting *Burdick*, 504 U.S. at 434). Yet instead of attempting to show that the severe burden on Plaintiffs' associational rights passes "strict scrutiny" because it is narrowly tailored to further a compelling governmental interest, Defendant instead chooses to rest on her claim that Proposition 108 imposes only a "perceived slight burden" on associational rights, an erroneous claim disputed above. Proposition 108 severely prohibits Plaintiffs altogether from participating in a primary election limited to voters who have chosen to associate with their party. Defendant's assertion of "important" and "significant" interests that she claims justify the "reasonable" restrictions on Plaintiffs' constitutional rights—the language of rational basis review—falls far short of strict scrutiny.

On page 12, for example, Defendant claims that "Colorado's interests in protecting and preserving the integrity of the nominating process, promoting fairness, allowing parties to increase voter participation, and ensuring administrative efficiency support its semi-open primary system." None of those interests qualify as "compelling,"[8] and even if they did, Defendant makes no attempt to show how they are furthered by restricting Plaintiffs and their party to a choice between having unaffiliated voters (in violation of First Amendment speech and

---

[8] Later in the brief, Defendant does refer back to what she calls "Colorado's compelling interests detailed above," Opp. at 14, but she does not offer any argument to support treating what she previously described as merely "important" interests as though they were "compelling."

PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 8

associational rights) or a small cadre of SCC members (in violation of the associational rights of nearly a million Colorado Republican voters) choose the nominee. Defendant makes no claim that a return to a Republicans-only primary would undermine "the integrity of the nominating process," for example, or that allowing parties to freely associate would undermine "fairness." Indeed, the opposite is true, as allowing a private association to decide for itself whether to allow non-members to participate upholds rather than undermines both "integrity" and "fairness."

The third supposed "interest" asserted by Defendant—"allowing parties to increase voter participation"—is actually undermined by forcing parties to *limit* participation to SCC members or caucus goers as the price for exercising their constitutional rights.

Defendant's next asserted interest is "administrative efficiency," but even if that interest were furthered by the open primary law (the added cost of sending two ballots to every unaffiliated voter strongly suggests otherwise), administrative efficiency is "clearly outweigh[ed]" by "individual interests," particularly when "fundamental rights are at stake." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 528 n.23 (1977). Again, Defendant offers no explanation, other than *ipse dixit*, as to how prohibiting parties from holding primary elections limited to their own members undermines administrative efficiency or offers "political parties broad forums in which to reach voters who share their ideology." Indeed, putting a political party to a choice between accepting those who *do not* "share their ideology" and a convention or caucus system (i.e., the opposite of a "broad forum") undermines Defendant's asserted interest.

Later in her brief, Defendant asserts an interest in "protect[ing] parties' ability to plan their primaries for a stable group of voters." Opp. at 13 (quoting *Clingman*, 544 U.S. at 596). Again, forcing a political party to accept unaffiliated voters, who can decide election by election which major political party's ballot to vote, is not conducive to planning for a "stable group of voters." It is neither narrowly tailored, nor even reasonably related, to such a purpose.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 9**

The only other governmental interest that Defendant asserts appears in the section explaining the need for a 3/4 vote of the party's SCC members to opt out of the open primary. "If the level were lower, say, 51 percent," she argues, "there is a material risk that the opportunity for unaffiliated voters to participate would vacillate regularly and create undue voter confusion." But Defendant cites no authority for the proposition that a political party's association rights must be fixed rather than allowed to "vacillate" as the party deems best to further its interests. And the two cases from the Fourth Circuit referenced in *Greenville Cnty. Republican Party*, on which Defendant relies, indicate that a party is permitted to change its views on who should be allowed to participate in its nominating process.[9]

### d. Defendant's Contention That Plaintiffs' Are Unlikely to Succeed on their Free Speech Claim Is Grounded on the Same False Assertion that the Party Has Decided to Choose its Nominees by Open Primary.

