IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00477-JLK

**PARABLE,** an unincorporated nonprofit association, on behalf of itself and its members;
**RON HANKS,**
**LAUREL IMER,**
**DAVE PETERS,**
**CHARLES W. "CASPER" STOCKHAM,**
**JOANN WINDHOLZ,**

    *Plaintiffs*,

v.

**JENA GRISWOLD**, in her official capacity as Colorado Secretary of State,

    *Defendant*.

---

## DECLARATION OF SCOTT GESSLER

---

I, Scott Gessler, declare under 28 U.S.C. § 1746, as follows:

1.     I am over 18 years of age.

2.     I am currently a partner at the law firm Gessler Blue LLC, located in Greenwood Village, Colorado. From 2011 to 2015, I served as the Colorado Secretary of State, in which capacity I oversaw elections throughout the state. In addition, I have litigated and advised clients on election law matters from 2001 until 2011, and again from 2015 until the present. I have also taught election law at both the University of Colorado Law School, and the University of Denver Law School.

3. Because of my prior position as Secretary of State and other work in election law, I am frequently called upon to serve as an expert in election matters.

4. I have personal knowledge of the matters set forth in this Declaration.

5. Following my tenure as Secretary of State, my law practice has included extensive work in elections law.

6. While I was Secretary of State, I promoted Hillary Rudy to the position she currently holds as Deputy Elections Director. I have deep respect for her capabilities, but I disagree with some of the conclusions she arrives at in her Declaration.

7. Proposition 108, which was adopted as a voter initiative in 2016, requires that any major political party which utilizes the primary election system to choose their party's nominee must normally allow unaffiliated voters to participate in that party's primary election, commonly referred to as a "semi-open primary." C.R.S. §§ 1-4-101(2)(b); 1-7-201(2.3).

8. Proposition 108 also has a provision allowing major political parties to "opt-out" of the "semi-open primary." This "opt-out" provision requires a three-quarters vote of the entire voting membership of the major party's State Central Committees, not just of those in attendance (in person or by proxy) at the annual meeting. C.R.S. § 1-4-702(1).

9. I have been involved in Republican Party matters for over two decades and last year participated as a candidate in a contested election for State Party Chair. As a result, I have extensive knowledge of voting and elections within the Colorado Republican Party Central Committee.

10. The three-quarters of total membership threshold is, in my opinion, practically impossible to achieve – at least with respect to the Colorado Republican Party. First, it is difficult

**DECLARATION OF SCOTT GESSLER – PAGE 2**

to obtain three-quarters consent on nearly any voting issue before the central committee. Second, attendance at Central Committee meetings often lags, with 30 percent (or more) of the membership being absent -- even at important meetings. As a result, requiring a three-quarters vote of the entire membership can rarely be met, even with a nearly unanimous vote of those in attendance.

11. Even if the three-quarter voting member threshold could be met, the "opt-out" provision of Proposition 108 restricts major parties in their options. It only allows two options; nomination by assembly or convention, or nomination at a primary that includes non-party members. It does not permit major parties to choose their nominees by a primary election open to all members (and only members) of the party. C.R.S. § 1-4-702(1). Because Colorado law prohibits a state party central committee from choosing to select nominees by a statewide vote of Republican voters, party members are forced to either choose party nominees through a broad-based process that includes non-party members, or a relatively small assembly of party members. It does not allow a party to choose its nominee through a broad-based primary of Republican voters only.

12. Prior to the adoption of Proposition 108, Colorado law limited voting in primary elections to "Any registered elector who has declared an affiliation with a political party that is participating in a primary election…." C.R.S. § 1–7–201 (effective May 10, 2013 to Dec. 26, 2016, Voter Access and Modernized Elections Act, 2013 Colo. Legis. Serv. Ch. 185 (H.B. 13-1303).

13. Although the Supreme Court's decision in *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), would have required Colorado to allow unaffiliated voters to

**DECLARATION OF SCOTT GESSLER – PAGE 3**

vote in a party primary election if the party had so requested, no political party in Colorado had made such a request prior to the adoption of Proposition 108. During my two decades of involvement in politics in Colorado, and during my tenure as Secretary of State, no political party ever sought to include voters who did not affiliate with the political party in whose primary they sought to vote.

