IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-00477-JLK

**PARABLE**, on behalf of itself and its members, *et al.*, *Plaintiffs*,

v.

**JENA GRISWOLD**, in her official capacity as Colorado Secretary of State, *Defendant*.

---

**PLAINTIFFS' AMENDED RESPONSE TO BRIEFS OF**
*AMICI CURIAE* **GOVERNOR POLIS & ATTORNEY GENERAL WEISER,**
*AMICI CURIAE* **KELLY BROUGH** *et al.*, **AND**
*AMICI CURIAE* **BRENDA AND PAUL FREEBURN**

---

### INTRODUCTION

Governor Polis and Attorney General Weiser (the "Polis/Weiser *Amici*") claim at the outset of their *amicus curiae* brief that Plaintiffs ask this Court "to disregard the rights and choices of the State" and "the voters that approved" Proposition 108. Polis/Weiser *Amici* Br. (Doc. 24) at 2. Kelly Brough, *et al.* (the "Brough *Amici*") assert that the "passage of Proposition 108 was a victory for democracy in Colorado." Brough *Amici* Br. (Doc.34) at 3. It is black letter law, of course, that neither the State nor the voters get to violate constitutional rights. Indeed, the Tenth Circuit squarely rejected *Amici*'s argument in *Awad v. Ziriax*:

> Appellants argue that the balance weighs in their favor because Oklahoma voters have a strong interest in having their politically expressed will enacted, a will manifested by a large margin at the polls. But when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh Mr. Awad's in having his constitutional rights protected.

*Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (citing *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 699 (9th Cir.1997)). So, too, did the Supreme Court in *California Democratic Party v. Jones*, 530 U.S. 567, 570 (2000). California voters, via initiative, had adopted the blanket primary law that the Supreme Court struck down in that case because that law infringed

**PLAINTIFFS' RESPONSE TO** *AMICI CURIAE* **BRIEFS – Page 1**

on the constitutionally protected Freedom of Association of political parties. The issue, then, is not whether the rights and choices of the State and its voters should be respected when done within constitutional limits, but whether the particular choice reflected in Proposition 108 violates constitutional rights. For the reasons set out below (as well as in Plaintiffs' Complaint and other pleadings), Proposition 108 violates the constitutional rights of Plaintiffs and the political party with which they are affiliated and must be enjoined.

### I. The Argument by Governor Polis and General Weiser that Plaintiffs Lack Standing Ignores the Resolution Unanimously Adopted by the Party's Governing Body.

Ignoring the Resolution attached as Exhibit 2 of Plaintiffs' Complaint, The Polis/Weiser *Amici* falsely assert that "Plaintiffs ask this court to disregard the rights and choices of … Plaintiffs' own political party." Polis/Weiser *Amici* Br. (Doc.24) at 2. The Freeburn *Amici* make a similar assertion. Freeburn *Amici* Br. (Doc.42) at 3 (claiming that the Republican State Central Committee "voted to hold a semi-open primary in 2022"). But the Resolution they both ignore, unanimously adopted by the Colorado Republican Party's State Central Committee—the governing body of the Republican Party—expressly declared that "a majority of the Colorado Republican Party's State Central Committee supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican Party are eligible to participate," and it expressly authorized a lawsuit challenging the constitutionality of Proposition 108's contrary mandate to be brought "by the Party, *its members*, or both." Complaint (Doc.1), Ex. 2; Decl. of Charles Heatherly, ¶¶ 4, 5.

That fundamental error infects the Polis/Weiser brief throughout. *See, e.g.*, Polis/Weiser *Amici* Br. (Doc.24) at 3 ("Plaintiffs are singular members of the Colorado Republican Party who happen to disagree with their party's decision to hold a semi-open primary"); *id.* at 8 ("The Court should respect the Colorado Republican Party's choice" to "move forward with a semi-open

**PLAINTIFFS' RESPONSE TO *AMICI CURIAE* BRIEFS – Page 2**

primary election to select its candidates"); *id.* at 10 ("The Colorado Republican Party opted to keep its nominating contest semi-open."). Most significantly, the Resolution that Polis and Weiser ignore defeats their argument that Plaintiffs lack standing. Even if the party *alone* has constitutionally-protected association rights—a claim that Plaintiffs vigorously dispute in their reply brief in support of preliminary injunction—the Party, acting through its governing body, the State Central Committee, has authorized this litigation challenging the constitutionality of Proposition 108 by Party "members."

