**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00477-JLK

PARABLE, an unincorporated nonprofit association, on behalf of itself and its members, et al.,
    Plaintiffs,
v.
JENA GRISWOLD, in her official capacity as Secretary of State for the State of Colorado,
    Defendant.

**REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6)**

The stipulated facts show that hundreds of members of the Colorado Republican Party's State Central Committee participated in the opt-out vote, deciding by a wide margin to hold a semi-open primary rather than a closed assembly or convention (241.3 votes to 171.6 votes). Doc. 26, ¶ 2. Now, Plaintiffs attempt to cast doubt on that decisive vote, suggesting that the Committee actually prefers a closed system and that it supports litigation attacking Proposition 108, despite it choosing to refrain from initiating litigation. This tension underscores why the Colorado Republican Party's participation in a suit like this is essential. Only the party has standing to assert its own rights, and only the party can articulate its preferences for including or excluding unaffiliated voters from its nomination process.

In any event, even if Plaintiffs possess standing, their response fails to nudge their claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quotations omitted). Proposition 108 fully comports with the Constitution because it gives major parties the choice of including or excluding unaffiliated voters from their nomination process. That voluntary choice renders Plaintiffs unable to state a claim upon which relief can be granted. The complaint should be dismissed.

## ARGUMENT

I.   **Plaintiffs fail to satisfy their burden of establishing standing.**

Plaintiffs claim standing both because (1) the Colorado Republican Party has allegedly authorized its members to bring this lawsuit, and (2) the First Amendment associational rights at issue are held by both the party and its members. Doc. 43, pp. 1-3. Both arguments lack merit.

***Plaintiffs cannot assert the rights of others***. Plaintiffs first assert that the Colorado Republican Party can bestow standing on its members to vindicate the party's rights. But Plaintiffs cite no authority for this theory, and it flies in the face of well-established limits on third-party standing. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) (stating the "fundamental" principle that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). To raise a legitimate claim of third-party standing, three elements must be shown: "[1] [t]he litigant must have suffered an 'injury in fact,' thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; [2] the litigant must have a close relation to the third party; and [3] there must exist some hindrance to the third party's ability to protect his or her own interest." *In re Novak*, 92 Fed. App'x 680, 683 (10th Cir. 2004) (quoting *Powers*; numbering added).

Here, Plaintiffs establish none of these elements. First, Plaintiffs have not shown an injury in fact since, as discussed in Colorado's motion to dismiss, the rights at issue belong solely to the Colorado Republican Party, not its individual members. *See Amacher v. Tennessee*, No. 3:21-cv-00638, 2021 WL 5015803, at *5 (M.D. Tenn. Oct. 28, 2021) ("The . . . injury Plaintiff mentions (her political party being unable to conduct primary elections) is also not an injury to Plaintiff. Instead, it is an injury to the Coffee County Republican Party[.]").

2

Second, unlike a doctor-patient relationship or similar close affiliation, *see, e.g.*, *Aid for Women v. Foulston*, 441 F.3d 1101, 1112-13 (10th Cir. 2006), the relationship between a political party and its members is not sufficiently "close" to confer third-party standing. *Cf. Phillips v. City of Dallas*, 781 F.3d 772, 781 n.12 (5th Cir. 2015) (rejecting candidate's third-party standing to assert associational rights of supporting voters). Plaintiffs cite no authority suggesting that individual party members numbering close to a million (Doc. 1, ¶ 15) can have the requisite close relationship with the party.

Third, and most important, Plaintiffs fail to explain what prevents the Colorado Republican Party from asserting its own rights. *See Renne v. Geary*, 501 U.S. 312, 320 (1991) (stating members of political party central committees likely could not assert candidates' rights "since no obvious barrier exists that would prevent a candidate from asserting his or her own rights." (quotations omitted)); *accord Lane v. Simon*, 495 F.3d 1182, 1187 (10th Cir. 2007) (student newspaper editors could not achieve third-party standing to represent future editors because "[n]othing in the pleadings permits us to conclude that the publisher and current editors are hindered from bringing suit to vindicate their own First Amendment rights."). Indeed, Plaintiffs' own exhibit to the complaint states that the party's State Central Committee last September authorized the party to bring a future lawsuit, Doc. 1-2, confirming the party's ability to protect its own legal interests.[1]

---

[1] Scott Gessler speculates that "funding constraints" may prevent the Colorado Republican Party from initiating its own case. Doc. 43-1, ¶ 33. But Mr. Gessler does not purport to speak for the party, *see id.* ¶ 33, and in any event Plaintiffs do not rely on this alleged hinderance in their complaint or briefing. Moreover, the party's history of initiating litigation shows that funding constraints do not hinder it from protecting its interests. *See, e.g.*, *Colo. Republican Party v. Williams*, 370 P.3d 650 (Colo. App. 2016) (party-initiated declaratory judgment); *Benefield v. Colo. Republican Party*, 329 P.3d 262 (Colo. 2014) (party-initiated records suit).

