IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00477

**PARABLE**, an unincorporated nonprofit association, on behalf of itself and its members;
**RON HANKS,**
**LAUREL IMER,**
**DAVID PETERS,**
**CHARLES W. "CASPER" STOCKHAM,**
**JOANN WINDHOLZ,**

    Plaintiffs,

v.

**JENA GRISWOLD**, in her official capacity as Colorado Secretary of State,

    Defendant.

### REPLY TO BRIEF OF *AMICI CURIAE* BRENDA AND PAUL FREEBURN IN SUPPORT OF DEFENDANT

Brenda and Paul Freeburn, through undersigned counsel, respectfully submit the following reply to their *amicus* brief in support of Defendant, submitted pursuant to the Court's March 25, 2022 Minute Order. Doc. 49.

### ARGUMENT

The Court's recent decision denying a preliminary injunction to plaintiffs who similarly sought to overturn Colorado election law should instruct the Court's approach to this case. On March 10, 2022, the Court denied a motion for preliminary injunction brought by the plaintiffs in a case challenging the constitutionality of Colorado's campaign finance laws and seeking to have those laws overturned. *Lopez v. Griswold*, No. 22-cv-00247-JLK, 2022 WL 715122 (D. Colo. 2022). In *Lopez*, the plaintiffs are current Colorado gubernatorial and state senate candidates and

1

a political campaign contributor who brought suit alleging that the contribution limits and the voluntary spending limits contained in Article XXVIII of the Colorado Constitution violate the First Amendment. The plaintiffs sought a preliminary injunction prohibiting the enforcement of the campaign limits.  The Court denied the plaintiffs' motion for preliminary injunction, finding that none of the factors the Court must consider when deciding a motion for preliminary injunction weighed in the plaintiffs' favor.  The Court's legal analysis in *Lopez* guides the analysis and the result here.

*Lopez* makes clear that Plaintiffs seek an injunction that is historically and specifically disfavored under 10th Circuit precedent, warranting heightened scrutiny. The Court initially noted in *Lopez* that "A preliminary injunction is an extraordinary remedy never awarded as of right".  *Id.* at 3 (quoting *Winter v. Nat. Res. Def. Counsel, Inc*. 555 U.S. 7, 24 (2008)).  "Typically, a preliminary injunction serves the limited purpose of preserving the status quo ante in order to prevent irreparable harm until a court can make a final decision on the merits." *Id*. (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

The Court went on to state that "Three forms of specifically disfavored preliminary injunctions go farther: (1) those that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movants all the relief they could recover at the conclusion of a full trial on the merits." *Id*. (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004)).  Here, like the plaintiffs in *Lopez*, Plaintiffs seek an injunction that would both alter the status quo ante and provide substantially all the relief they could recover at a full trial on the merits.  The nature of the injunction sought here brings the relief requested by Plaintiffs into "historically and specifically disfavored" status.  *Id.* at 4.

1. **Plaintiffs clearly seek to alter the status quo.**

In *Lopez,* in their quest to preliminarily enjoin the enforcement of the Colorado Constitution's amendments setting campaign finance limits, the plaintiffs argued that the *status quo ante*, or the last "peaceable uncontested status", was the legal regime that existed before the addition of the challenged amendments. *Id*. at 3. This Court unequivocally disagreed with the plaintiffs, stating that the plaintiffs "are flatly mistaken." The Court defined the status quo ante in a case such as this as the moment in time when the challenged statute is in effect and preventing the plaintiffs from taking action barred by the statute. *Id*.

The same analysis applies here. Like the plaintiffs in *Lopez*, Plaintiffs argue that the status quo should be found to be as it existed prior to the adoption of Proposition 108. Doc. 46-1, Pls.' Am. Resp. to Br. Amicus Curiae, p. 11. Like the plaintiffs in *Lopez*, Plaintiffs here are "flatly mistaken." The status quo ante instead is set by the application and enforcement of the statutes implementing Proposition 108, which has been in effect for the preceding two election cycles since its enactment. By asking to have Proposition 108 declared unconstitutional, Plaintiffs clearly seek to upend the status quo.

2. **A preliminary injunction would likely afford Plaintiffs all the relief they could recover at a full trial on the merits.**

In *Lopez*, the Court found that the relief the plaintiffs were seeking through a preliminary injunction, i.e., suspension of the enforcement of Colorado Constitution's campaign finance limits, would likely afford them all the relief they could recover after a trial on the merits. *Id*. at 4. Plaintiffs here seek the equivalent sweeping relief that would enable the Republican Party to hold a primary in June of 2022 fully closed to anyone who is not affiliated with the party, giving Plaintiffs all of the relief they could recover after a full trial on the merits.

