## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00477-JLK

PARABLE,
RON HANKS,
LAUREL IMER,
DAVE PETERS,
CHARLES W. "CASPER' STOCKHAM,
JOANN WINDHOLZ,

     Plaintiffs,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

     Defendant.

---

## MEMORANDUM OPINION & ORDER ON
## MOTION TO DISMISS

---

Kane, J.

     Plaintiffs in this case are five members of the Colorado Republican Party State Central Committee and an unincorporated association of Coloradans named People for Association Rights and Bi-Partisan Limited Elections, or "PARABLE." They contend Colorado's optional semi-open primary system, enacted after Colorado voters adopted Proposition 108 in 2016 by public referendum, infringes their rights of free speech, association, and equal protection of the laws, protected by the First and Fourteenth Amendments to the United States Constitution. They move the court to grant a preliminary injunction preventing Defendant Jena Griswold, the Colorado Secretary of State (the "Secretary"), from enforcing Proposition 108 in the June 2022 primary elections. The Secretary has responded by seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting lack of standing and failure to state a claim

upon which relief can be granted (ECF No. 27). She also opposes Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) on the grounds that the facts and allegations do not meet the criteria for obtaining such equitable relief.

I have considered the Secretary's Response to the Motion for Preliminary Injunction (ECF No. 14), Plaintiffs' Response to the Secretary's Motion to Dismiss and Reply to the Motion for a Preliminary Injunction (ECF No. 43), the Secretary's Reply (ECF No. 50), four briefs submitted by amici curiae, the parties' responses to the amicus briefs, a reply from amici curiae, and a surreply from Plaintiffs as well as the arguments of counsel and the testimony of witnesses and exhibits admitted into evidence at a comprehensive hearing held over two days. For the reasons set out in this Order, I find Plaintiffs lack standing to bring this lawsuit on all but a portion of their fifth claim. On that claim, I find dismissal appropriate under Rule 12(b)(6). Because the issues presented by the parties' motions are intertwined, I nevertheless consider Plaintiffs' Motion for a Preliminary Injunction and conclude Plaintiffs have not shown that they are entitled to the disfavored injunctive relief they seek.[1]

## I. JURISDICTION

United States courts are courts of limited jurisdiction. In this case, the parties agree federal jurisdiction is based upon 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. Other than

---

[1] In court, Plaintiffs stated their firm intention to move to amend their Complaint to add a derivative claim pursuant to Federal Rule of Civil Procedure 23.1. According to Plaintiffs, a derivative action would make dismissal on standing grounds inappropriate. While no such motion has been filed as of the issuance of this Order and while I doubt the propriety of a derivative action in this case, *cf. Beck v. Ysursa*, No. 07-cv-299-MHW, 2007 WL 4224051, at *5 (D. Idaho Nov. 27, 2007) (presuming Committee's decision not to bring the suit was made in good faith on behalf of the Party in the absence of evidence to the contrary), I find it expedient to fully expound on the issues presented in light of Plaintiffs' stated intentions.

the challenge raised by the Secretary in her Motion to Dismiss, there is no dispute that this court has jurisdiction over the parties and the subject matter asserted in the complaint.

## II. BACKGROUND

*Colorado's Primary Election System*

In Colorado, the Secretary of State is responsible for administering and enforcing the State election code. Colo. Rev. Stat. § 1-1-107(1). Primary elections are held on the last Tuesday in June in even-numbered years for the purpose of nominating candidates of political parties to be voted on in the general election. *Id.* § 1-4-101(1).

Proposition 108, a ballot initiative adopted by Colorado voters in 2016, requires major political parties to nominate candidates for the general election either through a semi-open primary or, alternatively, through a closed assembly or convention process.[2] *See* Colo. Rev. Stat. §§ 1-2-218.5(2), 1-4-101(2)(b), 1-4-104, 1-4-702(1), & 1-7-201(2.3) (collectively "Proposition 108"). Colorado law defines a "major political party" as "any political party that at the last preceding gubernatorial election was represented on the official ballot either by political party candidates or by individual nominees and whose candidate . . . received at least ten percent of the total gubernatorial votes cast." *Id.* § 1-1-104(22).[3]

---

[2] An "assembly" is "a meeting of delegates of a political party, organized in accordance with the rules and regulations of the political party, held for the purpose of designating candidates for nominations." *Id.* § 1-1-104(1.3). A "convention" is a similar meeting of delegates, "held for the purpose of selecting delegates to other political conventions . . ., making nominations for presidential electors, or nominating candidates to fill vacancies in unexpired terms of representatives in congress or held for other political functions not otherwise covered in this code." *Id.* § 1-1-104(6). Together, and along with precinct caucus meetings, *see id.* §§ 1-1-104(30), (31), they compose Colorado's caucus system.

[3] Minor political parties are permitted to exclude unaffiliated voters from their primary elections "so long as the prohibition is in accordance with the party's constitution, bylaws, or other applicable rules." *Id.* § 1-4-1304(1.5)(c). If a minor party wishes to prohibit unaffiliated voters

To opt out of the semi-open primary in favor of an assembly or convention (i.e., through a caucus system), at least three-quarters of the total voting membership of a major party's state central committee must vote in favor of the assembly or convention nomination process. *Id.* § 1-4-702(1). This vote must occur no later than October 1 of the year preceding the year in which the assembly or convention is to occur. *Id.* If a primary election is preferred, major political parties must permit unaffiliated voters to participate. *Id.* § 1-7-201(2.3). Unaffiliated voters—of whom there are approximately 1.6 million in Colorado, *see* Compl. at 5, ECF No. 1—may vote in any major party's primary election although they may only cast a ballot in one party's primary. *Id.* §§ 1-2-218.5(2), 1-7-201(2.3). This system is known as a "semi-open" primary because it remains closed to electors who are affiliated with a different political party and uses a party-specific ballot.