Defendant repeats the false assertion definitively rebutted above, namely, that "the Colorado Republican Party has elected to open its primary to unaffiliated votes." Shorn of that false foundation, Defendant is left with simply asserting that it has compelling interests in depriving Plaintiffs of their constitutional right to free speech. Just what those compelling interests are, Defendant does not say, other than to refer to unspecified prior portions of its brief. Yet the prior portions of the brief contended that Colorado had "important" interests, not "compelling" ones, and that its restrictions on Plaintiffs' constitutional rights were "reasonable"—a far more lenient test. That is not surprising, for as noted above, none of their interests asserted elsewhere in the brief qualify as "compelling," and the restrictions at issue here are certainly not "narrowly tailored" to further those interests, even if they were compelling.

---

[9] *Compare Marshall v. Meadows*, 105 F.3d 904 (4th Cir. 1997) (denying standing to party members because the party itself had adopted the open primary) with *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006) (upholding members' standing because the party had subsequently decided *not* to participate in an open primary).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 10**

### e.  Plaintiffs' Are Likely to Succeed on their Equal Protection Claims.

Defendant next argues that Plaintiffs' equal protection/vote dilution claim should not even be considered because it is "perfunctory" and "fail[s] to cite any court decision suggesting that a semi-open primary violates the equal protection rights of party members."  Actually, Plaintiffs cited the Supreme Court's landmark vote dilution case, *Reynolds v. Sims*, 377 U.S. 533, 568 (1964), and its comparison of vote dilution to "ballot-box stuffing," *id.* at 555.  We then pointed out that allowing unaffiliated voters to vote in a party primary against the party's wishes was akin to stuffing the ballot box with the votes of those unaffiliated voters.  If 100 party members vote to choose a nominee, each vote is worth $1/100^{th}$ of the total.  If 100 unaffiliated voters then cast votes against the party's wishes, each party member's vote is now worth $1/200^{th}$ of the total, or half as much.  The basic math demonstrates "vote dilution."

Defendant's other ground for opposing the Equal Protection/vote dilution claim is the repeatedly rebutted claim that the Party decided "to open the primary to unaffiliated voters."

Defendant also takes issue with the "discriminatory treatment" part of Plaintiffs' equal protection claim.  *Am. Party of Texas v. White*, 415 U.S. 767, 779 (1974), on which Defendant relies, dealt with minimal requirements for "ballot qualification," and the Court simply held that it was not invidious discrimination for a state to have different ballot access requirements for major parties and for minor parties with minimal support.  Here, minor parties are allowed to protect their First Amendment freedom of association rights by opting to exclude unaffiliated voters from their primary elections, but major parties are not—a distinctly different context than *White*.

The legal standard, which Defendant correctly acknowledges, is whether the classification treats people differently "who are in all *relevant* respects alike."  Opp. at 15 (quoting *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 53-54 (10th Cir. 2013), emphasis added).  Defendant identifies two differences between major and minor political parties: First, major parties have a

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 11**

gubernatorial candidate who received at least 10% of the vote at the last election, while minor parties don't; and second, because major parties are bigger, "there are significant logistical and scaling burdens that go into administering a primary election involving major party candidates that do not exist for primaries involving only minor." But neither difference is in any way *relevant* to Proposition 108's provision allowing minor parties to exclude unaffiliated voters but not major parties, and Defendant makes no argument to show that they are. Neither does Defendant explain how *increasing* the number of voters in a major party primary by forcing the party to include unaffiliated voters, as Proposition 108 does, would alleviate rather than exacerbate any logistical and scaling burdens that exist.