14. Under Colorado law, the Secretary of State must certify the content of the ballot and ballot order no later than 60 days before the June 28, 2022, primary. This deadline falls on Friday, April 29, 2022. C.R.S. § 1-5-203(1)(a). To comply with the federal Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) and Colorado's Uniform Military and Overseas Voters Act, local election officials must then mail or electronically transmit, in the manner directed by the voter, ballots to all eligible military and overseas voters no later than 45 days before the June 28 primary. 52 U.S.C. § 20302(a)(8)(A); Colo. Rev. Stat. § 1-8.3-110(1). That deadline falls on Saturday, May 14, 2022.

15. My understanding is that the current lawsuit seeks to allow major political parties to choose whether to include or exclude unaffiliated voters in the party's primary. A party's decision to include or exclude unaffiliated voters in its primary does not affect or hamper ballot certification in any way. Regardless of whether a party selects to include or exclude unaffiliated voters in its primary process, the contents of the ballot remains the same. The same candidates run for office, the same types of ballots must be printed, and ballots must be counted in the same way.

16. As Ms. Rudy states in her Declaration, the SCORE system was modified after the adoption of Proposition 108 to "track voter eligibility, track ballots, and assign vote credit for the new primary election process" and already has the capability to identify voters by party.

17. The SCORE system allows an election administrator to add or remove which voters can receive a ballot. In fact, if a voter declares a "ballot preference" to his or her clerk and recorder on or before June 6, 2022, the clerk and recorder may *only* send a ballot for the voter's preferred major party and may *not* send the other major party ballot to the unaffiliated voter. 8 CCR 1505-1, Rule 2.18; Primary Elections FAQs, *Q12. I am an unaffiliated voter. Why did I get two ballots sent to me during a primary?*[1] In other words, the SCORE system already allows election officials to stop an unaffiliated voter from receiving a major party primary ballot. Because this capability to remove unaffiliated voters already exists in SCORE, this lawsuit would – at most – require extending that capability to all unaffiliated voters, rather than only the unaffiliated voters who contact a county clerk and recorder.

18. Likewise, SCORE already has the capability to ensure that only voters registered as members of a political party are allowed to vote in that party's primary election, with respect to minority party voters. Indeed, SCORE can ensure that only members of minor political parties may vote in the minor party's primary if the minor party opts to exclude unaffiliated voters from their primary elections, as permitted by C.R.S. Ann. § 1-4-1304(1.5(c). Here, the capability to allow a closed primary already exists within SCORE.

19. Because SCORE currently has the capability to remove unaffiliated voters from the universe of voters eligible to receive a party's primary ballot if the voter makes that request,

---

[1] Available at https://www.sos.state.co.us/pubs/elections/FAQs/primaryElectionsFAQ.html

**DECLARATION OF SCOTT GESSLER – PAGE 5**

it should be a straightforward change to remove all unaffiliated voters from receiving a major party's primary ballot. Even though major parties have more members than minor parties, the number of voters impacted by this change bears very little relevance to the changes that must be made in the SCORE system. Accommodating an opt-out request from a major political party requires the same amount of software development time, regardless of the number of voters in a major party.

20. The SCORE development and maintenance team within the Information Technology Division at the Secretary of State's office is responsible for SCORE system development and maintenance. In 2011 I hired the current SCORE team. Several members of that team had previously designed the SCORE system while working for an outside vendor, but they moved to Colorado to work directly for the Secretary of State's office. Key members of this team have been together for eleven years, and they are a highly competent and capable group of software developers who have made major modifications to the SCORE system on highly compressed timetables. For example, in just nine months they designed, developed, and launched the nation's first online pollbook. This was a groundbreaking effort that integrated voting day pollbook operations in Colorado's 64 counties. Thus, this team should easily be able to ensure SCORE has the capability to allow major parties to limit voting to party members. And based on past performance of the SCORE team, the current timeline allows adequate time to make any minor adjustments to the SCORE system.