    **II.**    **The Contention by Governor Polis and General Weiser that Plaintiffs' Exercise of their Constitutionally Protected Associational Rights Would Force Colorado to use State Power Contrary to Supreme Court Precedent Is Flawed, Both Factually and Legally.**

The Polis/Weiser *Amici* next contend that "Plaintiffs' alleged associational right would force Colorado to use state power contrary to Supreme Court precedent." Both aspects of that contention are flawed.

First, Plaintiffs don't seek "to require the State to conduct and pay for whatever type of nominating contest the party desires," but merely to enjoin the unconstitutional law that effectively forces the party to allow unaffiliated voters to help determine its nominees. While in the short term that may result in a reversion back to the law as it existed prior to Proposition 108, *see*, *e.g.*, VOTER ACCESS AND MODERNIZED ELECTIONS ACT, 2013 Colo. Legis. Serv. Ch. 185 (H.B. 13-1303), Colo. Rev. Stat. § 1–7–201 (2013) (Voting at primary election open to "Any registered elector who has declared an affiliation with a political party that is participating in a primary election"), there is nothing in Plaintiffs' case that would require Colorado to continue to provide the primary election infrastructure to political parties in perpetuity if the voters of Colorado or their legislature decide otherwise in response to the invalidation of an

**PLAINTIFFS' RESPONSE TO** *AMICI CURIAE* **BRIEFS – Page 3**

unconstitutional law.[1]

Second, even if Plaintiffs had made such a claim (which they did not), the Polis/Weiser *Amici*'s assertion that *California Democratic Party v. Jones*, 530 U.S. 567 (2000), has "rejected" such an argument is perplexing. They provide no pin cite for that claim (and cannot, for there is no discussion in the Court's opinion that would support it). The Polis/Weiser *Amici* appear to have pulled that argument not from the majority opinion in *Jones*, but from the *dissenting* opinion, which asserted it without citing any authority. *See id.* at 594-95 (Stevens, J., dissenting) ("The protections that the First Amendment affords to the "internal processes" of a political party … do not encompass a right to exclude nonmembers from voting in a state-required, state-financed primary election."); *id.* at 598 (Stevens, J., dissenting) ("*In my view*, the First Amendment does not mandate that a putatively private association be granted the power to dictate the organizational structure of state-run, state-financed primary elections." (Emphasis added)).

The further contention, made by both the Polis/Weiser *Amici* and the Brough *Amici*, that because the Supreme Court has "acknowledged that '[s]tates have a major role to play in *structuring* and monitoring the election process, including primaries,'" Polis/Weiser *Amici* Br. (Doc.24) at 4 (quoting *Jones*, 530 U.S. at 572, emphasis added by The Polis/Weiser *Amici*); Brough *Amici* Br. (Doc.34) at 5, then the State can structure its primary elections to force a party to allow unaffiliated voters to participate in its primary, was expressly *rejected* by the Supreme Court in the paragraph immediately following the one containing the passage quoted by *Amici*:

> What we have not held, however, is that the processes by which political parties select their nominees are, as respondents would have it, wholly public affairs that States may regulate freely. To the contrary, we have continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution.

---

[1] Of course, any decision by the legislature would also have to comply with constitutional mandates, such as the requirements of Equal Protection under the Fourteenth Amendment and the doctrine of unconstitutional conditions.

**PLAINTIFFS' RESPONSE TO *AMICI CURIAE* BRIEFS – Page 4**

*Jones*, 530 U.S. at 572-73.  And not to put too fine a point on it, the Supreme Court in *Jones* actually *held* that:

> California's blanket primary violates the [Freedom of Association] principles set forth in [several of its prior] cases.  Proposition 198 forces political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival.  In this respect, it is qualitatively different from a closed primary.  Under that system, even when it is made quite easy for a voter to change his party affiliation the day of the primary, and thus, in some sense, to "cross over," at least he must formally *become a member of the party;* and once he does so, he is limited to voting for candidates of that party.