3

Plaintiffs nonetheless assert that a majority of the party's State Central Committee agrees with Plaintiffs that a closed primary is preferrable to a semi-open one. Doc. 43, p. 2. Even if true, that fact does not confer standing on Plaintiffs.[2] The party may have strategic reasons for refraining from litigation. The party may realize, for example, that court interventions in election preparations at the eleventh-hour risk grave errors, Doc. 14-1, pp. 3-6, or it may agree with Colorado's *amici* that, regardless of Proposition 108's constitutionality, a court cannot judicially rewrite Colorado's statutes to authorize a closed Republican primary. Doc. 24, pp. 11-13; Doc. 34, pp. 8-9. Whatever the case may be, the salient point is that the Colorado Republican Party has not chosen to bring suit. Plaintiffs cannot second-guess that decision. *See Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("[S]tanding also reflects a due regard for the autonomy of those most likely to be affected by a judicial decision," and a policy that "the decision to seek review must be placed in the hands of those who have a direct stake in the outcome," not "concerned bystanders" who will use it "as a vehicle for the vindication of value interests." (quotations omitted)); *see also Duke Power Co. v. Carolina Environmental Study Group, Inc*., 438 U.S. 59, 80 (1978) (explaining that the "good and sufficient" limits on third-party standing avoid "the adjudication of rights which those not before the Court may not wish to assert").

***Granting individual party members standing to decide the party's nomination format is unsupported and unworkable***. Plaintiffs argue in the alternative that, even if they can't assert the

---

[2] Putting aside third-party standing constraints, the Colorado Republican State Central Committee's bylaws do not grant authority to Plaintiffs to initiate litigation on the party's behalf. Doc. 14-1, pp. 8-66. Written authorization *from the State Party Chair* is required to bind the State Central Committee to important matters like litigation positions. *Id.* at 9 (art. III, § D). Plaintiffs point to no such authorization. The resolution Plaintiffs rely on (Doc. 1-2), which was apparently agreed to by an unrecorded voice vote, cannot amend the bylaws. *See* Doc. 14-1, p. 30 (art. XX, § A, stating amendment process).

party's rights, they nonetheless hold associational rights as individual party members. Doc. 43, pp. 2-3. In support, Plaintiffs point to stray language in certain court decisions describing the First Amendment associational right as belonging to "political parties *and their members*." Doc. 43, p. 3 n.4. But those decisions did not address individual party members' standing. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."). At best, the language Plaintiffs rely on merely reflects a general statement about the collective nature of the associational right: "[i]ts value is that by collective effort individuals can make their views known, when, individually, their voices would be faint or lost." *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 294 (1981). It says nothing about individual party members' standing.

By contrast, the Secretary's motion to dismiss pointed to multiple decisions that specifically reject individual party members' standing. Doc. 27, p. 5 (citing *Osburn*, *Righeimer*, and *Beck*). Plaintiffs attempt to distinguish these decisions by suggesting the plaintiffs there "were seeking to advance their own associational interests in ways opposed to those of the party." Doc. 43, p. 3. That fact, however, was not material to the courts' standing analysis, and nothing in those decisions suggests that standing turns on whether the plaintiff's views align with the party's. Plaintiffs' position—tasking the court with determining the views of a political party not before it—imposes an impossible burden on the judiciary.

Plaintiffs also confusingly rely on *Greenville Cnty. Republican Party Exec. Comm. v. Way*, No. 6:10-1407-MGL, 2013 WL 12385313 (D.S.C. Aug. 30, 2013) ("*Greenville II*"), even though it strongly supports Colorado, not Plaintiffs. The *Greenville II* court found the plaintiffs

5

lacked standing for two reasons: (1) they were trying to assert the rights of the South Carolina Republican Party, which "is capable of representing its own interests," *id.* at *6, and (2) the municipality was a "absent intermediary" that broke the "causal chain," *id.* at *7. As the motion to dismiss explains, both reasons are also present here.[3] *See* Doc. 27, pp. 5-7. Accordingly, Plaintiffs fail to satisfy their burden of establishing standing.