Plaintiffs' arguments on this point place in stark relief what they are asking this Court to do. The Freeburns and their fellow 1.7 million unaffiliated voters have a longstanding statutory right to vote in primaries and an expectation of receiving ballots as provided by the statute. Plaintiffs seek to have a federal court, with the proverbial stroke of a pen, summarily *prevent the Secretary of State from providing them with a ballot* three months prior to the primary election. Doc. 46-1, p. 11. Such requested relief is indeed extraordinary and should be soundly rejected. "The public has a significant interest in not suffering the reverberations of a federal court order that declares a constitutional referendum unconstitutional on the basis of an incomplete record." *Lopez*, at 10. Here, the public interest would be harmed by an order declaring Proposition 108 unconstitutional three months before the primaries on the basis of an incomplete record with respect to whether there is an unconstitutional burden on Plaintiffs' association rights.[1]

As Plaintiffs would have it, even if eligible voters lose out on their right to vote in the 2022 primary, "the injunction could be 'undone' for future elections if it proves to have been erroneously issued." Doc. 46-1, p. 11. In other words, there is always 2024 and beyond to return to the status quo by restoring the statutory right to vote for the Freeburns and 1.7 million other disenfranchised unaffiliated voters. In the Freeburns' view, there could hardly be a better argument *against* granting a preliminary injunction.

---

[1] *See, e.g. Ravalli County Republican Central Committee v. McCulloch*, 154 F.Supp.3d 1063 (D. Mont. 2015) (denying summary judgment and motion for preliminary injunction on constitutionality of primary system similar to the Colorado system based on an inadequate record). In denying summary judgment and a motion for preliminary injunction, the court expressed concern that the record was inadequate to determine whether crossover voting actually occurs in Montana, sufficient to impose a severe burden on the plaintiffs' associational rights in light of the Supreme Court's opinion in *California Democratic Party v. Jones*, 530 U.S. 567 (2000). *Id*. at 1070-71. In addition, "Plaintiffs have not shown yet that a voter who selects the Republican primary ballot and foregoes the opportunity to vote for candidates of any other party, fails to qualify as a Republican." *Id*. at 1079.

### 3. The vote of the Republican State Central Committee was not subjected to a "Hobson's Choice."

Plaintiffs characterize the vote of the Republican State Central Committee not to opt out of a primary as a Hobson's Choice. Plaintiffs' characterization is at odds with the fact that the party members attending the Colorado Republican Party's State Central Committee overwhelmingly *voted against* opting out of a primary in 2022 by a margin of 241.3 to 171.6. Doc. 26, ¶ 2. That vote does not constitute a Hobson's Choice, but merely a choice that was presumably knowingly made by an informed set of eligible State Central Committee members. In *Lopez*, the plaintiffs argued that the constitutional amendments that allowed candidates to voluntarily limit their spending in exchange for increased campaign contributions and other benefits were so coercive as to be unconstitutional. This Court disagreed, finding that "there is no First Amendment right to be free from having to make a choice regarding campaign financing." *Lopez*, at 9.

Similarly, Proposition 108 gives a party the choice whether to hold a primary. The choice to hold a primary, like the choice put to the candidate plaintiffs in *Lopez*, presumably has its risks and rewards to be weighed, but it is a choice solely left to the party to make. Here, the Colorado State Republican Central Committee members in fact voted to hold a primary, which is strong evidence that the party *wants* to hold a primary notwithstanding whatever disadvantages to the party it may bring. Plaintiffs' apparent frustration with their party's choice is evidence that the party is in fact free to choose. *See, id.*, at 10 ("The fact that Mr. Lopez and Representative Pelton have made different choices despite their shared frustration with the statutory scheme is evidence that the candidates are free to choose though they may not like the political ripples caused by that choice.") There is no basis to conclude that the choice put to the party violates the First Amendment.

Plaintiffs attempt to diminish the significance of the vote by arguing that it is difficult for the party to attract eligible members in sufficient numbers to the meeting where this crucial vote is held in order to sway the vote in a different direction. That is a problem for Plaintiffs' party to rectify, not this Court. Plaintiffs also ignore the likelihood that the great majority of party members disagree with Plaintiffs and see a net benefit to inviting unaffiliated voters to vote in the Republican primary.

## CONCLUSION

For the reasons set forth in the Freeburns' *Amicus* Brief and in this Reply, Plaintiffs' motion for preliminary injunction should be denied.

Respectfully submitted this 1st day of April, 2022.

**SAGAL LAW, LLC**

*s/ Roger Sagal*
Roger Sagal
Sagal Law, LLC
241 S. Elizabeth Street
P.O. Box 1168
Ridgway, CO 81432
Telephone: (970) 596-4258
Email: roger@sagalgroup.com
*Counsel to Amicus Curiae Brenda and Paul Freeburn*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2022, a true and correct copy of the above and foregoing **REPLY TO BRIEF OF *AMICI CURIAE* BRENDA AND PAUL FREEBURN IN SUPPORT OF DEFENDANT** was electronically filed with the Clerk of Court using the CM/ECF system and served on the following:

All Counsel of Record

*/s/ Roger F. Sagal*
Roger F. Sagal