*Republican State Central Committee*

Colorado law recognizes that a political party's "state central committee has the power to make all rules for party government." *Id.* § 1-3-105(1). The State Central Committee of the Colorado Republican Party (the "CRP"), also known as the Colorado Republican Committee (the "Committee"), lists its primary purposes as "elect[ing] duly nominated or designated Republican candidates to office, [promoting] the principles and achiev[ing] the objectives of the Republican Party at national and state levels, and [performing] the functions set forth in the election laws of the State of Colorado." CRP Committee Bylaws (the "Bylaws"), Art. II, ECF No. 14-1. The Bylaws permit voting members to vote by proxy. *Id.* Art. VIII, § D.

---

from casting a primary ballot, it must notify the Secretary no later than seventy-five days before the election. *Id.* The rights and obligations of minor political parties are not at issue in this case. The only concern here is with major parties.

On September 18, 2021, the Committee convened to vote on how the CRP would nominate candidates for the 2022 election. At that time, there were 521 voting members in the Committee. Stip. of Facts ¶ 3, ECF No. 26. So, in order for the Party to select a nomination procedure other than the semi-open primary, 391 members would have had to vote in favor of the alternative (521 members x 3/4 = 390.75 members). Four hundred and forty-one voting members attended the 2021 Committee meeting for selecting the nomination method. *Id.* ¶ 3. Of those only 38.9% voted in favor of an assembly or convention process. *Id.* ¶ 2.[4]

Although the Committee did not vote to use a nomination method other than the semi-open primary at its 2021 meeting, it declared by resolution that "a majority of the [CRP's] State Central Committee supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican party are eligible to participate." 9/18/2021 Committee Resolution (the "Resolution"), ECF No. 1-2. For that reason, and because the approving members believed "Proposition 108 is clearly a violation of Republican Party members' constitutional rights under the First Amendment," the Committee authorized a lawsuit "to be initiated in federal district court by the [CRP], its members, or both . . . to challenge the constitutionality of Proposition 108." *Id.* Charles Heatherly, the author of the Resolution and a Committee member, testified that the Committee's vote on the Resolution was a standing vote, also known as a voice vote. As no Committee Member stood after the opposition vote was called, the vote was declared unanimous in favor of the Resolution. Members cannot vote by proxy during a standing vote, as only physical bodies are counted, and the Committee made no record of the number of members present for the vote in favor of the Resolution.

---

[4] In 2019, less than 3/4ths of the total voting membership of the Committee were in attendance, so the Party could not have selected a nomination method other than the semi-open primary at that meeting, unless a sufficient number of proxy votes had been included.

*Plaintiffs' Claims in This Case*

Confident they enjoyed the support of their political party, Plaintiffs initiated this case on February 24, 2022. In their Complaint, Plaintiffs allege Proposition 108 violates the following constitutional rights:  the First Amendment freedom of association (Claims 1 & 2); the First Amendment freedom of speech (Claim 3); and the Fourteenth Amendment right to equal protection under the law, with a claim relating to vote dilution (Claim 4) and a claim relating to discriminatory treatment of major political parties and their members (Claim 5). Each of these challenges asserts Proposition 108 is unconstitutional both facially and as applied to Plaintiffs and to the Colorado Republican Party.

## III. THE SECRETARY'S MOTION TO DISMISS

The Secretary's Motion to Dismiss asserts that Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for a lack of standing and under Rule 12(b)(6) for failure to state a claim upon which relief can granted. I find Plaintiffs have failed to establish standing on their first four claims and a portion of their fifth. For the remaining portion of their fifth claim, I consider its viability under Rule 12(b)(6) and determine that dismissal of that claim is also warranted because they have failed to state a claim for which relief can be granted.

### A. Standing

Article III of the United States Constitution limits federal courts to adjudicating cases and controversies. U.S. Const. art. III, § 2. The fundamental principles of separation of powers are violated by judicial declarations outside the context of an established case or controversy. One necessary component of a case or controversy is the plaintiff's standing to sue. *See S. Furniture*

*Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1145 (10th Cir. 2021). Thus, federal courts lack jurisdiction to decide the merits of a claim when a plaintiff cannot meet his burden to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-561 (1992).

There are three elements to constitutional standing. First, the plaintiff must have suffered an "injury in fact," defined as the invasion of a legally protected interest that is concrete and particularized. *Id.* at 560. An injury "must affect the plaintiff in a personal and individual way," *id.* at 560 n.1, and it must be "actual or imminent, not conjectural or hypothetical," *id.* at 560 (citation and quotation marks omitted). Second, there must be a causal connection between the injury and the challenged conduct—the injury cannot be "the result of the independent action of some third party not before the court." *Id.* (citation and alterations omitted). Third, there must be a likelihood that the injury will be redressed by a favorable decision on the merits. *Id.* at 561. "These requirements ensure that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quotation marks omitted) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). When any of these necessary elements are missing, a party may move to dismiss a suit for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

*Constitutional Standing Cannot Be Transferred*

The Colorado Republican Party did not bring this lawsuit.[5] Neither did it authorize the individually named plaintiffs to act as its representatives pursuant to the Committee's Bylaws.

---

[5] A declaration from former Secretary of State Scott Gessler posits several reasons why the CRP may have decided not to initiate or formally authorize this suit: (1) the CRP faces severe funding constraints due to campaign finance laws; (2) few attorneys are willing to "finance a lawsuit of

*See* CRP Committee Bylaws, Art. III, § D ("No person or entity . . . has authority to bind in any manner the [Committee without] prior written authorization from the Chair[person].").

In a confusing amalgamation of concepts, the named Plaintiffs claim standing on their own behalf, because the CRP "expressly authorized this challenge" by the "Party, its members, or both," Resp. to Mot. to Dismiss at 2, yet they say that "[e]ven if the [CRP] *alone* has constitutionally[]protected association rights . . . the Party, acting through its governing body, the State Central Committee, has authorized this litigation challenging the constitutionality of Proposition 108 by Party 'members.'" Am. Resp. to Amicus Briefs at 3, ECF No. 46-1.