Finally, Defendant claims that because party affiliation is not a suspect class, rational basis rather than strict scrutiny should apply. Plaintiffs do not dispute that party affiliation is not a suspect class, but it is basic black letter law that strict scrutiny also applies to classification schemes that infringe fundamental rights, such as the freedom of association at issue here.[10]

### III.   *Purcell* Doesn't Bar a Challenge Four+ Months Prior to the Election.

Defendant next claims that the *Purcell* doctrine "counsel(s) against intervention." Opp. at 17 (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). But her "counsel" claim is undercut by the actual holding in *Purcell*, in which the Ninth Circuit enjoined a state election law—without explanation or justification—less than four weeks before the election. *Purcell*, 549 U.S. at 6. The Ninth Circuit's injunction was issued after the district court had already rejected the request, not because it was sought too close to the election, but because plaintiffs were unlikely to

---

[10] *See*, *e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) ("Rational basis review is the test this Court *normally* applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, *or a claim of fundamental right*." (emphasis added)); *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) ("When, as here, a claim involves a suspect classification *or a deprivation of a fundamental right* …, strict scrutiny applies." (emphasis added)).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 12**

succeed on the merits. *Purcell*, 549 U.S. at 3. The Supreme Court's decision vacating the Ninth Circuit's last-minute injunction did not take issue with the district court's consideration of the request for an injunction less than two months before the election.

The Supreme Court and lower courts have routinely noted how imminent was the election at issue in *Purcell*, and either denied (or stayed) an injunction because the election was similarly imminent or declined to apply that doctrine to requests for injunctive relief brought months before an election.[11]

In sum, the injunctive relief Plaintiffs seek here is "not on the 'eve of an election'" as the courts have defined that phrase. *Patino*, 229 F. Supp. 3d at 589 (S.D. Tex. 2017) (citing *Veasey v. Perry*, 769 F.3d 890, 894 (5th Cir. 2014)).[12] The injunction requested here is not barred by *Purcell*.

Defendant also contends, based on a Declaration submitted by a deputy elections director, that enjoining Proposition 108 "would create significant risks to the system applications and to the election process," and that "Colorado would need to launch a substantial effort to educate

---

[11] *Compare, e.g.*, *North Carolina v. League of Women Voters of N. Carolina*, 135 S.Ct. 6 (2014) (staying an October 3 injunction regulating an election for which early voting began October 16); *Husted v. Ohio State Conference of N.A.A.C.P.*, 135 S.Ct. 42 (2014) (staying an injunction affirmed on September 24 before an election for which early voting was to begin September 29); *with, e.g. Frank v. Walker*, 135 S.Ct. 7 (2014) (lifting the September 12 stay of an April injunction regulating an election for which early voting began October 20); *Patino v. City of Pasadena*, 229 F. Supp. 3d 582, 588-89 (S.D. Tex. 2017) (declining, in response to a *Purcell* challenge, to stay an injunction that was issued 2 days before candidate registration began and just over three months before early voting began); *Wright v. Sumter Cty. Bd. of Elections & Registration*, No. 1:14-CV-42 (WLS), 2018 WL 7365179, at *7 (M.D. Ga. Apr. 11, 2018) ("find[ing] that a school board election scheduled fifty-four days away is not 'imminent' such that an injunction would be categorically inappropriate."); *Holland v. Williams*, 457 F. Supp. 3d 979, 997 (D. Colo. 2018) ("In *Purcell*, it was a month before the election when an injunction was ordered. … Here, it is nearly five months before the 2018 elections.").

[12] And even were the more than four months at issue here to fall within some vague *Purcell* window, "it is important to remember that the Supreme Court in *Purcell* did not set forth a *per se* prohibition against enjoining voting laws on the eve of an election." *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 368 (9th Cir. 2016) (citing *Purcell*, 549 U.S. at 4).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 13**

voters about the change ahead of the June 6, 2022 party affiliation deadline." The accompanying Declaration of former Secretary of State Scott Gessler demonstrates that those claims are either factually wrong or exaggerated, and also wrong legally. *See* Decl. of Scott Gessler ¶¶ 15-31.

### IV. Plaintiffs' Timing Does Not Eliminate or Outweigh their Irreparable Harm.

The fact that Plaintiffs did not initiate costly litigation to challenge Proposition 108 in past elections, or waited to see if the Republican Party would itself bring the litigation, does not make the next round of constitutional violations any the less irreparable, particularly where, as here, Plaintiffs initiated this litigation more than four months before the next primary election.