21. Lastly, the SCORE system is ultimately a tool intended to help voters, candidates, and political parties exercise their constitutional rights. Here, a political party and its member's freedom of association is at issue. Those operating the SCORE system should – and in my

**DECLARATION OF SCOTT GESSLER – PAGE 6**

experience do – use and modify the SCORE system to accommodate voting requirements. They should not – and in my experience do not – use the current system configuration as a basis for limiting associational or voting rights. In other words, SCORE implements constitutional rights. Constitutional rights are not contingent on SCORE development.

22. With respect to county operations, in my view any concerns about costs incurred by counties for printing envelopes are unwarranted. The current lawsuit was filed on February 24, 2022, putting both the Secretary of State and county clerks on notice that there was a possibility that one or both major parties would choose not to include unaffiliated voters in that party's primary. This was filed a full four months before the primary election, over three months before ballots must be mailed, and two and one-half months before UOCAVA ballots must be transmitted. Those counties that immediately began printing envelopes for unaffiliated voters took their course of action with full knowledge of any uncertainty caused by this lawsuit. Those counties' assumption of the risk in party preferences should not, in my view, be a reason to continue to prohibit political parties from holding a primary election limited to party members.

23. For those counties that began printing ballot envelopes for unaffiliated voters months before the election, those efforts are unlikely -- as a practical matter -- to be wasted. Currently the Colorado Democratic Party has publicly stated that it will not opt out of Colorado's open primary system, even if the current lawsuit is successful. Likewise, minor parties have yet to decide whether to limit their primaries to party members, only. Accordingly, unaffiliated voters are almost certain to receive a ballot allowing them to vote in at least one major party primary.

24.     Lastly, any costs incurred in printing unaffiliated ballot envelopes will likely be outweighed by the cost savings arising from fewer printed ballots. Currently, all unaffiliated voters who have not notified their county clerk of a "ballot preference" before June 6, 2022, are automatically mailed ballots for both major parties.  If this current lawsuit is successful, and if a major party opts out of sending ballots to unaffiliated voters, clerks and records will need to print well over one million fewer ballots (depending on the number of unaffiliated voters at the time of the primary election) listing that major party's candidates. And if both major parties and all minor parties opt out, those savings increase. In short, savings will likely be far greater than any ballot printing costs incurred to date.

25.     Mr. Rudy also expresses concerns about costs to print ballot instructions. I believe these costs are also very limited. First, ballot instructions to major party voters will remain the same, regardless of the outcome of this lawsuit. Second, ballot instructions to minor party voters will remain the same, regardless of the outcome of this lawsuit. Third, minor political parties have until April 14, 2022, under current Colorado law (C.R.S. § 1-4-1304(1.5)(c)) to notify the Secretary of State whether or not they will permit unaffiliated voters to participate in their party's primary election. Therefore, voter instructions should not yet have been pre-printed.  An injunction against Proposition 108 prior to April 14, 2022 should therefore not require counties to reprint voter instructions.

26.     I disagree that substantial educational efforts will be required if this lawsuit is successful and if a major party then chooses to limit its primary election to party members. As noted above, both major and minor party voters will be unaffected by this lawsuit, and therefore no educational efforts are required for them. And those unaffiliated voters affected by a party's

**DECLARATION OF SCOTT GESSLER – PAGE 8**

decision to opt out of a semi-open primary will no longer be eligible to vote in that election. Accordingly, there is little – if any – need for election officials to educate non-eligible voters that they cannot vote. Normally, education efforts are valuable in order to reduce voter confusion. In the event of an opt-out of semi-open primary, there will be limited voter confusion, because unaffiliated voters will no longer be eligible voters in a that major party primary.

27. For those unaffiliated voters wishing to nonetheless vote in a major party primary, the rules allowing unaffiliated voters to affiliated with a major party will remain unchanged. Under current Colorado law, an unaffiliated voter may affiliate with a political party at any time up to and including election day. C.R.S. § 1-2-218.5(2) (an unaffiliated "elector may declare his or her political party or political organization affiliation at any other time during which electors are permitted to register by submitting a letter or a form furnished by the county clerk and recorder, by mail, in person, or online in accordance with section 1-2-202.5); C.R.S. § 1-2-201(3)(b) ("An elector may timely register to vote by: … (V) Appearing in-person at a voter service and polling center pursuant to section 1-2-217.7 at any time during which the voter service and polling center is open, including on election day."); *see also* 8 CCR § 1505-1:2 ("an unaffiliated elector who appears in person to vote may affiliate and vote a party ballot if the county clerk has not received the elector's voted mail ballot").