*Id.* at 577.

Apparently trying to distinguish that clear holding, all three sets of *Amici* ultimately put stock in their contentions (also made by the Secretary of State) that the highly restrictive, limited alternatives provided by the opt-out provision of Proposition 108 render the Supreme Court's clear holding in *Jones* irrelevant.  The Brough *Amici* go so far as to contend that "without a mandatory candidate nomination scheme, Proposition 108 does not implicate the right to free association" at all.  Brough *Amici* Br. (Doc.34) at 7.  Plaintiffs respond to that argument at length in their reply brief.  But the fact is that neither the Polis/Weiser *Amici*, the Brough *Amici,* the Freeburn *Amici,* nor the Secretary offer any argument as to how forcing a political party and its members to a Hobson's choice between an open primary in which unaffiliated voters may participate against the wishes of the party, and a convention (where roughly ½ of 1% of registered Republican voters are able to participate) or caucus (where roughly 5% of registered Republicans participate) is not a significant infringement on the party's constitutionally-protected freedom to associate with *all* of its members in the crucial decision of choosing the party's nominees.  *See*, *e.g.*, *Jones*, 530 U.S. at 575 ("The moment of choosing the party's nominee … is 'the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community.'" (quoting *Tashjian*, 479

U.S. at 216)); *id.* ("The ability of the members of the Republican Party to select their own candidate ... unquestionably implicates an associational freedom" (quoting *Tashjian* , 479 U.S. at 235-36 (Scalia, J., dissenting)).[2]

### III. The Brough *Amici*'s Attempt to Distinguish *Jones* Because Proposition 108 Does Not Permit "Cross-Over Voting" by Members of Another Political Party Is Unavailing.

The Brough *Amici* raise an additional argument, namely, that "Proposition 108 was designed to avoid cross-over voting from registered members of opposing political parties." Brough *Amici* Br. (Doc.34) at 7.  While they are correct in noting that that concern was mentioned by the Supreme Court in *Jones*, they are wrong in suggesting that the *Jones* decision turned on that factor.  Instead, the Supreme Court found that primary voting by opposition party members *as well as by unaffiliated voters* violated a party's freedom of association:  "Proposition 198 forces political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival."  *Jones*, 530 U.S. at 577.

The Brough *Amici* also rely on the Ninth Circuit's decision in *Democratic Party of Hawaii v. Nago*, 833 F.3d 1119 (9th Cir. 2016), but that case is distinguishable.  In Hawaii, unlike Colorado here, "voters do not register as members of any political party, and the State does not keep records regarding which party's ballot any particular voter chose in a primary election."  *Id.* at 1121.  "In a state without partisan registration," the Court held, "choosing to vote in only one party's primary may constitute a valid form of party affiliation."  *Id.* at 1125.  The rule is decidedly different in Colorado, where unaffiliated voters are expressly allowed to

---

[2] *Amici*'s reliance on *Purcell* as a rationale for the supermajority requirement for the opt-out is a stretch, to say the least.  *Purcell* dealt with an injunction of election laws just weeks before the election.  The opt-out provision here, if it ever were to be met, requires the party to notify the Secretary of State of its opt-out decision roughly nine months before the primary election.  Colo. Rev. Stat. § 1-4-702.

**PLAINTIFFS' RESPONSE TO *AMICI CURIAE* BRIEFS – Page 6**

vote in a party primary without affiliating with the party. *See* Colo. Rev. Stat. § 1-2-218.5(2) ("Any unaffiliated eligible elector may, but is not required to, declare a political party affiliation when the elector desires to vote at a primary election.").[3]

### IV. The Supreme Court Has Already Considered, and Rejected, Each of the Governmental Interests That *Amici* Assert.

All three sets of *Amici* argue that the State has legitimate interests in depriving political parties and their members of their constitutionally protected freedom of association. Without Proposition 108, the Polis/Weiser *Amici* argue, "unaffiliated voters—a significant portion of the Colorado electorate—could not help choose the candidates that appeared on the general election ballot." Polis/Weiser *Amici* Br. (Doc.24) at 5-6; *see also* Bough *Amici* Br. (Doc.34) at 6 ("Proposition 108 was intended to promote voter participation by giving "unaffiliated voters, who are Colorado taxpayers, the opportunity to vote in publicly financed primary elections."); Freeburn *Amici* Br. (Doc.42) at 6 ("It would be squarely against the public interest to potentially