## II. If Plaintiffs have standing, they fail to state any claim upon which relief can be granted.

### A. Plaintiffs do not adequately allege First Amendment association violations.

***Plaintiffs do not have a constitutional right to a closed primary.*** As set forth in the motion to dismiss, Proposition 108 does not burden Plaintiffs' associational rights because major parties may opt out of the semi-open primary and select their nominee by closed assembly or convention. Plaintiffs do not like these options. Instead, they prefer a third choice of their own construction—a mandatory closed primary—and argue Colorado's law violates the Constitution by not permitting this choice.

But Plaintiffs do not have a constitutional right to a closed primary election funded by Colorado taxpayers. A state may require political parties to select candidates by convention: "[i]t

---

[3] While Plaintiffs attempt to muddy the record on the second reason by pointing to a nonbinding resolution, it does not detract from the fact that the Colorado Republican Party could have—but overwhelmingly chose not to—close its nomination process. At bottom, Plaintiffs' alleged associational injury would not have occurred had the party opted out. *Cf. DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (no standing where plaintiffs' injury "depends on how legislators respond to a reduction in revenue"). This undisputed fact aligns this case with *Marshall*, not the *Miller* case relied on by Plaintiffs. *Compare Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) ("If the Virginia Republican Party voluntarily elects an 'open' primary, which it is legally entitled to do, then there is nothing this court can do to prevent the Virginia Republican Party from 'forcing' its members to vote with non-Republicans."), *with Miller v. Brown*, 462 F.3d 312, 318 (4th Cir. 2006) (distinguishing *Marshall* because the party had since amended its plan of organization to hold a semi-closed primary).

is too plain for argument . . . that the State . . . may insist that intraparty competition be settled before the general election by primary election *or by party convention*." *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974) (emphasis added). And the fifty states employ a wide array of primary election formats—from open primaries (in which any voter may vote for any candidate), to semi-open or semi-closed primaries, to top-two primaries, to closed primaries.[4] Several states, like Iowa, use party caucuses to determine presidential nominees. *See, e.g.*, Iowa Code § 43.4. That Plaintiffs prefer a closed primary does not make all other options unconstitutional.

Plaintiffs present neither argument nor evidence on why selecting a primary nominee by convention instead of primary burdens their party's associational rights. The Supreme Court rejected a similar argument in *White*, holding it could not "take seriously the suggestion . . . that the State has invidiously discriminated against . . . parties by insisting that their nominations be by convention, rather than by primary election. We . . . are wholly unpersuaded by the record before us that the convention process is invidiously more burdensome than the primary election[.]" *White*, 415 U.S. at 781; s*ee also Horning v. State of Indiana*, 215CV00284LJMMJD, 2016 WL 845740, at *4 (S.D. Ind. Mar. 4, 2016) (holding based on *White*, 415 U.S. at 781, that "[Plaintiff] can present no argument or evidence that a convention is more burdensome than a primary election."); *Am. Delta Party v. Wyman*, 488 F. Supp. 3d 1018, 1027 (W.D. Wash. 2020) (citing *White* and finding "the challenged convention requirement imposes a minimal burden" on parties' access to the general election ballot). Plaintiffs present no evidence or explanation as to why selecting their nominee by convention or assembly burdens their associational rights.

---

[4] *See, e.g.*, https://ballotpedia.org/Primary_election_types_by_state.

Colorado is not required to adopt Plaintiffs' preferred candidate nomination scheme. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) ("States have a major role to play in structuring and monitoring the election process, including primaries." (citing *Burdick v. Takushi,* 504 U.S. 428, 433 (1992); *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 217 (1986)); *cf Tashjian*, 479 U.S. at 237 (Scalia, J., dissenting) (the state is not "bound to honor a party's democratically expressed desire that its candidates henceforth be selected by convention rather than primary"). "When political parties become involved in a state-administered primary election, the state acquires a legitimate interest in regulating the manner in which that election unfolds—subject only to the same interest-balancing that occurs throughout the Court's electoral jurisprudence." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1077-78 (10th Cir. 2018). Although "the processes by which political parties select their nominees are . . . [not] wholly public affairs that States may regulate freely," states *may* regulate parties' internal processes subject to the limits imposed by the Constitution. *Jones*, 530 U.S. at 572-73.