Plaintiffs argue § D's requirement of written authorization from the Chairperson does not apply to the Committee, and the Committee can bind itself through a standing vote on a resolution, such as the one at issue in this case. Plaintiffs do not say what provision of the Bylaws grants the Committee authority to bind the Party to litigation, or dictates the procedure for such binding. We are left to wonder, did the standing vote need to be unanimous? If not, what percentage of votes was required? Since a standing vote does not include Committee members voting by proxy, must the proponent of a resolution provide some minimum amount of notice to

---

this magnitude" as it is unlikely to be lucrative; and (3) there is legal uncertainty around exceptions to campaign finance limits for the current litigation and while the Federal Election Commission may issue an advisory opinion to guide the party, the Commission's opinions are not issued on Plaintiffs' expedited timeline. *See* Gessler Decl. ¶¶ 32-36, ECF No. 43-1. These obstacles are not insignificant. However, resolving to permit any of its members to defend its constitutional rights is not the solution. Campaign finance law and regulations that may restrict the CRP would necessarily apply to litigants on which the Party confers its rights, as Plaintiffs say has occurred here. Also, Mr. Gessler—who is not a party in this case—acknowledges that exceptions to campaign finance law exist specifically for the financing of lawsuits by political parties. The CRP may be unwilling to move forward with a case before the Federal Election Commission issues an advisory opinion, but that delay falls squarely on the shoulders of the CRP, which has had more than five years and more than two full election cycles to seek such an opinion. In any case, these practical considerations are immaterial because Plaintiffs may not sue to exercise the constitutional rights of a third party.

members? More troublesome is Plaintiffs' characterization of the Resolution as one "instructing the [CRP] to initiate a lawsuit." That interpretation of the Resolution is beyond the pale. On the record before me, the only affirmative step taken by the CRP after passage of the Resolution was the formal request for an advisory opinion from the Federal Election Commission, made by the Committee and its Chairperson in November 2021. As the Secretary pointed out at the hearing on these motions, there is no affidavit or statement or amicus brief from the Committee Chairperson or the Party stating a position in the lawsuit.

Standing is an independent legal concept that cannot be granted, authorized, or conferred upon a litigant through the resolution of a third party. *See Allen v. Wright*, 468 U.S. 737, 750-51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (stating Article III requires the litigant to have standing which depends, in part, on an injury that is personal to the litigant). Likewise, constitutional rights are not assignable or transferrable.

In filing this suit, Plaintiffs shine a spotlight upon an unavoidable political rub:  the constitutional rights of political parties and the responsibility of the states to regulate elections within constitutional bounds. As it was in *Utah Republican Party v. Cox*, "[t]he distinction between wholly internal aspects of party administration on one hand and participation in state-run, state-financed elections on the other is at the heart of this case." 892 F.3d 1066, 1078 (10th Cir. 2018). Only the CRP has standing to defend its rights in the midst of that distinction. Thus, if these Plaintiffs have standing to sue, they have it only as individual members of the CRP. To the extent Plaintiffs properly assert their individual rights, their claims hit upon another tension inherent in a democratic election process:  the friction between individual party members' right to participate in their party's electoral process and the right of the parties to speak on behalf of

their members as a collective whole. While Plaintiffs may be plagued by that friction, this court is not the appropriate venue for them to voice their frustration.

*No Injury Personal to Plaintiffs in Claims 1 & 2 (Forced Association Claims)*

The United States Constitution confers on states the power to prescribe the times, places, and manner of holding federal elections. U.S. Const. art. I, § 4, cl. 1. The Supreme Court has confirmed that states enjoy a similar authority to regulate their own elections. *See Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986). As relevant here, "the Supreme Court has recognized that when political parties become involved in a state-administered primary election, the state acquires a legitimate interest in regulating the manner in which that election unfolds . . . ." *Cox*, 892 F.3d at 1077-78.

State regulations may not, of course, infringe upon the constitutional rights of political parties. The First Amendment protects the right of association of political parties, including the right to "define [their] associational boundaries . . . and engage in effective political association." *Tashjian*, 479 U.S. at 213 (citation omitted). "The ability of the members of the Republican Party to select their own candidate . . . unquestionably implicates an associational freedom." *California Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) (quoting *Tashjian*, 479 U.S. at 235-36 (Scalia, J., dissenting)).

In their first claim, Plaintiffs raise both a facial and as-applied challenge to the constitutionality of Proposition 108, arguing that it violates their freedom, protected by the First Amendment, not to associate with unaffiliated voters in the process of selecting nominees for the general election ballot. In seeking a preliminary injunction, they ask the court to grant

Colorado's major political parties the option of conducting primary elections that are open only to registered party members, otherwise known as a "closed primary."

Facially, Plaintiffs take issue with the alternatives, stating that neither a semi-open primary nor a convention or assembly "allow[s] all of its active registered voters [to participate] in the choosing of the Party's nominee." Compl. at 13. They fail to explain how these restrictions impact the *personal* associational rights of individual voters. They certainly do not suggest that Proposition 108 prohibits party members from participating in a Republican caucus, or from casting a Republican ballot in a semi-open primary, or from meeting with other CRP or Committee members. No law prohibits individuals from forming their own private association to advocate for their preferred nominees that is limited to "Republicans Only." *See Terry v. Adams*, 345 U.S. 461, 468-69 (1953) (addressing the public nature of state-sponsored elections).

As-applied, Plaintiffs characterize Proposition 108 as a Hobson's choice that "effectively forces the party to allow unaffiliated voters to help determine its nominees," Am. Resp. to Amicus Briefs at 3, because the three-fourths threshold to opt out of the semi-open primary is "nearly impossible" to meet, Resp. to the Mot. to Dismiss at 5. Plaintiffs' second claim reorganizes its arguments, but the import is the same.