Defendant's contention conflates delay with lack of irreparable harm, but that is not the law. Deprivation of First Amendment rights, even for a moment, constitutes irreparable harm.[13] Were it otherwise, then any unconstitutional conduct by the government could not be deemed to constitute irreparable injury if those harmed by it initially acquiesced—for prudential, financial, or other reasons. *Cf.* Decl. of Independence ¶ 2 ("Prudence, indeed, will dictate that Governments long established should not be changed for light and transient causes; and accordingly all experience hath shewn, that mankind are more disposed to suffer, while evils are sufferable, than to right themselves by abolishing the forms to which they are accustomed.").

Defendant's two unpublished district court decisions were both brought much closer to an election. *Colo. Union of Taxpayers v. Griswold*, No. 20-cv-02766-CMA-SKC, 2020 WL 6290380 (D. Colo. Oct. 27, 2020), was brought less than 2 months prior to general election. And *Miss. State Democratic Party v. Barbour*, No. 4:06CV29-P-B, 2006 WL 1302478 (N.D. Miss. 2006), was brought to enjoin a twenty-year-old election law less than a month prior.

---

[13] *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019). Although delay can cut against a finding of irreparable injury, *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social and Rehabilitation Servs.*, 31 F.3d 1536, 1543-44 (10th Cir.1994), it is "but one factor in the irreparable harm analysis," *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 14**

Defendant also seems to suggest that Plaintiffs must *prove* rather than merely speculate that there will be party raiding if unaffiliated voters are allowed to participate. But, although Plaintiffs' Complaint Exhibit 1 demonstrates party raiding efforts, proof of party raiding is not an element of a violation of First Amendment associational rights, and Defendant cites no case holding that it is. A state law that forces associations to allow non-members to participate in their nomination process violates that Freedom of Association, whether or not the non-members actually alter the election results. Concern about party raiding is one of the reasons the Supreme Court has recognized such freedoms, but is not a prerequisite to a constitutional challenge.

## V.     The Balance of the Equities Favors Plaintiffs, Not the Government.

Defendant's first ground that the balance of equities favors the Government is that "Plaintiffs' requested relief … would disenfranchise thousands of unaffiliated Coloradans and deprive them of the opportunity to participate in a primary that the Colorado Republican Party believes should be open to unaffiliated voters." The latter phrase has been repeatedly proven false above. And the first part is belied by Defendant's own argument just a page earlier that Plaintiffs' injury would not be remedied by injunctive relief because "independent raiders need only register as Republicans and vote in the primary." Opp. at 19 (quoting *Tashjian*, 479 U.S. at 219). They would only be unable to vote in the primary of a Party they have refused to join.

Defendant's second ground is that an injunction would cause "significant disarray and disruption to Colorado's ongoing election planning and preparation activities," rebutted above. Defendant's case, *Garcia v. Griswold*, No. 20-CV-1268-WJM, 2020 WL 4926051, at *4 (D. Colo. Aug. 21, 2020) (Senate candidate sought TRO to be on ballot despite failure to obtain required signatures on same day ballot certification required) is not applicable here, where the case was brought more than two months before the ballot certification deadline.

In short, Plaintiffs' constitutional rights outweigh Defendant's asserted interests.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION – Page 15**

Respectfully Submitted,

/s/ John C. Eastman
CONSTITUTIONAL COUNSEL GROUP
174 W. Lincoln Ave, #620
Anaheim, CA 92805
Telephone: (909) 257-3869
Fax: (714) 844-4817
Email: jeastman@ccg1776.com

/s/ Randy B. Corporon
LAW OFFICES OF RBC, PC
2821 S. Parker Road, Suite 555
Aurora, CO 80014
Telephone: (303) 749-0062
Fax: (720) 836-4201
Email: rbc@corporonlaw.com

*Attorneys for Plaintiffs*