28. Registered unaffiliated voters may also change their affiliation online, up and until June 6, 2022.  C.R.S. § 1-2-202.5(7)(c)(II) ("A change or withdrawal of affiliation made *in accordance with this section* [i.e., "Online voter registration"] applies to an election if the elector completes the electronic form no later than twenty-two days before the election….") (emphasis supplied).

**DECLARATION OF SCOTT GESSLER – PAGE 9**

29. The Secretary of State's website currently provides information describing how unaffiliated voters can vote in a party primary election. *See* Primary Elections FAQs, *Q2. Who can vote in a Primary Election*.[2] If a major party opts out of an open primary, the Secretary's web site can be updated for very little cost, to provide notice that if a major party opts out of the open primary system, unaffiliated voters must first affiliate that major party before voting in that party's primary election.

30. To the extent that the Secretary or a clerk and recorder wishes to engage in robust educational efforts for unaffiliated voters, there is adequate time before the upcoming June 28, 2022 primary. For example, an election official could mail all unaffiliated voters a notice advising them that, in order to vote in the primary election of a political party opting to permit only party members to participate in its primary election, they must affiliate with that political party. The cost of such a notice would be significantly less than the cost that will currently be incurred to mail both major party ballots to every unaffiliated voter who does not submit a ballot preference prior to June 6, 2022.

31. Affiliating with a major party imposes minimal burden on unaffiliated voters. An unaffiliated voter may choose to register with a party online before June 6, 2022 (C.R.S. § 1-2-202.5(7)(c)(II)), or by mail before June 20, 2022 (C.R.S. § 1-2-201(3)(b)(III)), or in person at the county clerk's office during business hours, or at a voter service and polling center up during early voting and on election day (C.R.S. §§ 1-2-201(3)(b)(IV and V)).

32. I have also been asked to discuss the Colorado Republican Party's lack of participation in the current lawsuit. Although I do not have personal knowledge of the Party

---

[2] Available at https://www.sos.state.co.us/pubs/elections/FAQs/primaryElectionsFAQ.html

**DECLARATION OF SCOTT GESSLER – PAGE 10**

leadership's motivations, I can confidently say that campaign finance laws regulating the Colorado Republican Party present major obstacles and risks to participating in this lawsuit.

33. First, the Colorado Republican Party faces severe funding constraints due to both state and federal campaign finance laws. State and federal contribution limits, as well as restrictions on the sources of contributions, have severely restricted the State Party's ability to raise funds. As a result, the State Party has historically struggled to meet its operating expenses, let alone had adequate funds to pay attorneys for a lawsuit of this magnitude and importance.

34. Second, as a member of the Colorado Bar who litigates election law and constitutional law issues, I know that very few attorneys are willing to undertake and finance a lawsuit of this magnitude. It can be a very expensive effort, courts frequently slash reasonable attorney fee request, and it can take months and years to receive reimbursement for attorney fees. As a result, few attorneys are willing to help individuals and groups vindicate political rights on a *pro bono* or contingency fee basis.

35. Third, in some circumstances, a state party may raise funds outside normal campaign finance limits for certain types of litigation. But whether this lawsuit falls within an exception is uncertain. It would be highly ill-advised for the Colorado Republican Party to begin raising funds outside of normal contribution limits in order to participate in this lawsuit; the Party could face substantial legal fees to contend with a campaign finance complaint, plus substantial liability if a regulator were to determine that the Party may not raise funds outside of the normal limits.

36. To my knowledge, the State Party has contacted the Federal Election Commission to obtain an advisory opinion. This effort supports my analysis regarding the substantial risks

**DECLARATION OF SCOTT GESSLER – PAGE 11**

faced by the State Party. Unfortunately, the Federal Election Commission often takes months – or longer – to issue advisory opinions, particularly with the current political polarization that affects the Commission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of March 2022

Scott Gessler

**DECLARATION OF SCOTT GESSLER – PAGE 12**