---

[3] The Ninth Circuit also held in *Nago* that because the Supreme Court in *Jones* referenced statistics about how many unaffiliated and opposing-party voters voted in the primary election of a party with which they were not affiliated, the extent to which that intrusion poses a risk to associational rights is a factual issue, "with the plaintiffs having the burden of establishing that risk." *Nago*, 833 F.3d at 1124. Other courts have not treated that as a factual issue, however, including another district court in this Circuit. *See, e.g.*, *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1263, 1272 (D. Utah 2015) (citing *Miller v. Brown*, 462 F.3d 312 (4th Cir.2006), for the proposition that whether an open primary law "violates the plaintiffs' First Amendment rights to freely associate … presents a purely legal question"); *id.* at 1272 ("even though an election has not been held under SB54, and it is uncertain exactly how SB54 would affect the upcoming election, it is clear that the Unaffiliated Voter Provision 'causes the plaintiffs … to associate with [unaffiliated voters] during the candidate-selection process,' which is an 'unquestionabl[e] ... constitutional injury.'" (Internal citations omitted)). Should this Court decline to follow that holding of the Utah district court and opt instead to follow the Ninth Circuit's rule on this issue, Plaintiffs have demonstrated a significant risk of unaffiliated voters affecting the outcome of primary elections merely by the voter registration statistics they cited in their Complaint. *See* Complaint ¶¶ 15-21 (identifying voter registration statistics that indicate unaffiliated voters outnumber Republican voters by as much as two to one in counties across the state) [Note: The Complaint inadvertently stated those statistics were from February 2020, but they are from February 2022, as the Secretary of State source linked in the complaint confirms]. If more is required, Plaintiffs can obtain more detailed information about how many unaffiliated voters cast ballots in the prior two primary elections through discovery.

disenfranchise approximately 1.7 million Colorado voters"). But the identical argument was expressly rejected by the Supreme Court in *Jones*: "[A] 'nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications.'" *Jones*, 530 U.S. at 583 (quoting *Tashjian*, 479 U.S. at 215-16)). It is also not true. Under existing Colorado law, any "unaffiliated voter" could participate in a primary election limited to party members merely by affiliating with that party at any time up to and including election day. The Freeburn *Amici* acknowledge as much. Freeburn *Amici* Br. (Doc.42) at 5 ("Prior to Proposition 108, the Freeburns would have been free to participate in the Republican primary by affiliating at the time they voted. Proposition 108 simply allows the Freeburns to participate without changing registered affiliation,…."). What they cannot do—and the Supreme Court has articulated this quite clearly—is force themselves into another political association which they themselves refused to join. *Jones*, 530 U.S. at 584 ("The voter who feels himself disenfranchised should simply join the party. That may put him to a hard choice, but it is not a state-imposed restriction upon *his* freedom of association, whereas compelling party members to accept his selection of their nominee *is* a state-imposed restriction upon theirs."). The Freeburn *Amici*'s contention that their "vote in the 2022 Republican primary is itself an act of association that the Court can and should consider", Freeburn *Amici* Br. (Doc.42) at 5, is therefore explicitly foreclosed by the *Jones* decision. Quite simply, the Freeburns do not seek to "associate" with the Republican party, but to cast a vote in that party's primary election *without associating* with it. *Jones* holds otherwise.