Proposition 108 is well within constitutional limits. Because major parties in Colorado may choose whether to participate in a semi-open primary or select their party nominee via a closed process, their associational rights are not significantly burdened. Plaintiffs argue that the choice under Proposition 108 is tantamount to no choice at all. But the fact that they prefer a closed primary over other legitimate options does not mean the law is unconstitutional.

Plaintiffs attempt to differentiate *Greenville I*, which upheld a nearly identical opt-out law, on the basis that it only rejected a facial challenge, whereas here Plaintiffs bring both facial and as-applied challenges. This argument misses the mark. Because *Greenville I* is precisely on point as to Plaintiffs' facial challenge, the Court should adopt its reasoning and dismiss the facial

challenge. Plaintiffs have not adequately alleged that Proposition 108 is unconstitutional in all of its applications. To the extent Plaintiffs pin their hopes on their as-applied challenge, it fares no better. Plaintiffs fail to allege a plausible as-applied claim where, here, the State Central Committee in 2021 convened a quorum and overwhelmingly voted *not* to opt out of the 2022 semi-open primary. Doc. 26, ¶ 2. Plaintiffs' problem is that their party chose not to opt out of the State-run semi-open primary, not that the law is unconstitutional, either facially or as applied.

Plaintiffs assert that *Greenville I* is not persuasive because a decision on which it relies, *Miller v. Brown*, 503 F.3d 360, 369 (4th Cir. 2007), held that a portion of Virginia's open primary law was unconstitutional as-applied. *Miller* is easily distinguished. In *Miller*, the Fourth Circuit held a Virginia law allowing an incumbent state legislator to select the method of party nomination for his seat was unconstitutional as applied because, under state law, the choice belonged to the incumbent legislator in his individual capacity, *not* to the political party. *Miller*, 503 F.3d at 362 ("at least for purposes of selecting a nomination method, Virginia does not view the incumbent legislator as a representative of the party"). Colorado vests the decision to participate in a semi-open primary with the party's State Central Committee, which determines its own voting membership. Because a vote of the State Central Committee is a vote on behalf of the party, the problem identified in *Miller*—that an individual who did not represent the party could make a decision on its behalf—is not at issue here.

Plaintiffs bizarrely characterize as "false" the statement in the motion to dismiss that "the state party chose to participate in Colorado's semi-open primary by a two-thirds majority." Doc. 43, p. 6. The statement is true; Plaintiffs stipulated to it. *See* Doc. 26, ¶ 2. There are plenty of reasons why most of the State Central Committee would choose a semi-open primary, including

9

the opportunity to connect with unaffiliated voters before the general election. *See* Doc. 32, p. 7. Even if a majority of the State Central Committee prefers a closed primary, this preference does not make Proposition 108 unconstitutional, as discussed above.

***The difficulties Plaintiffs identify in meeting the three-fourths threshold are attributable to the party, not the State***. Plaintiffs argue that it is nearly impossible to meet the three-fourths threshold to opt out of the semi-open primary. Doc. 43, p. 5. The difficulties Plaintiffs identify belong to the party, not the State. Plaintiffs argue that it is difficult to assemble a quorum at State Central Committee meetings and, accordingly, the three-fourths vote threshold is too high. Doc. 43, p. 5. But the State Central Committee determines how many members it has, which members vote, when and where its meetings are held, and whether attendance at meetings is mandatory. Doc. 14, p. 11; Doc. 14-1, p. 9. If the State Central Committee leadership and members wanted to opt out of the semi-open primary, they could do so.

The Supreme Court rejected similar arguments in *Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986), in which the Socialist Party challenged Washington's requirement that a minor-party candidate for office receive at least 1 percent of all votes cast for that office in the State's primary election to place that candidate's name on the general election ballot. *Id.* at 190. The party argued the law was too burdensome because it is difficult to inspire voters' participation in primaries where turnout is historically lower than in general elections. The Court dismissed this argument, reasoning that "we perceive no more force to this argument than we would with an argument by a losing candidate that his supporters' constitutional rights were infringed by their failure to participate in the election." *Id*. at 198. The Court held that "States are not burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an

unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot." *Id*. at 198. And the Ninth Circuit applied *Munro* to uphold a similar law, holding "the small number of voters eligible to vote in the Libertarian primary is not an impediment created by the State of California . . . [the Party] may broaden its voter base by increasing its membership. If it is unable to do so because its message is not attractive to a large number of voters, that is not the fault of the State." *Lightfoot v. Eu*, 964 F.2d 865, 870 (9th Cir. 1992).