To determine whether Plaintiffs have a sufficiently personal injury to confer standing, I must address the question of whether a primary election scheme that purportedly provides only one meaningful choice for the selection of major political party nominees—that of a semi-open primary—infringes upon the right of individual major political party members to associate for the "common advancement of political beliefs and ideas." *Kusper v. Pontikes*, 414 U.S. 51, 56 (1973). I find below that the choice is meaningful. However, even if it were not and the semi-open primary were the only true option for political parties, the statutory choice provided by

Proposition 108 is one to be made exclusively by Colorado's political parties. Any constitutional harm that accompanies the limits inherent in that choice inures to the parties, and not to their individual members.

In their first two claims, Plaintiffs conflate the CRP members' "freedom of intimate association" with their Party's "freedom of expressive association." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The Supreme Court has long recognized that "the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships," *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987), but this case does not implicate such relationships.

Plaintiffs are members of the CRP's State Central Committee, composed of 521 voting members from across the State. Stip. of Facts ¶ 3. The Committee represents Colorado's Republican voters, who number close to one million. Compl. at 5. Their membership is not the sort of intimate relationship that merits constitutional protection of Plaintiffs' individual associational rights. *See Rotary Club of Duarte*, 481 U.S. at 546-47 (finding no constitutional interference with rights of individual Rotary Club members due, in part, to Club's large size and its "central activities [that] are carried on in the presence of strangers"). Instead, Plaintiffs' forced association claims involve "a right to associate for the purpose of engaging in those activities protected by the First Amendment," such as collective speech and assembly—a right unique to the Party. *Roberts*, 468 U.S. at 618. Although interference with the CRP's associational rights may burden the individual party members to some extent, that secondary impact does not permit them to assert the party's rights as their own. Plaintiffs "are in no position to rely on the right that the First Amendment confers on political parties to . . . select the candidate of the party's choosing." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S.

196, 203 (2008).

"At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Awad v. Ziriax*, 670 F.3d 1111, 1120 (2012) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007)). Because Proposition 108's choice is given to political parties and not to their individual members, it is the CRP alone that must sharpen the presentation of the issues raised by Plaintiffs' first two claims. Plaintiffs have not demonstrated a sufficiently personal stake or corresponding injury to confer standing to bring their forced association claims, either facially or as applied.

*No Injury in Claim 3 Where Political Speech is Collective (Compelled Speech Claim)*

In their third claim, Plaintiffs assert a constitutional injury because, under Proposition 108, they do not enjoy the option of their preferred candidate nomination method. They insist Proposition 108's statutory scheme lacks a meaningful choice, which burdens their free speech right by ostensibly requiring the CRP to endorse as its nominee whatever candidate receives a plurality of votes in a semi-open primary election, even if that candidate did not receive a plurality of votes placed by party members. There are three problems with this argument: First, Plaintiffs have no constitutional right to a closed primary election. Second, the speech that is allegedly compelled belongs to the CRP and not its members. And third, as I explain below, Proposition 108 provides a meaningful choice.

A member of a political party suffers no constitutional injury when denied the preferred

method for selecting his party's nomination of a candidate for office.[6] One member may wish to participate in a caucus that elects delegates to a convention but only so long as those delegates are required to vote according to the plurality vote at the caucus. Another may desire a closed primary in which party members are required to declare their party affiliation at least two months in advance of the election. Still another may want to allow members of a particular minority party to vote in a major party's primary election. Given the large size of the CRP, there is no method that would appease each individual member. Even so, individual party members may see their preferred candidate selected through a disfavored nomination selection method, just as they might see their preferred candidate selected in a semi-open primary when that candidate did not receive a plurality of party member votes.

The Secretary emphasizes this point through the submission of a news article published on the heels of the CRP's decision not to opt out of the semi-open primary in September 2021. According to the article, "[a] chorus of big-name Colorado Republicans, including former District Attorney George Brauchler and former GOP Chair Dick Wadhams, publicly campaigned

---

[6] In the United States, political parties have a constitutional right to exclude non-party members from their nominee selection process if they wish to do so, *see Jones*, 530 U.S. at 581-82, and a similar constitutional right to include non-members through an open nominee selection process, *see Tashjian*, 479 U.S. at 225. While the CRP is not a party to this suit, it bears mentioning that aside from the ability to include or exclude unaffiliated voters by some means, the Party enjoys no right to its preferred candidate selection process, even if it unanimously supports a particular method. When a state gives political "parties the right to have their candidates appear with party endorsement on the general-election ballot," that state "acquires a legitimate governmental interest in ensuring the fairness of the party's nominating process, enabling it to prescribe what that process must be." *Lopez Torres*, 552 U.S. at 798. While there are limits to the state's authority to control the process, the Supreme Court has considered it "too plain for argument" that Colorado "may insist that intraparty competition be settled before the general election by primary election or by party convention." *American Party of Texas v. White*, 415 U.S. 767, 781 (1974) (citing *Brown*, 415 U.S. 724, 733-36 (1974)); *see also Lopez Torres*, 552 U.S. at 799 ("Selection by convention has never been thought unconstitutional, even when the delegates were not selected by primary but by party caucuses.").

against the [opt-out] proposal leading up to the vote." Alex Burness, *Millions Will Keep Primary Voting Access as Colorado GOP Rejects Controversial Opt-out Plan*, The Denver Post, Sept. 18, 2021, ECF No. 14-2. Clearly, the Party itself is not beholden to every member's preference, so the State can hardly be charged with a constitutional violation when the party makes a choice that leaves some members dissatisfied.