      **V.**    **The Polis/Weiser *Amici*'s Contention that the Decision of the Republican Party State Central Committee to Reject the Limited Options Provided by the Opt-Out Provision Was an Endorsement of the Open Primary Is Belied by The Undisputed Facts.**

The Polis/Weiser *Amici* next return to the false claim they asserted at the outset, namely, that by rejecting the limited options afforded by the opt-out provision, the Republican Party necessarily

**PLAINTIFFS' RESPONSE TO *AMICI CURIAE* BRIEFS – Page 8**

manifested its preference for an open primary. Polis/Weiser *Amici* Br. (Doc.24) at 8; *see also* Freeburn *Amici* Br. (Doc.42) at 3. That assertion is, in section IV of the Polis/Weiser brief, bolstered by unsupported claims that "there are compelling reasons for political parties to include unaffiliated voters in their nominating contests." Polis/Weiser *Amici* Br. (Doc.24) at 8. Perhaps there are, but Polis and Weiser once again ignore the undisputed evidence that in 2021, the Republican Party's State Central Committee voted unanimously to challenge Colorado's semi-open primary law, explicitly stating that a majority of the Committee's members favored a primary election limited to party members. What Polis and Weiser seek to do, therefore, is nothing short of substituting their judgment about the "compelling reasons" to include unaffiliated voters for that of the Party membership itself, which apparently found the reasons for including unaffiliated voters somewhat less than compelling.

### VI. Plaintiffs' Constitutional Challenge, If Successful, Would Restore Colorado's Election Laws to What They Were Prior to the Adoption of Proposition 108, Not Require the Court to "Re-Write" Those Laws.

All three groups of *Amici* next claim that the remedy Plaintiffs seek—allowing the party with which they are affiliated to conduct its primary election limited only to party members—would require that the Court re-write the State's election laws. Polis/Weiser *Amici* Br. (Doc.24) at 10; Brough *Amici* Br. (Doc.34) at 8; Freeburn *Amici* Br. (Doc.42) at 2. But a determination by this Court that Proposition 108 is unconstitutional would not require a re-writing of election laws; it would instead result in a return to the status quo as it existed before the unconstitutional statute was adopted. Because the Supreme Court's decision in *Tashjian* requires the State to *permit* a political party to choose to allow unaffiliated voters to participate in its primary elections, Plaintiffs' suggestion that the existing deadline for minor political parties to notify the Secretary of State of its choice on that score would be appropriate. But offering that option is no more a re-writing of the state's election code than any remedy that was required in Connecticut by the Supreme Court's decision in *Tashjian* invalidating that State's ban on parties choosing to allow unaffiliated voters to

**PLAINTIFFS' RESPONSE TO *AMICI CURIAE* BRIEFS – Page 9**

participate in their primaries. In fact, it is less, because Connecticut—the defendant in that case—does not appear to have had a law such as Colo. Rev. Stat. § 1-4-1304 already on the books that could provide the mechanism for the constitutionally-required choice.

The Polis/Weiser *Amici* add that "the option of a closed, taxpayer-financed and government-supervised primary for major parties was never approved by the electorate." That is simply not true, as the Colorado legislature—chosen by the electorate—had long had "closed, taxpayer-financed and government-supervised primary [elections] for major parties" on the statute books before Proposition 108 was adopted.

Finally, the Polis/Weiser *Amici* set up a straw man argument about "who in the party decides whether the primary should be closed." Polis/Weiser *Amici* Br. (Doc.24) at 12. Just as with other decisions made by any large association, the governing body of this political association would decide by majority vote—and it has already done so here. See Complaint, Ex. 2 ("majority of members" prefer the primary limited to Republican party members); Heatherly Decl. ¶ 5. There would be no chaos that would result were that already-expressed determination to be given effect, and certainly not anything that would give rise to the hyperbolic suggestion made by the Polis/Weiser *Amici* that the Constitution's guarantee of a republican form of government would be in jeopardy if major political parties were allowed to conduct their primary election limited only to party members—as is the case in a large number of States to this day.

      **VII.**    **Plaintiffs' Requested Injunction Does Not Warrant Heightened Scrutiny.**

The Freeburn *Amici* also argue that the preliminary injunction Plaintiffs seek is "disfavored" because it would upend the status quo. Freeburn *Amici* Br. (Doc.42) at 2. The Secretary herself argued in her opposition brief that Plaintiffs' motion is "disfavored" because it is a "mandatory" injunction, because it would upset the existing status quo, and because it would afford Plaintiffs all the relief they could recover after a full trial. Doc.14 at 3 (citing *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005)). Case law is otherwise.