Plaintiffs' argument here is essentially that they cannot rally the votes among their own party to opt out of the semi-open primary. This Court should dismiss Plaintiffs' argument because it has "no more force . . . than . . . an argument by a losing candidate that his supporters' constitutional rights were infringed by their failure to participate in the election." *Munro*, 479 U.S. at 198. Here, as in *Munro* and *Lightfoot*, the alleged difficulties the State Central Committee encounters in convening a quorum and rallying its members to opt out of the semi-open primary are not State-created barriers. Colorado does not have "constitutional imperative to reduce . . . apathy" among members of the State Central Committee. *Munro*, 479 U.S. at 198. And the fact that two-thirds of the Committee prefers to participate in a semi-open primary, contrary to Plaintiffs' wishes, "is not an impediment created by [Colorado]." *Lightfoot*, 964 F.2d at 870.

Plaintiffs insist, cursorily, that under *Jones* and *Eu*, Proposition 108 is unconstitutional. As explained in the motion to dismiss, however, *Jones* is factually and legally distinguishable, and does not support Plaintiffs' claims. Doc. 27, p. 9. *Eu* is also unavailing because it involved an invalid attempt by California to legislate the terms and requirements for party leadership. *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 232 (1989). Proposition 108 is silent as to how party leadership or voting membership is determined. The three-fourths voting

11

requirement does not "limit or abridge any party's ability to disseminate its views, nor does the statute affect how a party conducts its internal organizational affairs." *Greenville I*, 824 F. Supp. 2d at 668 (holding three-fourths requirement accords with *Eu*). Proposition 108 merely specifies how a party may choose to select its candidate for the general election by convention or assembly, and as such, "only indirectly impacts parties by placing requirements on the parties' efforts to utilize the convention method as an alternative to an open primary." *Id*.

***Colorado's important interests in primary elections justify any slight burden on parties' associational rights under Proposition 108.*** As set forth in the motion to dismiss and above, any burden on parties' associational rights is not severe, and thus, rational basis review applies. *Clingman v. Beaver*, 544 U.S. 581, 587 (2005) ("[W]hen regulations impose lesser burdens, a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." (quotations omitted)). Plaintiffs' argument that Proposition 108 imposes significant burdens, and thus strict scrutiny applies, is premised on two incorrect assumptions: that parties have a constitutional right to a closed primary and that the obstacles to assembling a three-fourths vote are State-imposed. Because neither argument is correct, as explained above, the law does not impose severe burdens. *See Kraham v. Lippman*, 478 F.3d 502, 506 (2d Cir. 2007) (Sotomayor, J.) ("Statutes analyzed under strict scrutiny typically involve restrictions on the internal workings of political parties, as well as restrictions on voters' access to the polls, and candidates' access to the ballot." (cleaned up)).

As set forth in the motion to dismiss, Colorado's important public interests justify the reasonable, non-discriminatory restrictions imposed by its semi-open primary system. *See Utah Republican Party*, 892 F.3d at 1077. Specifically, its interests in protecting and preserving the

integrity of the nominating process, promoting fairness, allowing parties to increase voter participation, and ensuring administrative efficiency support its semi-open primary system. Doc. 27, pp. 11-12. Critically, by setting the opt-out level at three-quarters of a political party's state central committee, Colorado ensures that a party must have a deliberate commitment to opting out of allowing unaffiliated voters to participate. If the level were lower, the opportunity for unaffiliated voters to participate would vacillate more regularly, creating undue voter confusion.

### B. Plaintiffs fail to allege a plausible First Amendment free speech violation.

Plaintiffs respond to the Secretary's argument that Plaintiffs have not pled a violation of their free speech rights by again claiming, confoundingly, that Colorado's assertion that "the Colorado Republican Party has elected to open its primary to unaffiliated votes" is "false." Doc. 43, p. 10. As explained above, this assertion is true. Plaintiffs have stipulated to it. Plaintiffs' disagreement with the results of the State Central Committee's vote does not—and cannot—change the outcome of that vote. That's not how elections work. For the reasons set forth in the motion to dismiss, Plaintiffs fail to allege violation of their free speech rights.