Bearing in mind that Plaintiffs have an individual right to free speech but *not* to their preferred candidate nomination selection process, I next consider the speech being challenged here. Once again, the right Plaintiffs assert is a collective right that belongs to a political party and not its members. *See Clingman v. Beaver*, 544 U.S. 581, 586 (2005) ("We have held that the First Amendment, among other things, protects the rights of citizens 'to band together in promoting among the electorate candidates who espouse their political views.'" (quoting *Jones*, 530 U.S. at 574)). If a primary election statutory scheme impacts a party's right to free speech, and therefore its members' right, then it is the party that must speak up on behalf of its collective members. The injury is personal to the collective—the party—and not to the individual members.

Like Don Quixote, Plaintiffs are self-appointed heroes, defending the rights of their party by going to battle against the allegedly insurmountable obstacle of a three-fourths majority that compels a form of diluted political speech. They have overstepped their bounds. By selecting its preferred candidate for the general election—the standard bearer—it is the party that is speaking as a single entity and not the cacophonous declarations of each of its registered members, simultaneously expressing their individual preferences. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) (The "Party, and not someone else, has the right to select the [] Party's standard bearer." (quotation marks omitted)).

15

Plaintiffs rely on the Supreme Court's declaration that "[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents," but that statement was made in the context of a constitutional challenge of a state primary election law brought by a political party. *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981); *see also Jones*, 530 U.S. 567 (California Democratic Part, California Republican Party, Libertarian Party of California, and Peace and Freedom Party); *Tashjian*, 479 U.S. 208 (Republican Party of Connecticut); *Cox*, 892 F.3d 1966 (Utah Republican Party and Utah Democratic Party). Plaintiffs have pointed to no case that confers standing on individual party members to challenge a law that allegedly injures a political party's First Amendment rights. If Proposition 108's denial of political speech that is the product of a closed primary does result in some constitutional injury, it is an injury unique to the Party and not to its individual members.

In short, the Plaintiffs have not alleged any personal injury and do not possess standing to defend the rights of a third party, even if that party is an association of which they are fervent and vocal members. The CRP cannot litigate this case by proxy.

*No Injury, Causation, or Redressability in Claim 4 (Vote Dilution Claim)*

Plaintiffs' fourth claim relates to their Fourteenth Amendment right to equal protection under the law. They assert violations of their individual right to cast an undiluted vote, likening Proposition 108's statutory scheme to legalized ballot-box stuffing. Plaintiffs ground their fourth claim in "the fundamental right to vote," but there is no right to an election in which an individual can cast a vote in every political contest. Mem. to Mot. for Prelim. Inj. at 12, ECF No. 2-1. If there were, the caucus and convention systems—at one point the primary means of

nominating candidates and to this day the final method of electing presidential nominees—would be unconstitutional. Plaintiffs might also be alluding to "[t]he right to vote freely for the candidate of one's choice," in a publicly funded election, with the knowledge that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Cox*, 892 F.3d at 1076 (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). The U.S. Constitution confers no individual right to political party members to vote in a closed primary election.

The lack of a constitutional injury is not Plaintiffs' only bar to standing. They have failed to demonstrate that Proposition 108 is the cause of the alleged injury or that a favorable decision on the merits of this case would redress that injury.

For standing purposes, an injury must be "fairly traceable" to the challenged conduct. *Wright*, 468 U.S. at 751. It is Plaintiffs' burden to show "a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). "As part of this showing, a plaintiff must establish that its injury was not the result of the independent action of some third party not before the court." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (quotation marks omitted) (quoting *Nova Health*, 416 F.3d at 1156).

The linchpin of Plaintiffs' vote dilution claim is the assertion that major political parties are forced into semi-open primaries as their only meaningful option because it is "nearly impossible" to garner the requisite three-fourths Committee support necessary to select a

nomination process that is closed to non-party members. Plaintiffs' argument that Proposition 108 does not offer a meaningful choice is so thin as to dissolve upon inspection.

Plaintiffs assert the three-fourths threshold is unconstitutional as-applied because the 75% threshold cannot practically be met, but they offer no factual basis to support their assertions. Plaintiffs cite many figures regarding low participation and attendance at Committee meetings as well as past caucus assemblies and conventions, but those figures have no relevance to the law's constitutionality. Rather than explain why Committee members *cannot* all participate in the meeting for selecting the nomination method, they flatly state that enough members *do not* attend. That strikes me as a matter squarely within the province and concern of the Committee itself, and an entirely inappropriate cause for judicial interference. As the Secretary aptly points out, Plaintiffs "complain that it is difficult for the Committee to assemble a quorum of voting members," but it is not the Secretary's place to address that problem. Mot. to Dismiss at 10. "If assembling a quorum were important, the Committee could make attendance mandatory or change the place or date of its meeting." *Id.* Further, former Colorado Secretary of State Scott Gessler provided expert testimony that, to his knowledge, no Colorado law prohibits the Committee from allowing voting members to attend meetings virtually. I have found none. On the contrary, Colorado law permits remote participation of delegates at assemblies to nominate candidates for the primary election ballot, if party rules permit.

Proposition 108 requires major parties to permit non-members to vote in a *state*-sponsored, tax supported election, and it provides an alternative nomination method that is closed to non-members. The CRP could eliminate any injury to Plaintiffs by selecting the closed alternative because Plaintiffs would suffer no vote dilution and it would enjoy a nomination process closed to outsiders. And, as the Secretary acknowledged during the hearing on these

motions, nothing in Colorado election law specifically precludes a party from self-funding a primary election limited to party members, and then certifying the results of that closed primary to a party convention. If then, in the exercise of its statutory choice, Plaintiffs' party chooses to hold a semi-open primary instead of a closed convention or caucus assembly, it is that choice that causes any dilution in Plaintiffs' individual votes or restricts their access to a closed nomination process.

The vote dilution of which Plaintiffs complain cannot be attributed to the Secretary's conduct, but rather to the CRP's exercise of its statutory choice—the independent action of a third party not before the court—and consequently, any judicial relief will not redress Plaintiffs' claimed injury.