**PLAINTIFFS' RESPONSE TO** *AMICI CURIAE* **BRIEFS – Page 10**

First, enjoining the enforcement of an unconstitutional law is a prohibitory injunction, not a mandatory one. *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1274 (10th Cir. 2022) ("Preliminary injunctions are typically "prohibitory" in the sense that they prohibit the defendant from doing something."). The Secretary would be "prohibited" from providing Republican party primary ballots to unaffiliated voters.

Second, a preliminary injunction would prevent Defendant from sending Republican ballots to unaffiliated voters during the time the injunction is in effect (and therefore for the upcoming election unless the court could conduct a full trial before ballot certification deadlines and ruled against Plaintiffs), but it would not afford Plaintiffs the permanent relief they seek against the unconstitutional infringement of their associational rights for all future elections. In other words, the injunction could be "undone" for future elections if it proves to have been erroneously entered. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 981 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006).

Third, although this is concededly a closer call, Plaintiffs' requested injunction would *restore* the status quo, not upend it. "'Status quo' does not mean the situation existing at the moment the lawsuit is filed, but the 'last peaceable uncontested status existing between the parties before the dispute developed.'" *O Centro*, 389 U.S. at 1013 (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948 (2d ed.1995). The last "uncontested" status existing between the parties was the law as it existed prior to the adoption of the challenged-as-unconstitutional Proposition 108. As the Tenth Circuit noted in *O Centro*: "it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions. Such an injunction restores, rather than disturbs, the status quo ante, and is thus not an exception to the rule." *Id.*

Even if the status quo has shifted because two elections have now been held under Proposition 108, *cf. Lopez v. Griswold*, No. 22-CV-00247-JLK, 2022 WL 715122, at *3 (D. Colo.

**PLAINTIFFS' RESPONSE TO *AMICI CURIAE* BRIEFS – Page 11**

Mar. 10, 2022) (rejecting argument that the status quo was before the challenged campaign finance law was adopted 20 years before the lawsuit was brought), Plaintiffs meet the "heavier burden" required for "disfavored" injunctions, namely, a "strong showing" on both the likelihood of success and balance of harms prongs of the preliminary injunction test.  For the reasons set out in their preliminary injunction motion and reply briefs, they have made a "strong showing" on their merits of their constitutional claims.  They have also made a "strong showing" on the balance of harms, for "[w]hen a constitutional right hangs in the balance, … 'even a temporary loss' usually trumps any harm to the defendant," while the government "has no interest in keeping an unconstitutional law on the books."  *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019).

## CONCLUSION

In sum, the membership of the Colorado Republican Party's State Central Committee—the governing body of that political association—unanimously authorized Party "members" to challenging the constitutionality of Proposition 108 because, as they also unanimously acknowledged, a majority of the Central Committee wished to assert its First Amendment associational right to limit its primary election to party members.  That same Committee's rejection of Colorado's Hobson's choice of a convention or assembly caucus, in which the lion's share of party members would not be able to participate in the critical nominating decisions of the political association, further demonstrates the Committee's desire to hold a primary election with *all* of its members, unaffected by whatever views unaffiliated voters might bring to bear.  That Governor Polis and General Weiser think the Republican Central Committee should follow what they believe to be compelling reasons for allowing unaffiliated voters to participate in the critical nomination decisions of the party is of no moment.  They are, after all, leaders of the opposition party, and their party will remain free to make that determination for itself.  Plaintiffs,

and the Republican party with which they are affiliated, merely ask this Court to uphold their own constitutional right to make that choice for themselves.

                                  Respectfully Submitted,

                                  /s/ John C. Eastman
                                  John C. Eastman
                                  CONSTITUTIONAL COUNSEL GROUP
                                  174 W. Lincoln Ave, #620
                                  Anaheim, CA  92805
                                  Telephone: (909) 257-3869
                                  FAX:  (714) 844-4817
                                  E-mail: jeastman@ccg1776.com

                                  /s/ Randy B. Corporon
                                  Randy B. Corporon
                                  LAW OFFICES OF RANDY B. CORPORON P.C.
                                  2821 S. Parker Road, Suite 555
                                  Aurora, CO 80014
                                  Telephone: (303) 749-0062
                                  FAX: (720) 836-4201
                                  E-mail: rbc@corporonlaw.com

                             *Attorneys for Plaintiffs*