### C. Plaintiffs fail to state a plausible equal protection claim.

The Secretary's motion to dismiss established that Plaintiffs fail to state an equal protection claim, pointing out multiple independent defects in Plaintiffs' claims. Doc. 27, pp. 13-15. Plaintiffs' attempt to rebut the Secretary's motion fails as a matter law, requiring dismissal.

At the outset, Plaintiffs rely on a vote dilution case, *Reynolds v. Sims*, 377 U.S. 533 (1964), to prop up their claim that unaffiliated voters participating in the Republican primary will violate their equal protection rights. Doc. 43, p. 11. But Plaintiffs' argument incorrectly assumes that the constitutionally protected right to vote discussed in *Reynolds* extends to guarantee

Plaintiffs the right to vote in a closed Republican *primary*. It doesn't. While some states are shifting from caucus to primary systems, many states continue to use caucus systems that do not afford party members *any* ability to vote in a primary. Those states are not violating party members' rights any more than Colorado is. And as already discussed, nothing in federal law *requires* Colorado to expend taxpayer dollars to fund a closed Republican or Democratic primary. If a major party declines to utilize Colorado's semi-open primary, the State may lawfully mandate that the party instead nominate its candidates via assemblies or conventions that do not require taxpayer expense. *See White*, 415 U.S. at 781 (states may "insist that intraparty competition be settled before the general election by primary election *or* party convention." (emphasis added)).

Next, Plaintiffs take issue with the Secretary's reliance on *White*, 415 U.S. 767, stating it presents a "distinctly different context" because it dealt with "minimal requirements" for ballot qualification. Doc. 43, p. 11. That slices *White* too thinly. The core equal protection holding from *White* is clear: states may require major parties to nominate via one method while permitting minor parties to use another. 415 U.S. at 782. "The procedures are different, but the Equal Protection Clause does not necessarily forbid the one in preference to the other." *Id.*

Plaintiffs also assert that the differences between major and minor political parties mentioned by Colorado are not "relevant" for equal protection purposes. Doc. 43, pp. 11-12. Again, this ignores *White*'s clear holding. *See* 415 U.S. at 782 n.13 (recognizing the "obvious differences" between major and minor political parties and explaining that "[s]ometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike"). In addition, besides the obvious and significant taxpayer costs of administering a major

14

party's primary, Doc. 14-1, ¶ 8, the Secretary has already explained the many differences between major and minor parties that could lead Colorado to rationally decide that major parties should be treated differently from minor parties for purposes of holding a primary. *See* Doc. 27, p. 15; *see also* Doc. 14-1, ¶ 15 (summarizing "significant differences," including "substantially smaller" number of ballots in minor party primary); *id.* ¶ 16 (describing major party benefits that are "unavailable to minor political parties"); *id.* ¶ 17 (explaining minor party primaries are "relatively rare" compared to major party primaries). Plaintiffs fail to meaningfully grapple with these stark differences other than asserting, without support, that they are "not relevant."

Last, Plaintiffs argue that strict scrutiny should apply to their equal protection claims. Doc. 43, p. 12. Yet Plaintiffs cite no decision where a court applied strict scrutiny when evaluating a state's differential treatment of major and minor parties. By contrast, the Secretary has pointed to multiple decisions where courts applied mere rational basis review—a bar Colorado easily passes. *See, e.g., Bd. of Election Comm'rs of Chicago v. Libertarian Party of Ill.*, 591 F.2d 22, 25 (7th Cir. 1979); *Greenville I*, 824 F. Supp. 2d at 669. Plaintiffs' equal protection claims fail as a matter of law.

## CONCLUSION

Plaintiffs' complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: March 29, 2022    PHILIP J. WEISER
Attorney General

s/ *Emily Buckley*
*Grant T. Sullivan*, Assistant Solicitor General
*Emily Buckley,* Assistant Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6349 / 6403
Email: grant.sullivan@coag.gov; emily.buckley@coag.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

   I hereby certify that on March 29, 2022, I served a true and complete copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

John C. Eastman
Constitutional Counsel Group
174 West Lincoln Avenue, Suite 620
Anaheim, CA  92805-2901
jeastman@ccg1776.com


Randy Blair Corporon
Law Offices of Randy B. Corporon, P.C.
2821 South Parker Road
Suite 555
Aurora, CO  80014
rbc@corporonlaw.com

*Attorneys for Plaintiffs*


              *s/* Leslie Bostwick
              *Leslie Bostwick*