*No Causation or Redressability on Claims 1, 2 & 3*

Causation is also problematic for Plaintiffs' speech and association claims. If not for the CRP's selection of the semi-open primary process, Plaintiffs would not be forced to associate with unaffiliated voters in the nominee selection process and their political speech in the form of cast primary ballots would be unaffected by a party endorsement that accounts for the votes of non-party members. Put another way, if Plaintiffs are forced to associate with non-party members and if their speech is compelled in any way, their complaints should be lodged with the CRP and not the court.


*Lack of Personal Injury Requires Partial Dismissal of Claim 5 (Discriminatory Treatment Claim)*

In their fifth claim, Plaintiffs contend major political parties and their members are

discriminated against because Proposition 108 offers minor political parties and their members the option to hold a closed primary election, but it does not afford major political parties the same option. As outlined above, the portion of the fifth claim that relates to discrimination against major political parties cannot be raised by Plaintiffs because it does not affect them "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. However, the portion of the claim relating to Plaintiffs' equal protection rights as individual members of a major political party requires additional analysis. Plaintiffs have sufficiently alleged a constitutional injury in the form of Proposition 108's discriminatory treatment of major political party members, whose party has no statutory option of a publicly financed closed primary election. I consider the differential treatment of members of major and minor parties next, and determine the claim is subject to dismissal under Rule 12(b)(6).

## B. Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a party may also seek dismissal by asserting that the plaintiff has failed "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When "the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. In reviewing a Rule 12(b)(6) motion, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

20

Plaintiffs' equal protection claim regarding differential treatment of major and minor party members fails under this standard. It is Plaintiffs' burden at this early stage of litigation to push their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This burden is not met by their assertions of discrimination based on the fact that, under Proposition 108, "voters affiliated with major political parties are not permitted to participate in a primary election to choose their party's nominees without their votes being diluted by unaffiliated voters" when voters affiliated with minor political parties are permitted to do so, if their party so chooses. Mem. to Mot. for Prelim. Inj. at 12.

"Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution." *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963). Plaintiffs are not in a suspect class, and I am unpersuaded that Colorado election law incorporates anything remotely akin to the type of invidious discrimination that the Supreme Court has found to require strict scrutiny. *See Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 668 (1966) (requirement of fee as a condition to obtain ballot); *Cox v. State of Louisiana*, 379 U.S. 536, 557 (1965) (selective enforcement of broad prohibitory statute); *Brown v. Board of Education,* 347 U.S. 483 (1954) (segregation by race in public schools). Thus, a rational basis review applies and the validity of Proposition 108's distinction between major and minor political parties, and therefore their members, depends on whether "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) (citation omitted).

The Secretary lists several State interests:  "protecting and preserving the integrity of the nominating process, promoting fairness, allowing parties to increase voter participation, and ensuring administrative efficiency support its semi-open primary system." Resp. to Mot. for

Prelim. Inj. at 12. The Secretary has a legitimate interest in allowing and encouraging its largest political parties to increase voter participation in primary elections and to ensure administrative efficiency in the process. Proposition 108 is a reasonable way to accomplish the Secretary's goals.

The Supreme Court has long recognized "the state's vital regulatory role in primary elections." *Cox*, 892 F.3d at 1078. State regulations must be "substantial" if elections "are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). The interests offered by the Secretary are precisely the sort of legitimate interests that will ensure that fairness and order accompany Colorado's democratic process in the selection of nominees for the general election ballot, and they justify the limitations Proposition 108 imposes on Colorado's major political parties. Plaintiffs have not stated a plausible claim to the contrary. Consequently, I find the portion of Plaintiffs' discriminatory treatment claim related to Plaintiffs' individual membership in a major political party fails to state a claim under Rule 12(b)(6).

## IV. PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Although I have determined dismissal is appropriate for all of Plaintiffs' claims, I go on to consider their Motion for a Preliminary Injunction because the issues presented are interwoven, both in the parties' filings and in the testimony presented in court. For the reasons stated below, I would deny Plaintiffs' request for a preliminary injunction even if their lack of standing did not present a jurisdictional bar to their claims.[7]

---

[7] I do not analyze the portion of Plaintiffs' fifth claim pertaining to their individual equal protection rights, however, as I have found it appropriate to dismiss that claim with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

**A. Disfavored Preliminary Injunctions**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 24 (2008). When presented with a motion for a preliminary injunction, courts in the Tenth Circuit consider whether:  (1) the movant is substantially likely to succeed on the merits, (2) the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury to the movant outweighs the injury facing the opposing party under the injunction; and (4) the injunction is adverse to the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). When the Government opposes the motion, the third and fourth factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). It is the movant's burden to establish by a preponderance of the evidence that these factors weigh in favor of an injunction. *Citizens Concerned for Separation of Church & State v. City of Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).

Typically, a preliminary injunction serves the limited purpose of preserving the status quo ante in order to prevent irreparable harm until a court can make a final decision on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Three forms of specifically disfavored preliminary injunctions go farther:  (1) those that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movants all the relief they could recover at the conclusion of a full trial on the merits. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004). Plaintiffs who request a disfavored injunction must make a "strong showing" with regard to both the likelihood of success on the merits and the balance of harms. *Id.* at 976.

An injunction is characterized as mandatory in the Tenth Circuit "if the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing

court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (cleaned up) (citation omitted). Plaintiffs move to enjoin Proposition 108, which permits unaffiliated voters to participate in major party primary elections if the party does not choose the assembly or convention method by a three-fourths majority vote of its state central committee. They recognize, however, that a return to the primary election law that predated Proposition 108 would be unconstitutional if challenged. Rather than seeking a return to the status quo ante, they ask the court to grant major parties "the same right that is available to minor political parties under [Colo. Rev. Stat.] § 1-4-1304(1.5)(c) to notify the Secretary of State by April 14, 2022, that they wish to prohibit unaffiliated electors from voting in their primary elections." Mem. to Mot. for Prelim. Inj. at 16.

The Secretary provided ample credible evidence that the injunction sought by Plaintiffs would place an unprecedented and onerous burden on the Colorado Department of State. According to Hilary Rudy, the Department's Deputy Elections Director since 2014, the State faces a suite of inflexible deadlines imposed by state and federal law in the weeks leading up to Colorado's primary elections.[8] Rudy Decl. ¶¶ 9, 10, ECF No. 14-1. Because Plaintiffs seek the option of selecting a closed primary election, a choice would need to be made by both major parties' state central committees. Meanwhile, the ballot certification deadline of April 29, 2022, looms. If one or both parties notify the Secretary that it has selected a closed primary, Colorado's statewide voter registration system ("SCORE") would need to be updated to accommodate that decision, requiring significant changes to SCORE. *Id.* ¶ 14. Colorado's counties would have to

---

[8] Failure to comply with the Uniformed and Overseas Citizens Absentee Voting Act can subject the State to "significant federal penalties." Rudy Decl. ¶¶ 9, 10.

"reprint voter instructions and implement last[-]minute changes with ballot printing vendors," at a time when global supply chain issues are common. *Id.* ¶¶ 13, 14. Notwithstanding the parties' actual selections, "the State would need to launch a substantial effort to educate voters about the change ahead of the June 6, 2022 party affiliation deadline" on account of the last-minute alteration of the current statutory options. *Id.* ¶ 13. Voter confusion would be unavoidable.

Former Secretary of State Scott Gessler downplayed the impact of a potential injunction at the state and county level, noting that the Democratic Party "has been very firm in their view that they are not going to opt out of the semi-open primary regardless of the outcome of this lawsuit," and that there are "a number" of CRP leaders who would not want to opt out of the semi-open primary. *See also* Gessler Decl. ¶ 23. He testified that any changes to SCORE would be "minor." He admitted, however, that he has never logged into the SCORE system, which is used to track voter eligibility and returned ballots. Moreover, because he left office before Proposition 108's enactment, he is unfamiliar with SCORE's current capabilities.

I find the evidence squarely demonstrates that the requested injunction would require significant affirmative actions at almost every level of state government. As such, it would also require the court to provide ongoing supervision during the rapidly progressing stages of the primary election process. It follows that the injunction sought is a mandatory injunction. Mandatory injunctions generally alter the status quo ante, *Schrier*, 427 F.3d at 1260, and such is the case here. Because the injunction Plaintiffs seek is specifically disfavored, they must make a strong showing with regard to both the likelihood of success on the merits and the balance of harms. *O Centro*, 389 F.3d at 976. They have failed to do either.

**B. Likelihood of Success on the Merits**

I have determined Plaintiffs do not have authorization to represent the rights and interests of the CRP. Plaintiffs are adamant that they do, and have informed the court that they will seek to amend the Complaint if necessary to ensure that the CRP's interests are adequately represented. *See* note 1, *supra*. For that reason, I assume Plaintiffs do represent the interests of the Party for the sake of their Motion for a Preliminary Injunction.

*First Amendment Claims*

"When deciding whether a state election law violates First and Fourteenth Amendment associational rights," I must "weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (citation and quotation marks omitted). To prevail on the merits of their First Amendment claims, Plaintiffs must show that the balance between their rights of free speech and association and the Secretary's interest in managing elections tips in their favor.

Regulations that impose a severe burden on First Amendment rights must be narrowly tailored to advance a compelling state interest. *Burdick*, 504 U.S. at 434. The Supreme Court has unequivocally held that it is a severe burden on a political party when the party is forced to allow unaffiliated voters to participate in its primary election. *Wisconsin*, 450 U.S. at 126 (describing the "substantial intrusion into the associational freedom of" party members when state law required the National Democratic Party to honor the binding results of an open primary election). However, Proposition 108, on its face, does not "impose[] insurmountable obstacles to . . . generate support" for a closed assembly or convention. *White*, 415 U.S. at 784.

26

And as I detailed above, Plaintiffs' as-applied challenge cannot succeed because they have not shown that the CRP has been forced to associate with unaffiliated voters. Plaintiffs have presented absolutely no evidence that the three-fourths threshold is impossible to meet.

When "reasonable, nondiscriminatory restrictions" do not severely burden a party's rights, the state's "important regulatory interests are generally sufficient to justify" the restrictions. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). On its face, Proposition 108 restricts Colorado's major political parties by offering a choice:  they can allow unaffiliated voters to participate in their primary elections or they can limit participation in their nomination process through a closed convention or assembly caucus. That choice constitutes a reasonable, nondiscriminatory restriction that is justified by the State's important regulatory interests: "protecting and preserving the integrity of the nominating process, promoting fairness, allowing parties to increase voter participation, and ensuring administrative efficiency support its semi-open primary system." Resp. to Mot. for Prelim. Inj. at 12.

The statutes at issue here provide a default that allows Colorado's largest political parties to increase voter participation through the inclusion of unaffiliated voters. By requiring a party to opt out of the default nominee selection method, Colorado's major political parties are encouraged to voluntarily enfranchise Colorado's 1,637,864 active unaffiliated voters. *See* Compl. at 5. And by requiring a super-majority vote of a party's state central committee, the restrictions encourage administrative efficiency and reduce the voter confusion that could result if major political parties were more easily able to change their preferred nominee selection method every two years.

In addressing the interests of unaffiliated voters who wish to participate in the selection of candidates who will appear on the general ballot, Plaintiffs emphasize the ease with which an

unaffiliated voter can register before a primary election and de-register after. By focusing on the lack of practical barriers to registration, Plaintiffs ignore the associational interests of unaffiliated voters who do not want to affiliate with a party but still hope to influence the choices that will be presented to them in the general election. Though it is true that "a basic function of a political party is to select the candidates for public office to be offered to the voters at general elections," *Kusper*, 414 U.S. at 58, an unaffiliated voter is not disinterested in that process; he may, instead, be exercising an individual right not to associate. *Cf. Jones*, 530 U.S. at 574 ("A corollary of [an association's] right to associate is the right not to associate."). There can be no doubt the Secretary has an interest in considering the position of Colorado's significant number of unaffiliated voters.

Plaintiffs have failed to show that the balance between the Secretary's interests and their First Amendment rights tip in their favor. Consequently, they are unlikely to succeed on the merits of their first three claims.

*Equal Protection Claims*

"[T]he Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *see also Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 54 (10th Cir. 2013) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike*." (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))). While similarly situated voters are protected from discrimination by the Fourteenth Amendment's Equal Protection Clause, Plaintiffs must "demonstrate in the first instance a discrimination against them of some substance." *White*, 415

U.S. at 781. The discrimination of which Plaintiffs complain is that minor parties are able to select Plaintiffs' preferred nomination process, and major parties are not. That is not a discrimination of substance.

To be sure, "[a] political party has a First Amendment right . . . to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform." *Lopez Torres*, 552 U.S. at 797. A party does not have a right to choose *whatever* candidate-selection process it desires. When distilled, Supreme Court precedent establishes that political parties have a constitutional right to include or exclude non-party members from the nominee selection process, but they do not have a right to dictate how the inclusion or exclusion will occur.

Plaintiffs have not made a strong showing that Proposition 108 forces an open candidate-selection process upon them. In fact, they have made virtually no showing that the option for a closed assembly or convention process is unavailable. They have established that the Committee would *prefer* to have the *option* of a closed primary election and they have proven that a semi-open primary is more favorable to the Committee than a closed assembly or convention, but that is not enough. Without showing that some version of vote dilution is forced on them, Plaintiffs cannot establish even a remote likelihood of success on the merits of their fourth claim.

Regarding their fifth claim, I have already determined that it is subject to dismissal for failure to state a claim as it relates to individual party members. My analysis does not change when I consider the rights of parties.

Plaintiffs do not argue the Secretary is constitutionally obligated to treat major and minor political parties equally, nor could they. *See Jenness v. Fortson*, 403 U.S. 431, 441 (1971) ("The fact is that there are obvious differences in kind between the needs and potentials of a political

party with historically established broad support, on the one hand, and a new or small political organization on the other."). Plaintiffs claim major political parties are unfairly disadvantaged by their inability to nominate candidates through a publicly funded closed primary election, an advantage given to minor parties in Colorado. Of course, if Proposition 108 did not give major political parties a meaningful choice between an open nominee selection method and a closed one, this claim would hold more water, but I have already dispensed with Plaintiffs' assertion that the CRP has been forced into an open nomination process.

In *American Party of Texas v. White*, several minor political parties made a similar claim by alleging that a state law discriminated against them by requiring the parties to nominate candidates for general election by convention rather than by primary election, the process used by larger parties. 415 U.S. 767, 771-74 (1974). The Supreme Court found the plaintiffs failed "to demonstrate in the first instance a discrimination against them of some substance." *Id.* at 781. The same is true here. And for the reasons provided in my discussion of the Secretary's Rule 12(b)(6) motion, I find there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour*, 566 U.S. at 680 (citation omitted). Plaintiffs have failed to show that they are likely to succeed on either equal protection claim. Thus, since I have found Plaintiffs are unlikely to succeed on any of their claims, the related factor weighs heaving against granting a preliminary injunction.

## C. Irreparable Injury

Plaintiffs argue that any violation of their constitutional rights constitutes an irreparable injury. Because I have found they are unlikely to succeed on the merits of any of their constitutional claims, they have demonstrated no injury whatsoever. This second factor also

weighs against issuance of the requested injunction.

**D. Balance of Harms**

When the government opposes a motion for a preliminary injunction, the harms to be balanced are the threatened injury to the movant versus any injury to the public interest. *See Nken*, 556 U.S. at 435. I struggle to find any harm to the Plaintiffs or the CRP. Plaintiffs are unrestricted in their ability to associate, to lobby the Committee to select a closed nomination process, and to either caucus or vote for their preferred party nominee. These fundamental personal liberties are unhindered by Proposition 108. The CRP is free to select a closed nomination process, and it is free to amend its Bylaws to encourage or require greater participation in its meeting for selecting the nomination method. Of course, such changes may have no practical impact because, as Mr. Gessler testified and as the Secretary has demonstrated, some portion of the CRP leadership does not want to opt out of the semi-open primary.

The public interests involved, on the other hand, are weighty. Proposition 108 was passed by constitutional referendum more than five years ago. Since that time, Colorado has expended significant resources to accommodate semi-open primaries for the State's major political parties and to educate voters about the statutory scheme. Many of Colorado's unaffiliated voters "have relied on Proposition 108 since its passage in 2016 to vote in Colorado's semi-open primaries," and "[t]heir right to vote in the 2022 Republican Primary was confirmed when the [CRP] voted to hold a primary" last year. Freeburn Amicus Brief at 6, ECF No. 42. As with the first two factors, this last factor weighs against the issuance of a preliminary injunction, particularly one that is specifically disfavored. Accordingly, if Plaintiffs did have standing to bring their claims, they have not demonstrated that their claims warrant the extraordinary relief they seek.

## V. CONCLUSION

For the reasons provided in this Order, Defendant's Motion to Dismiss (ECF No. 27) is

GRANTED. Plaintiffs' first four claims and part of their fifth are DISMISSED WITHOUT

PREJUDICE. Their fifth claim, insomuch as it relates to the individual Plaintiffs, is DISMISSED

WITH PREJUDICE. Plaintiffs' Motion for a Preliminary Injunction (ECF No. 2) is DENIED AS

MOOT.


DATED this 8th day of April, 2022.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE